**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

FILED

2009 JUL 10 A 8: 43

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

| | |
|---|---|
| ROSETTA STONE LTD.<br>1919 North Lynn Street<br>Arlington, Virginia  22209,<br><br>                          Plaintiff,<br><br>    -v-<br><br>GOOGLE INC.<br>1600 Amphitheatre Parkway<br>Mountain View, California  94043,<br><br>                       Defendant. | Civil Action No. 1:09cv 736<br>68L/JFA |

## COMPLAINT

Plaintiff Rosetta Stone Ltd. ("Rosetta Stone"), through its counsel, for its Complaint against Google Inc. ("Google"), alleges as follows.

## NATURE OF THE ACTION

1.  This lawsuit relates to the use of trademarks on the Internet, particularly Defendant Google's unauthorized use of the famous trademarks and service marks that identify Rosetta Stone, the foremost language-education company in the United States, to Internet users (the "Rosetta Stone Marks").  The fundamental purpose of trademark law, in the bricks-and-mortar world <u>and</u> on the Internet, is to protect consumers from being confused as to the source or affiliation of the products or services that they seek to buy.  In order to assist consumers in making informed purchasing decisions, trademark law encourages companies to develop brand

Dockets.Justia.com

names to differentiate their products and services within the marketplace. This is accomplished by legally limiting a brand's commercial use to the brand's owner. This legal protection fully applies in the context of the Internet.

2. Unfortunately, some individuals and entities attempt to take advantage of consumers by marketing their products or services using the brands of others. In effect, they seek to free ride on the reputation and goodwill of another's brand. Because of the ease and low cost of setting up a website and the speed with which Internet transactions occur, this has become a particular and growing problem in connection with consumer purchases of goods and services on the Internet. This lawsuit involves exactly such a situation -- efforts by certain companies to free ride on Rosetta Stone's brand with the active participation and assistance of Google in such unauthorized and intentional use of Rosetta Stone's Marks through Google's technology.

3. Google owns and operates one of the world's most-utilized Internet "search engines." A search engine is a computer program that allows computer users to search the World Wide Web for websites containing particular content. Google's search engine is available not only on its own website (www.google.com), but also through other popular websites that use its search engine. On information and belief, approximately 80% of all searches conducted worldwide use Google's search engine.

4. To use Google's search engine, a World Wide Web user ("web user") need only type in a few words and hit the "enter" key (or click on the "Google Search" button) to receive a list of hyperlinks ("links") to web pages that Google identifies as relevant to the search requested. Web users may then visit these web pages by clicking on the links that Google provides. Google maintains and, on information and belief, many consumers believe, that the search results Google provides are the product of an objective formula or algorithm that produces "natural" or

2

"organic" results, *i.e.*, web listings the display and placement of which are not influenced by payments to Google from the website owners.

5. Google, however, does not only provide Internet users with such "organic search results." Without authorization or approval from Rosetta Stone, Google has sold to third parties the "right" to use the Rosetta Stone Marks or words, phrases, or terms confusingly similar to those marks, as "keyword" triggers that cause paid advertisements, which Google calls "Sponsored Links," to be displayed above or alongside the "organic search results." In many cases, the text and titles of these "Sponsored Links" include Rosetta Stone Marks or terms confusingly similar to those marks. Thus, when consumers enter one of the Rosetta Stone Marks into Google's search engine to search or navigate the World Wide Web, instead of being directed to Rosetta Stone's website, Google's "Sponsored Links" may instead misdirect them to: (i) websites of companies that compete with Rosetta Stone; (ii) websites that sell language education not only for Rosetta Stone, but also for a variety of competitors of Rosetta Stone; (iii) websites that sell counterfeit Rosetta Stone products; or (iv) websites that are entirely unrelated to language education.

6. Rosetta Stone does not bring this lawsuit lightly. Rosetta Stone has long been and remains a strong supporter of the Internet and the promise that it holds for consumers and society as a whole. Indeed, Rosetta Stone does not question that Google's search engine provides consumers with a powerful and highly-useful means to search the Internet for information. That said, Google's search engine is helping third parties to mislead consumers and misappropriate the Rosetta Stone Marks by using them as "keyword" triggers for paid advertisements and by using them within the text or title of paid advertisements. This lawsuit seeks to stop only this aspect of Google's search engine function and not its ability to provide "organic search results."

Indeed, Google has the ability to structure and configure its programming to stop this misuse of the Rosetta Stone Marks because it has already implemented procedures with respect to many non-U.S. Internet users that prevent the misuse of trademarks. Google, however, has chosen not to implement these procedures for Internet users in the United States to the detriment of U.S. consumers and Rosetta Stone.

## THE PARTIES

7. Plaintiff Rosetta Stone is a corporation organized under the laws of the State of Delaware with its principal place of business at 1919 North Lynn Street, Arlington, Virginia, which is within the Alexandria Division of this District.

8. Upon information and belief, Defendant Google is a corporation organized under the laws of the State of Delaware with a principal place of business in Mountain View, California. In addition, on information and belief, Google advertises, solicits clients, leases office space, and conducts substantial amounts of business in the Commonwealth of Virginia and within the Alexandria Division of this District.

## JURISDICTION AND VENUE

9. This action arises in part under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b). This Court has supplemental jurisdiction over the Virginia state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims brought herein as to form part of the same case or controversy.

10. Google is subject to personal jurisdiction in the Commonwealth of Virginia because Google practices the unlawful conduct complained of herein, in part, within this District; because the unlawful conduct complained of herein causes injury, in part, within this District;

because Google regularly conducts or solicits business, rents or leases office space within this District, engages in other persistent courses of conduct and/or derives substantial revenue from goods and/or services used or consumed within this District; and because Google regularly and systematically directs electronic activity into the Commonwealth of Virginia with the manifested intent of engaging in business within this District, including the creation, hosting, and offering of fully interactive websites, advertising, e-mail, and other Internet-related services to web users within this District, as well as entry into contracts with residents of this District.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

12.    Venue is also proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c) because Google is a corporation whose contacts, as alleged in this Complaint, would be sufficient to subject it to personal jurisdiction if this District were a separate state.

## FACTUAL BACKGROUND

### The Internet and the World Wide Web

13.    The Internet is a global network of millions of interconnected computers. The World Wide Web is a portion of the Internet especially well-suited to displaying images and sound as well as text. Much of the information on the World Wide Web is stored in the form of web pages, which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer. "Websites" are locations on the World Wide Web containing a collection of web pages. A web page is identified by its own unique Uniform Resource Locator ("URL") or "web address" (*e.g.*, <http://www.rosettastone.com>),

which ordinarily incorporates the website's "domain name" (*e.g.*, "rosettastone.com"). Because URLs and domain names are not case-sensitive, URLs and domain names that contain capital letters are functionally the same as those that do not.

### Rosetta Stone and the Rosetta Stone Marks

14.     Rosetta Stone was founded in 1992. Since that time, Rosetta Stone has become a leader in providing technology-based language-learning products and services. Rosetta Stone's language-learning solutions are available in more than thirty languages and are used by schools, corporations, government entities and millions of individuals in more than 150 countries throughout the world. Rosetta Stone's website provides consumers with easy access to its language-education software and services.

15.     To preserve and enhance its trademark rights, Rosetta Stone has obtained federal trademark registration for many of its Rosetta Stone Marks, some of which have been in continuous use for more than five years and are therefore considered "incontestable" pursuant to 15 U.S.C. §§ 1065 and 1115(b).

16.     Among Rosetta Stone's federally registered marks are:

- ROSETTA STONE which was first used in commerce in 1993 and which has a registration date of September 9, 2003;

- GLOBAL TRAVELER which was first used in commerce in 2002 and which has a registration date of August 12, 2003;

- ROSETTA STONE LANGUAGE & LEARNING SUCCESS which was first used in commerce in 2001 and which has a registration date of November 11, 2003;

- LANGUAGE LIBRARY which was first used in commerce in 1993 and which has a registration date of July 27, 2004;

- DYNAMIC IMMERSION which was first used in commerce in 2001 and which has a registration date of November 20, 2007;

- THE FASTEST WAY TO LEARN A LANGUAGE. GUARANTEED which was first used in commerce in 2002 and which has a registration date of March 18, 2008;

- ROSETTASTONE.COM which was first used in commerce in 1999 and which has a registration date of June 24, 2008;

- ROSETTA WORLD which was first used in commerce in 2006 and which has a registration date of October 7, 2008;

- ADAPTIVE RECALL which was first used in commerce in 2007 and which has a registration date of December 30, 2008;

- CONTEXTURAL FORMATION which was first used in commerce in 2007 and which has a registration date of January 13, 2009;

- SHAREDTALK which was first used in commerce in 2006 and which has a registration date of February 3, 2009; and

- AUDIO COMPANION which was first used in commerce in 2008 and which has a registration date of February 3, 2009.

17.     Rosetta Stone has registered the mark ROSETTA STONE in the Commonwealth of Virginia which has a registration date of April 13, 2009. Rosetta Stone also has common law rights to the Rosetta Stone Marks in the Commonwealth of Virginia by virtue of the marks' eligibility for protection and Rosetta Stone's status as the senior user of the marks.

18.     The Rosetta Stone Marks are unique and famous distinctive designations of the source of Rosetta Stone's products and services.

19.     Rosetta Stone has invested substantial amounts in worldwide advertising and marketing in order to build the fame, reputation, and goodwill of the Rosetta Stone Marks. Rosetta Stone advertises through a variety of media, including television, radio, newspapers, magazines, direct mail, and in telephone directories across the country.

20.     Rosetta Stone also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

21.     Through Rosetta Stone's actions, and because of widespread and favorable public acceptance and recognition, the Rosetta Stone Marks have become distinctive designations of the source of origin of Rosetta Stone's products and services. The Rosetta Stone Marks have become uniquely associated with, and hence identify, Rosetta Stone. These marks are assets of incalculable value as symbols of Rosetta Stone, its quality products and services, and its goodwill.

22.     Accordingly, the Rosetta Stone Marks have developed secondary meaning.

23.     The Rosetta Stone Marks have become "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c). For example, as a result of Rosetta Stone's extensive advertising and promotional efforts, the mark "Rosetta Stone" has, on information and belief, attained some of the highest levels of brand recognition among consumers.

24.     Rosetta Stone conducts a substantial amount of its business over the Internet and has made a sizeable investment in the development of its online business. It is generally more beneficial for Rosetta Stone when consumers purchase directly through Rosetta Stone. Among

other reasons, this is because when consumers buy through www.rosettastone.com, it assists Rosetta Stone in conveying important information to its customers, in developing a direct relationship and future business with its customers, and in minimizing costs associated with various transactions.

### Google's Search Engine

25.     Web users who are searching for a specific company product, service or information, but who do not know the exact domain name or website address at which it may be found, may use an internet "search engine" to locate it. In fact, many web users prefer to navigate the Internet by typing phrases and even URLs into search engines rather than type a URL into an Internet browser's address bar. A search engine, such as Google's, purportedly checks the terms entered into it against its databases and applies a formula or algorithm to produce a search results page that lists the websites that may relate to the customer's search terms and their corresponding links.

26.     Google claims, and, upon information and belief, most web users who perform searches with Google's Internet search engine believe, that the results given by that search engine are determined by a "natural" or "organic" system that lists results in order of objective relevance to the search terms input into the search engine, with the most relevant websites appearing near the top of the web page. According to Google, the order in which "organic search results" are listed is automatically determined by a number of factors, including Google's patented PageRank algorithm.

27.     By using Google's Internet search engine, web users are identifying to Google the subjects in which they are interested, the companies that they seek, or the products or services they wish to buy. This allows Google to obtain a significant percentage of its profits from

9

"contextual" or "search" advertising, which allows companies to place their advertising in front of consumers who have already identified themselves as interested in particular products or services.

28.     When a web user carries out an Internet search using Google's search engine, Google not only provides the web user with the above-described "organic search results," but also displays a list of similarly formatted advertisements -- which Google refers to as "Sponsored Links" -- above and alongside the purportedly objective "organic search results."

29.     On information and belief, the relevance of these "Sponsored Links" is determined not by an objective measure, but rather is substantially influenced by the amount of money Google stands to obtain from the "sponsors" of these links.

30.     Google's use of the Rosetta Stone Marks and terms confusingly similar thereto in order to display "Sponsored Links" falsely communicates to consumers that Google's advertisers are official Rosetta Stone affiliates, or that Rosetta Stone sponsors or endorses Google's advertisers. In many cases, Google exacerbates this confusion by publishing text in its "Sponsored Links" that makes further confusing use of the Rosetta Stone Marks.

31.     Further, when some web users click on the links that Google's advertisers pay to place above or alongside purportedly objective "organic search results" in order to seek information about Rosetta Stone's products or services, they are deceived into believing that they will be provided with official information about Rosetta Stone's products and other services directly from Rosetta Stone. On information and belief, however, some of these links and the websites to which they lead provide no such information. In fact, in some instances, these links lead to websites that offer the products and services of Rosetta Stone's competitors, whether or

not they also offer Rosetta Stone's own products and services. In other instances, these links lead to websites that offer pirated Rosetta Stone products.

32.     On information and belief, Google also employs other advertising programs that utilize similar types of keywords, including but not limited to the Rosetta Stone Marks or terms confusingly similar thereto, to cause advertisements to appear on websites across the Internet that themselves display the Rosetta Stone Marks or terms confusingly similar thereto. On information and belief, many of these advertisements lead Internet users to websites that are not Rosetta Stone websites, some of which even compete with Rosetta Stone.

33.     Google's unauthorized use in commerce of the Rosetta Stone Marks generates profits for Google and its advertisers that are directly attributable to their unauthorized exploitation of the value and name recognition associated with the Rosetta Stone Marks.

### Google's Search Engine-Based Keyword Advertising Program

34.     Google's search engine is available, among other places, through its website located at www.google.com. Google also licenses its search engine to other popular websites, such as America Online, Netscape, Earthlink, CompuServe, Shopping.com, AT&T Worldnet, and Ask.com.[1] In addition, Google invites consumers to affix a "Google Toolbar" at the top of Internet users' Internet browsers that allows these users to conduct Google searches even when they are not currently visiting www.google.com or a website that features Google's search engine.[2]

---

[1]  *See* https://adwords.google.com/support/bin/answer.py?answer=6119&hl=en_US (visited June 19, 2009).

[2]  *See* http://toolbar.google.com/T4/index_pack.html (visited June 19, 2009).

35.     Google reports that its "content network reaches 80% of global internet users --making it the world's #1 ad network."[3] And, it is estimated that more than 70% of U.S. Internet searches use Google's search engine.[4]

36.     Google offers a program called "AdWords" that displays advertisements to users of Google's search engine in the form of "Sponsored Links." Under its AdWords Program, Google offers advertisers the ability to select certain "keywords" that will trigger a "Sponsored Link" to the advertiser's chosen website, which "Sponsored Link" Google will display above or alongside the purportedly "organic search results."

37.     On information and belief, advertisers pay Google each time a web user clicks on keyword-targeted "Sponsored Links" that appear on Google's "results" page.

38.     These targeted "Sponsored Link" results are not meaningfully or conspicuously identified to consumers as paid third-party advertisements. Google posts its "Sponsored Link" advertisements in a color, typeface, and font size that are not appreciably different than the "organic search results" that Google generates. On information and belief, even the designation of these keyword-triggered "results" as "Sponsored Links" is confusing to many consumers, because Google does not inform consumers who has done the "sponsoring."

39.     On information and belief, in a substantial portion of searches, Google's AdWords program makes two distinct uses of a given keyword on behalf on an advertiser. First, Google uses the keyword to trigger the "Sponsored Link" advertisement. Second, Google sometimes publishes the keyword as part of the advertisement itself. Accordingly, when the

---

[3]  *See* http://www.google.com/adwords/contentnetwork (visited June 19, 2009).

[4]  *See* http://googlesystem.blogspot.com/2009/03/googles-market-share-in-your-country.html. (visited June 19, 2009).

keyword in question is a trademark or service mark, Google can make confusing use of that mark in two different ways: (1) as a keyword trigger and (2) as a part of the advertisement itself.

### Google's Unwillingness to Refrain from Trademark Infringement

40.     On information and belief, Google has the ability to refrain from making infringing use of proprietary marks as part of its keyword-triggered advertising program, such as AdWords.

41.     Specifically, on information and belief, Google could reasonably prevent trademarks, service marks, and terms confusingly similar thereto from being used as keyword triggers or in the title or text of Sponsored Link advertisements.

42.     Google has stated in its SEC filings that it formerly did not allow advertisers to use the trademarks of others as keyword triggers. (*See* Form S-1 Registration Statement, Google, Inc., April 29, 2004 ("Google S-1"), p. 10).

43.     Consistent with that statement, in a Declaration filed in *American Blind and Wallpaper Factory, Inc. v. Google, Inc., et al.*, a trademark case filed in the United States District Court for the Southern District of New York, Google's Senior Trademark Counsel asserted on April 7, 2004, that Google had the capability to block its advertisers from using non-descriptive trademarks as keyword triggers. (Declaration of Rose A. Hagan in Support of Google Inc., Ask Jeeves, Inc., and Earthlink, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer Venue, filed April 9, 2004, ¶ 4).

44.     Google, however, now allows advertisers to purchase specific trademarks as keyword triggers for Sponsored Link advertisements. In its 2004 S-1, Google stated as follows:

> In order to provide users with more useful ads, we have recently
> revised our trademark policy in the U.S. and in Canada. Under our
> new policy, we no longer disable ads due to selection by our
> advertisers of trademarks as keyword triggers for the ads.

(Google S-1, p. 10).

45.     Google has further stated that it anticipates additional trademark infringement

lawsuits because of its decision to allow its advertising customers to use trademarks to trigger the

delivery of "Sponsored Links":

> As a result of this change in policy, we may be subject to more trademark
> infringement lawsuits . . . . Adverse results in these lawsuits may result in,
> or even compel, a change in this practice which could result in a loss of
> revenue for us, which could harm our business.

(Google S-1, p. 10).

46.     In contrast to its practices with respect to the use of trademarks in the United

States, Google represents that it currently prevents advertisers from using trademarks as

keywords in many countries *outside* the United States and Canada. According to Google's

trademark policy for trademark rights in many countries outside the United States and Canada,

Google will "ensur[e] that the advertisements at issue are not using a term corresponding to the

trademarked term in the ad text *or as a keyword*."[5]

47.     Additionally, Google maintains an extensive trademark policy regarding

confusing uses of *its own* marks. A would-be user of a Google mark must, *inter alia*, "use the

trademark only as an adjective, never as a noun or verb, and never in the plural or possessive

form," and must put "a minimum spacing of 25 pixels between each side of the logo and other

graphic or textual elements on [the user's] web page."[6] Google, in its own words, instructs the

world not to "mess around with our marks. Only we get to do that. Don't remove, distort or

alter any element of a Google Brand Feature ... for example, through hyphenation, combination

---

[5]   http://www.google.com/tm_complaint_adwords.html (emphasis added) (visited June 19, 2009).

[6]   "Google Permissions," http://www.google.com/permissions/guidelines.html (visited June 19, 2009).

or abbreviation."[7] Google, however, does not treat the marks of other companies with such respect.

## Google's Unauthorized Use of the Rosetta Stone Marks

48. Rosetta Stone has not directly or indirectly given Google any permission, authority, or license to use or sell the right to use the Rosetta Stone Marks for the promotion of the goods and services of any third parties.

49. Nevertheless, on information and belief, Google has in fact sold to third-party advertisers the "right" to use the Rosetta Stone Marks or terms confusingly similar thereto as part of Google's search engine-based advertising program. As a result, Google's programming utilizes the expressed interest of web users in the Rosetta Stone Marks to trigger advertisements to websites that are not Rosetta Stone websites, some of which even compete with Rosetta Stone. In fact, many of Google's "Sponsored Links" are expressly designed to draw consumers *away* from Rosetta Stone websites.

50. Moreover, Google's use of Rosetta Stone Marks within the titles and text that Google posts as a part of some "Sponsored Links" further misleadingly communicates to consumers that such links are endorsed or sponsored by Rosetta Stone or its affiliates, or that such websites are official Rosetta Stone websites.

51. As a part of the process of triggering "Sponsored Links," Google offers its advertisers the ability to purchase as keyword triggers the trademarks and service marks of others, as well as words, phrases, and terms confusingly similar to those trademarks and service marks. Thus, a consumer searching for the Rosetta Stone website using Google's search engine

---

[7] *See id.*

might be shown a "Sponsored Link" unrelated to Rosetta Stone that was displayed because a third-party advertiser purchased a Rosetta Stone Mark or a term confusingly similar thereto as a keyword trigger. A significant number of consumers are likely to believe falsely that it was Rosetta Stone who "sponsored" the links that appears above or alongside the "organic search results."

52. On information and belief, a significant portion of the "Sponsored Links" for which Google uses the Rosetta Stone Marks or terms confusingly similar thereto as keyword triggers link Internet users to: (i) websites of companies that compete with Rosetta Stone; (ii) websites that sell Rosetta Stone products, but also sell a variety of products that compete with Rosetta Stone; (iii) websites that sell counterfeit Rosetta Stone products; and/or (iv) websites that are entirely unrelated to language education. Rosetta Stone has not sponsored these "Sponsored Links" or otherwise authorized Google to sell the right to use the Rosetta Stone Marks in commerce to draw web users to these websites. Nevertheless, these unauthorized "Sponsored Links" appear in close and confusing proximity to both the listings generated by Google's purportedly "organic search results" system and the "Sponsored Links" that Google forces Rosetta Stone itself to purchase to reduce the likelihood that web users will be diverted to other websites. Many of these unauthorized "Sponsored Links" use Rosetta Stone Marks in whole or in part within the title and text of the "Sponsored Links" themselves.

53. On information and belief, the use of the mark "Rosetta Stone," such as shown above, is also confusing to consumers because, in many instances, consumers will enter the exact web address of Rosetta Stone's website, "www.rosettastone.com," or some variant of Rosetta Stone's web address into Google's search engine expecting to receive the link for Rosetta

Stone's website.[8] Due to Google's sale of the Rosetta Stone Marks to third parties as keywords, such consumers could be redirected to competitors of Rosetta Stone even though they originally intended to go to www.rosettastone.com. Accordingly, Google aids third parties in "hijacking" consumers who use their search engines to navigate the World Wide Web. This interferes with Rosetta Stone's sales and business.

54.    On information and belief, a significant portion of the "Sponsored Links" for which Google uses the Rosetta Stone Marks or terms confusingly similar thereto as keyword triggers do not even provide consumers with the opportunity to purchase products or services offered by Rosetta Stone.

55.    On information and belief, Google also posts "Sponsored Links" to websites that similarly do not offer consumers the opportunity to purchase products or services from Rosetta Stone but nevertheless use Rosetta Stone Marks or phrases confusingly similar thereto in the text or title of the "Sponsored Links."

56.    On information and belief, Google allows the use of Rosetta Stone Marks and terms confusingly similar thereto as keywords in its search engine-based advertising program, although that program is flexible enough to prevent many, if not all, such uses.

57.    Google actively participates in the creation of "Sponsored Links" for its customers, including the information provided within such "Sponsored Links." Google actively solicits and encourages advertisers to use trademarks, service marks, and terms confusingly similar thereto as keyword triggers. For example, when a would-be advertiser selects a keyword

---

[8]  Rosetta Stone's main website address is www.rosettastone.com. Many other addresses, however, such as www.rosettastoneclassroom.com, are also owned and used by Rosetta Stone to direct web users to the main page of the rosettastone.com website.

trigger for its advertising program, it may take advantage of a "keyword tool" which will find "related keywords" to whatever word or term the advertiser enters. Among the terms listed in the "keyword tool" directory are Rosetta Stone Marks. Thus, Google suggests to would-be users to select Rosetta Stone Marks as keywords. Google also creates the intentionally confusing titles and headings for "Sponsored Links," as well as the intentionally confusing visual appearance and positioning on the results page of the "Sponsored Links." Moreover, the very use of the confusing term "Sponsored Link" instead of "Paid Advertisement" is a Google contribution.

58. On information and belief, Google's specific use of the Rosetta Stone Marks as keyword triggers in its advertising program allows Google and its advertisers to benefit financially from and trade off the goodwill and reputation of Rosetta Stone without incurring the substantial expense that Rosetta Stone has incurred in building up its popularity, name recognition, and brand loyalty. Through these practices, Google intentionally traffics in the infringement and dilution of the Rosetta Stone Marks, falsely represents or confusingly suggests to consumers a connection to Rosetta Stone that does not exist, and unfairly competes with Rosetta Stone. These practices cause consumer confusion, erode the distinctiveness of the Rosetta Stone Marks, and cause Rosetta Stone to lose, in part, control over the commercial use of the Rosetta Stone Marks by placing such control in the hands of Google and its advertisers.

59. On information and belief, Google's advertising programs also allow confusing uses of Rosetta Stone Marks in the text of the "Sponsored Link" advertisements that Google publishes on its search results page and in other Google advertising on the Internet, although Google has the technical capability to prevent many, if not all, such uses if Google wanted to do so.

18

60.     On information and belief, Google's advertisers have used loopholes in Google's programming to create "Sponsored Links" and other advertisements that either use terms that are confusingly similar to the Rosetta Stone Marks or are formatted in ways that are likely to cause confusion with Rosetta Stone and/or with the Rosetta Stone Marks.

61.     On information and belief, Google may also have other advertising programs, including but not limited to Google's "AdWords" program, which similarly make commercial use of Rosetta Stone Marks or terms confusingly similar thereto in order to trigger advertisements on third parties' websites throughout the Internet. On information and belief, in at least some of these instances, the title and/or text of these advertisements also make use of Rosetta Stone Marks or terms confusingly similar thereto.

62.     In sum, Google uses in commerce the registered and common law trademarks of other companies, including Rosetta Stone, with full knowledge that consumers are likely to be confused and lured away from the websites that they intended to visit, and with the goal of financially benefiting Google to the detriment of Rosetta Stone and other trademark and service mark owners.

### Consumer Confusion and Harm to Rosetta Stone

63.     On information and belief, Google charges advertisers a fee every time a web user clicks on a keyword-triggered "Sponsored Link."

64.     On information and belief, many web users who enter one of the Rosetta Stone Marks into Google's search engine and who then view a "Sponsored Link" containing a third-party advertisement will follow the "Sponsored Link" to a third-party website in the belief that the website is owned by or affiliated with Rosetta Stone.

19

65.    Upon information and belief, many web users who are presented with such "Sponsored Links" to third-party advertiser websites are not aware that the third-party advertiser may have no affiliation with Rosetta Stone and/or may not be an authorized provider of Rosetta Stone products and services. Google's misappropriation of the Rosetta Stone Marks as keyword triggers and its use of terms confusingly similar to Rosetta Stone Marks in the "Sponsored Link" text are therefore likely to cause confusion in the marketplace for language-education products and related services. This confusion is particularly likely because the "Sponsored Links" often appear in the same context as, and often above or immediately below, "Sponsored Links" to genuine Rosetta Stone websites.

66.    Even if web users realize that a given website is not affiliated with Rosetta Stone, once they reach it, the damage to Rosetta Stone has already been done. Many such consumers are likely either to stay at the third-party advertiser's website or to discontinue their search for Rosetta Stone's website. Web users may also associate the quality of the products and services offered on the third-party advertiser's website with those offered by Rosetta Stone, and if dissatisfied with such goods and services, may decide to avoid Rosetta Stone's products and services in the future.

67.    Moreover, because of the dominant role of Google's search engine in consumers' Internet usage and habits, Google effectively forces Rosetta Stone to purchase the "rights" to have official Rosetta Stone advertisements appear when Internet users search the web for the Rosetta Stone Marks. In other words, Google has set up a system wherein Rosetta Stone and others are, *de facto*, forced to pay Google to reduce the likelihood that consumers will be confused by Google's own practices. This need to reduce the extent of consumer confusion caused by Google's policies has cost and, unless enjoined, will continue to cost Rosetta Stone

millions of dollars. Even when Rosetta Stone purchases from Google these "rights," Google is still able to misappropriate Rosetta Stone's rights by selling these same "rights" to third parties at the same time.

68.  Although the above examples are illustrative of the problems created by Google, they by no means describe all the ways in which Google's uses of the Rosetta Stone Marks are likely to confuse consumers. Because of the fluid nature of the way Google's programming uses the Rosetta Stone Marks and displays advertising based on those marks, Google either is misleading or will mislead consumers in innumerable different ways. Accordingly, it is impossible for Rosetta Stone to cure this problem merely by pursuing remedies against Google's advertisers alone.

69.  Among other things, the following facts and circumstances support the conclusion that Google's use in commerce of the Rosetta Stone Marks is likely to cause consumer confusion:

  A.  The Rosetta Stone Marks are exceptionally strong.

  B.  Google uses the actual Rosetta Stone Marks or terms confusingly similar thereto as keyword triggers and in advertisement text.

  C.  Third-party advertisers on whose behalf Google uses the Rosetta Stone Marks or terms confusingly similar thereto generally sell counterfeit Rosetta Stone products and/or products and services similar to the language-education products and services provided by Rosetta Stone, and in many cases are in direct competition with Rosetta Stone.

D. Google and its third-party advertisers use similar facilities and the exact same marketing channels or parallel marketing channels as Rosetta Stone -- namely, the World Wide Web, and in particular, the context of Internet searching.

E. On information and belief, purchasers are likely to exercise a minimal degree of care in the context of Internet searching generally and in purchasing goods and services online in particular.

F. On information and belief, consumers have actually been confused as a result of Google's conduct.

G. Google began using the Rosetta Stone Marks or terms very similar to the marks after they were registered and after they became famous and distinctive. On information and belief, Google did so with full knowledge of Rosetta Stone's rights in the Rosetta Stone Marks. In fact, on information and belief, it is Google's specific intent to use the Rosetta Stone Marks to profit from consumer's association of the Rosetta Stone Marks with Rosetta Stone.

## I.

### FIRST CLAIM FOR RELIEF
### TRADEMARK/SERVICE MARK INFRINGEMENT
### UNDER THE LANHAM ACT

70. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

71. Rosetta Stone possesses valid, federally registered trademarks and service marks entitled to protection under the Lanham Act.

72. Google has used the Rosetta Stone Marks in commerce in a number of ways as part of its search engine-based, keyword-triggered advertising programs, including (but not

22

limited to) the following: (i) by allowing and/or encouraging third-party advertisers to bid on the Rosetta Stone Marks, or terms confusingly similar thereto, and paying Google to use such marks or terms to trigger the display of "Sponsored Link" advertisements that link to third-party advertisers' websites, which are displayed above or alongside purportedly "organic search results;" (ii) by causing such "Sponsored Link" advertisements to appear when web users have specifically attempted to find or access Rosetta Stone's website, with the express purpose of causing web users to visit websites other than those affiliated with Rosetta Stone; (iii) by including Rosetta Stone Marks in Google's proprietary directories of terms that trigger "Sponsored Link" advertisements; (iv) by causing "Sponsored Link" advertisements to appear in close proximity to Rosetta Stone Marks and links to legitimate Rosetta Stone-related websites; and (v) by causing Rosetta Stone Marks or terms confusingly similar to Rosetta Stone Marks to appear in the text or title of advertisements which Google calls "Sponsored Links." In short, Google has used the Rosetta Stone Marks in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services.

      73.     Google's unauthorized and intentional use of the Rosetta Stone Marks or terms confusingly similar thereto in connection with its search engine-based advertising programs infringes on Rosetta Stone's exclusive rights in its federally registered marks and is likely to cause confusion, mistake or deception among consumers as to the source of the products and services offered by Google and its advertisers. Such use is also likely to cause confusion among consumers as to whether Rosetta Stone is sponsoring, has authorized or is somehow affiliated with Google's sale of the Rosetta Stone Marks or terms confusingly similar thereto, or with the products or services offered through the "Sponsored Links" that Google intentionally posts

above or alongside purportedly objective "organic search results" from Internet searches for Rosetta Stone Marks.

74.     Even after accessing the websites associated with "Sponsored Links," consumers are likely to be confused into believing that those websites and the information they contain are associated with, sponsored by, operated by, or otherwise formally affiliated with or supported by Rosetta Stone when that is not the case.

75.     Google's unauthorized and intentional use of the registered Rosetta Stone Marks and terms confusingly similar thereto in connection with its search engine-based advertising programs constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114(1).

76.     Google's infringement of the Rosetta Stone Marks is willful and reflects Google's intent to exploit the goodwill and strong brand recognition associated with the Rosetta Stone Marks.

77.     Google's infringement has damaged Rosetta Stone in an amount to be determined at trial. For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

78.     Google's infringement has caused and, unless restrained by this Court, will continue to cause Rosetta Stone irreparable injury.

79.     Rosetta Stone has no adequate remedy at law for Google's infringement.

# II.

## SECOND CLAIM FOR RELIEF
## CONTRIBUTORY TRADEMARK/SERVICE MARK INFRINGEMENT
## UNDER THE LANHAM ACT

80.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

81.     With full knowledge of Rosetta Stone's rights in the Rosetta Stone Marks, Google has knowingly sold to third-party advertisers the "rights" to use the Rosetta Stone Marks or terms confusingly similar thereto as a part of Google's search engine-based advertising programs. In this context, the third-party advertisers' use of the Rosetta Stone Marks or terms confusingly similar thereto is likely to cause confusion among consumers, and constitutes infringement of Rosetta Stone's rights in the Rosetta Stone Marks.

82.     In particular, the use of the Rosetta Stone Marks or terms confusingly similar thereto in Google's search engine in order to trigger the display of "Sponsored Links" that link to the websites of third-party advertisers above or alongside purportedly "organic search results" is likely to deceive or cause confusion among web users as to whether Rosetta Stone is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

83.     Alternatively, the use of Rosetta Stone Marks or terms confusingly similar thereto within the title and text of "Sponsored Link" advertisements by third-party advertisers is likely to deceive or cause confusion among web users as to whether Rosetta Stone is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

84.     Through its sale of the Rosetta Stone Marks and terms confusingly similar thereto to third-party advertisers, Google provides such third-party advertisers with aid and material contribution to the third-party advertisers' violations of the Lanham Act.

85.     Google is therefore contributorily liable for the infringing use of the Rosetta Stone Marks by the third-party advertisers who use the Rosetta Stone Marks to trigger the display of "Sponsored Links."

86.     Google's contributory infringement is willful and reflects Google's intent to exploit the good will and strong brand recognition associated with the Rosetta Stone Marks.

87.     Rosetta Stone has been damaged by Google's contributory infringement in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

88.     Rosetta Stone has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

89.     Rosetta Stone has no adequate remedy at law for the foregoing wrongful conduct.

### III.

### THIRD CLAIM FOR RELIEF
### VICARIOUS TRADEMARK/SERVICE MARK INFRINGEMENT
### UNDER THE LANHAM ACT

90.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

91.     Google has the right and ability to control the use of the Rosetta Stone Marks or terms confusingly similar to the Rosetta Stone Marks in its search engine-based advertising programs.

92.     Third-party advertisers' use of the Rosetta Stone Marks or terms confusingly similar thereto as keyword triggers in Google's search engine-based advertising program is likely to cause confusion among consumers, and constitutes infringement of Rosetta Stone's rights in the Rosetta Stone Marks.

93.     Third-party advertisers' use of the Rosetta Stone Marks or terms confusingly similar thereto in the title or text of "Sponsored Link" advertisements is likely to cause confusion among consumers, and constitutes infringement of Rosetta Stone's rights in the Rosetta Stone Marks.

94.     Google receives a direct financial benefit from the third-party advertisers' unauthorized use of the Rosetta Stone Marks or terms confusingly similar thereto.

95.     Google is therefore vicariously liable for the infringing use of the Rosetta Stone Marks by third-party advertisers who use the Rosetta Stone Marks to trigger the display of "Sponsored Links."

96.     Google's vicarious infringement is willful and reflects Google's intent to exploit the goodwill and strong brand recognition associated with the Rosetta Stone Marks.

97.     Rosetta Stone has been damaged by Google's vicarious infringement in an amount to be determined at trial. For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

98.     Rosetta Stone has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

99.     Rosetta Stone has no adequate remedy at law for the foregoing wrongful conduct.

## IV.

## FOURTH CLAIM FOR RELIEF
## FALSE REPRESENTATION UNDER THE LANHAM ACT

100.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

101.    Google's use of the Rosetta Stone Marks or terms confusingly similar thereto as keyword triggers in its search engine-based advertising programs conveys the false or misleading commercial impression to the public that the third-party advertisers listed as "Sponsored Links" above or alongside purportedly "organic search results," or their products or services, are approved, endorsed or sponsored by Rosetta Stone, or are otherwise affiliated with or supported by Rosetta Stone.

102.    Google's use of the Rosetta Stone Marks or terms confusingly similar thereto in the title or text of "Sponsored Link" advertisements conveys the false or misleading commercial impression to the public that the third-party advertisers listed as "Sponsored Links" are approved, endorsed or sponsored by Rosetta Stone, or are otherwise affiliated with or supported by Rosetta Stone.

103.    These misleading uses of the Rosetta Stone Marks constitute a false designation of origin and/or a false or misleading description of fact and/or a false or misleading representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

104.    Google's false representations are willful and reflect Google's intent to exploit the goodwill and strong brand recognition associated with the Rosetta Stone Marks.

105.    Google's false representations have damaged Rosetta Stone in an amount to be determined at trial. For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

28

106.    Rosetta Stone has been, and absent injunctive relief will continue to be,

irreparably harmed by Google's actions.

107.    Rosetta Stone has no adequate remedy at law for Google's false representations.

V.

**FIFTH CLAIM FOR RELIEF**
**TRADEMARK/SERVICE MARK DILUTION**
**UNDER THE LANHAM ACT**

108.    Plaintiff repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

109.    The Rosetta Stone Marks are famous within the meaning of the Trademark

Dilution Revision Act of 2006. In particular, the following factors support the conclusion that

the Rosetta Stone Marks are famous:

A.    Rosetta Stone has expended substantial amounts in advertising the Rosetta Stone
      Marks on a nationwide basis in a broad cross-section of prominent media for
      many years;

B.    The Rosetta Stone Marks have received massive publicity from third parties and
      products sold under the Rosetta Stone Marks have won numerous awards from
      third parties;

C.    Rosetta Stone has earned hundreds of millions of dollars in revenue on a
      nationwide basis in connection with the products and services that it has offered
      under the Rosetta Stone Marks;

D.    The Rosetta Stone Marks have achieved a high level of actual recognition among
      the consuming public; and

29

E.  Rosetta Stone has obtained federal trademark registration for its Rosetta Stone Marks.

110. Google's use of the Rosetta Stone Marks or terms confusingly similar thereto as keyword triggers in its search engine-based advertising programs has lessened and will continue to lessen the capacity of Rosetta Stone's famous and distinctive Rosetta Stone Marks to distinguish Rosetta Stone's products and services from those of others, and has diluted the distinctive quality of the famous and nationally recognized Rosetta Stone Marks.

111. Google's use of the Rosetta Stone Marks or terms confusingly similar thereto in the title of text of "Sponsored Link" advertisements has lessened and will continue to lessen the capacity of Rosetta Stone's famous and distinctive Rosetta Stone Marks to distinguish Rosetta Stone's products and services from those of others, and has diluted the distinctive quality of Rosetta Stone's famous and nationally recognized Rosetta Stone Marks.

112. Google's conduct as alleged above is likely to cause blurring of the Rosetta Stone Marks and impair the distinctiveness of the Rosetta Stone Marks. Consumers are likely to associate Google's uses of the Rosetta Stone Marks or terms confusingly similar thereto with the Rosetta Stone Marks themselves because of the similarity between Google's uses of the Rosetta Stone Marks or terms confusingly similar thereto and the Rosetta Stone Marks themselves. In particular, on information and belief, the following factors make dilution by blurring likely:

A.  Google is making use of the Rosetta Stone Marks themselves or words or phrases confusingly similar to the Rosetta Stone Marks;

B.  The Rosetta Stone Marks have acquired tremendous distinctiveness through Rosetta Stone's promotion and use of the Rosetta Stone Marks in commerce since 1993;

C.    The Rosetta Stone Marks have achieved high levels of recognition among the consuming public;

D.    Rosetta Stone's commercial use of the Rosetta Stone Marks is substantially exclusive to Rosetta Stone and its agents and licensees;

E.    On information and belief, Google's advertisers intend to create an association between Google's uses of the Rosetta Stone Marks or terms confusingly similar thereto and the Rosetta Stone Marks themselves; and

F.    On information and belief, many consumers actually associate Google's uses of the Rosetta Stone Marks or terms confusingly similar thereto with the Rosetta Stone Marks.

113.    Google's conduct as alleged above is also likely to cause tarnishment among the Rosetta Stone Marks that harms the reputation of the Rosetta Stone Marks because of the similarity between Google's uses of the Rosetta Stone Marks or terms confusingly similar thereto and the Rosetta Stone Marks themselves.  In particular, many of the "Sponsored Links" lead consumers to websites that offer lower quality services than Rosetta Stone offers or post materials that are misleading or distasteful or offer counterfeit Rosetta Stone products.

114.    On information and belief, Google has derived and continues to derive substantial revenue and profits from the past and ongoing dilution of the Rosetta Stone Marks as a result of its unauthorized uses of the Rosetta Stone Marks and terms confusingly similar thereto.

115.    Google's use of the Rosetta Stone Marks constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

116.   Google's dilution of the Rosetta Stone Marks has caused Rosetta Stone damage in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

117.   Rosetta Stone has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

118.   Rosetta Stone has no adequate remedy at law for Google's dilution of the Rosetta Stone Marks.


## VI.

### SIXTH CLAIM FOR RELIEF
### FOR TRADEMARK INFRINGEMENT UNDER VIRGINIA LAW

119.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

120.   Rosetta Stone has registered the trademark ROSETTA STONE in the Commonwealth of Virginia.

121.   Google's acts, as described above, constitute trademark infringement of the ROSETTA STONE trademark under Virginia law, resulting in irreparable injury to Rosetta Stone.  Google is also liable for contributory trademark infringement and vicarious trademark infringement of the ROSETTA STONE trademark under Virginia law.

122.   Google's infringement has damaged Rosetta Stone in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

123.   Google's infringement has caused and, unless restrained by this Court, will continue to cause Rosetta Stone irreparable injury.

124.     Rosetta Stone has no adequate remedy at law for Google's infringement of its common law trademark rights.

## VII.

### SEVENTH CLAIM FOR RELIEF
### UNFAIR COMPETITION UNDER VIRGINIA LAW

125.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

126.     As discussed above, the Rosetta Stone Marks have acquired a secondary meaning associated with Rosetta Stone. And, Google has used the Rosetta Stone Marks unfairly to the detriment of Rosetta Stone. Indeed, Google's use of the Rosetta Stone Marks is likely to confuse prospective buyers of Rosetta Stone goods and services even if they exercise ordinary caution in their purchasing decisions. Thus, Google's acts as described above violate Virginia's unfair competition law.

127.     As a result of Google's conduct, Rosetta Stone has suffered and will continue to suffer damage, including damage to its reputation because of consumer confusion as to the origin or sponsorship of the products and services advertised through Google's websites. For example, and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the Rosetta Stone Marks.

128.     Rosetta Stone has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

129.     Rosetta Stone has no adequate remedy at law for Google's unfair competition.

## VIII.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF VA CODE § 18.2-499

130.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

131.   Google's acts as described above violate VA. Code § 18.2-499. Google has entered into agreements with and mutually undertaken with third parties for the purpose of willfully and maliciously injuring Rosetta Stone in its trade and/or business. Google and/or such third parties entered into such conspiracies intentionally, purposefully, and without lawful justification.

132.   Specifically, and by way of example and not limitation, Google entered into agreements with Rocket Languages Ltd., a direct competitor of Rosetta Stone, and "affiliates" of Rocket Languages Ltd. (collectively "Rocket Languages") pursuant to which Google would display "Sponsored Links" for Rocket Languages in response to searches for the Rosetta Stone Marks and/or words, phrases, or terms confusingly similar to those marks. They did so knowing that the Rosetta Stone Marks were registered trademarks and that the use of these marks as keywords to trigger "Sponsored Links" would divert consumers from Rosetta Stone's website to Rocket Languages' websites with the intent to harm Rosetta Stone in its business. And, many consumers have been diverted in this manner. Google and Rocket Languages entered into these agreements knowing that their acts were unlawful and with the intent to injure maliciously Rosetta Stone.

133.   Google's violation of Va. Code § 18.2-499 has caused Rosetta Stone damage in an amount to be determined at trial.

134.    Rosetta Stone has been, and absent injunctive relief will continue to be, irreparably harmed by Google's violations of Va. Code § 18.2-499.

135.    Rosetta Stone has no adequate remedy at law for Google's violation of Va. Code § 18.2-499.


WHEREFORE, Rosetta Stone prays for judgment in its favor and against Google as follows:

A.    Preliminarily and permanently enjoining Google and its officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with it from:

- directly or indirectly selling or offering for sale the Rosetta Stone Marks or other terms confusingly similar to the Rosetta Stone Marks for use in its search engine-based advertising programs to anyone other than Rosetta Stone or its authorized licensees;

- continuing to post advertisements for anyone other than Rosetta Stone and its authorized licensees because Internet users have run a search on Google's search engine using search terms that are identical or confusingly similar to the Rosetta Stone Marks;

- continuing to post titles or text of paid or keyword-triggered search engine results that falsely communicate to consumers that such links are endorsed, sponsored, or supported by Rosetta Stone or formally affiliated with Rosetta Stone;

- infringing, or causing any other entity to infringe the Rosetta Stone Marks;

- unfairly competing with Rosetta Stone in any manner whatsoever; and

- making any use of the Rosetta Stone Marks and/or terms confusingly similar thereto unless specifically authorized by Rosetta Stone.

B.    Directing an accounting to determine all gains, profits, savings and advantages obtained by Google as a result of its wrongful actions;

C.      Awarding restitution to Rosetta Stone of all gains, profits, savings and advantages obtained by Google as a result of its wrongful actions;

D.      Awarding Rosetta Stone all damages caused by Google's wrongful actions;

E.      Awarding Rosetta Stone treble the amount of its damages, together with the costs of this suit, including reasonable attorneys' fees and expenses and prejudgment interest, pursuant to 15 U.S.C. § 1117 and all other applicable provisions and principles of federal and Virginia law;

F.      Awarding Rosetta Stone an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Google's wrongful conduct and confusing and misleading advertising;

G.      Directing Google to post on its website corrective advertising in a manner and form to be established by the Court;

H.      Directing Google to file with this Court and serve on Rosetta Stone within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which Google has complied with the orders of this Court;

I.      Awarding Rosetta Stone punitive and/or exemplary damages in an amount sufficient to deter future similar conduct by Google and others; and

J.      Granting Rosetta Stone such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action triable by jury.

Respectfully submitted,

Dated: July 10, 2009

Terence P. Ross
VA State Bar # 026408

Of Counsel:

Howard S. Hogan, Esq.
Kyle Amborn, Esq.
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036
Phone: 202-955-8500
Fax:    202-467-0539

GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036
Phone: 202-955-8500
Fax:    202-467-0539

100580245_1.DOC