## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

ROSETTA STONE LTD.,

<div style="margin-left:2em">Plaintiff,</div>

-v-

GOOGLE INC.,

<div style="margin-left:2em">Defendant.</div>

Civil Action No. 1:09cv736 (GBL/TCB)

## PLAINTIFF ROSETTA STONE LTD.'S
## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Terence P. Ross
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036
(202) 955-8500 (Telephone)
(202) 467-0539 (Facsimile)

Counsel for Plaintiff,
Rosetta Stone Ltd.

Of Counsel:
Howard Hogan, Esq.
Bennett Borden, Esq.
Kyle Amborn, Esq.
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036

Dockets.Justia.com

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 1

ARGUMENT ......................................................................................................... 6

I.     THE FORUM SELECTION PROVISION IN THE 2006 TERMS AND
CONDITIONS OF ROSETTA STONE'S ADVERTISING ACCOUNT
WITH GOOGLE DOES NOT APPLY TO THIS LAWSUIT. ........................... 6

     A.    The Claims In This Lawsuit Do Not Arise Out Of Or Relate To
Rosetta Stone's Participation In Google's Advertising Program. ............. 7

     B.    The Forum Selection Clause Does Not Apply To Much Of
Google's Wrongful Conduct. .................................................................. 13

     C.    Google's Proffered Interpretation Of The Forum Selection
Clause Would Create A Conflict With Other Agreements
Between The Parties. .............................................................................. 15

     D.    The Forum Selection Clause Was Not Clearly Communicated To
Rosetta Stone. ....................................................................................... 15

II.    COUNT IV OF THE COMPLAINT PROPERLY PLEADS A CAUSE
OF ACTION FOR FALSE ENDORSEMENT UNDER SECTION 43(a)
OF THE LANHAM ACT. .......................................................................... 16

III.   THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE
GOOGLE'S UNLAWFUL CONDUCT. ....................................................... 18

     A.    Google Is An "Information Content Provider" Under The CDA
And Not Entitled To CDA Immunity. ..................................................... 18

     B.    CDA Immunity Is Inapplicable To Rosetta Stone's Conspiracy
Claim. .................................................................................................... 22

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
    437 F. Supp. 2d 273 (D. N.J. 2006) ...................................................................... 20, 21

*Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.*,
    4 F.3d 327 (4th Cir. 1993) ...................................................................................... 17

*Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*,
    572 F.3d 86 (2d Cir. 2009)...................................................................... 6, 7, 15

*Anselmo v. Univision Station Group, Inc.*,
    C.A. No. 92 Civ. 1471, 1993 U.S. Dist. LEXIS 428 (S.D.N.Y. Jan. 15, 1993) ...................... 14

*B&O Mfg. v. Home Depot U.S.A., Inc.*,
    No. C07-02864 JSW, 2007 U.S. Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007) ...................... 15

*Berry v. Soul Circus*,
    189 F. Supp. 2d 290 (D. Md. 2002) .......................................................................... 7

*Cable-La, Inc. v. Williams Commc'ns, Inc.*,
    104 F. Supp. 2d 569 (M.D.N.C. 1999) ...................................................................... 6

*Carnival Cruise Lines, Inc. v. Superior Court*,
    234 Cal. App. 3d 1019 (1991) .................................................................................. 16

*Citro Florida, Inc. v. Citrovale, S.A.*,
    760 F.2d 1231 (11th Cir. 1985) ................................................................................ 12

*Coakley & Williams, Inc. v. Shatterproof Glass Corp.*,
    706 F.2d 456 (4th Cir. 1983) .................................................................................... 8

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
    709 F.2d 190 (3d Cir. 1983).................................................................................... 9

*Comins v. Discovery Commc'ns, Inc.*,
    200 F. Supp. 2d 512 (D. Md. 2002)......................................................................... 17

*County of Marin v. Assessment Appeals Bd.*,
    134 Cal. Rptr. 349 (1976) ...................................................................................... 10

*Cromer v. Lounsbury Chiropractic Offices, Inc.*,
    866 F. Supp. 960 (S.D.W.Va. 1994) ....................................................................... 16

*Curran v. Amazon.com, Inc.*,
  No. 2:07-0354, 2008 WL 472433 (S.D.W.Va. Feb. 19, 2008) ................................. 18

*Doctor's Assocs., Inc. v. QIP Holders, LLC*,
  82 U.S.P.Q.2d 1603 (D. Conn. 2007) ....................................................................... 18

*Dynamic Concepts, Inc. v. U-Tech Servs. Corp.*,
  C.V. A. No. 99-1260 (EGS), 2000 U.S. Dist. LEXIS 6497 (D. D.C. Jan. 31, 2000) ............... 15

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
  489 F.3d 921 (9th Cir. 2007) ..................................................................................... 20

*Goddard v. Google Inc.*,
  No. C 08-2738, 2009 WL 2365866 (N.D. Cal. July 31, 2009) ................................. 21

*Goddard v. Google Inc.*,
  No. C-08-2738, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ................................. 21

*Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*,
  949 F. Supp. 1427 (N.D. Cal. 1997) ........................................................................... 7

*Gulf Oil v. Gilbert*,
  330 U.S. 501 (1947) ..................................................................................................... 1

*Gullion v. JLG ServicePlus, Inc.*,
  Civ. A. No. H-06-1015, 2007 U.S. Dist. LEXIS 6038 (S.D. Tex. Jan. 29, 2007) ............... 8, 14

*Hanson v. McCaw Cellular Commc'n, Inc.*,
  77 F.3d 663 (2d Cir. 1996) ......................................................................................... 10

*Holland v. Psychological Assessment Resources, Inc.*,
  482 F. Supp. 2d 667 (D. Md. 2007) ........................................................................... 17

*Hunt v. Superior Court*,
  97 Cal. Rptr. 2d 215 (2000) ....................................................................................... 16

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
  817 F.2d 75 (9th Cir. 1987) ....................................................................................... 12

*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*,
  418 F. Supp. 2d 1142 (D. Ariz. 2005) ....................................................................... 20

*In re Yahoo! Inc.*,
  313 Fed. Appx. 722 (5th Cir. 2009) ........................................................................... 10

*Insurance Co. of North America v. NNR Aircargo Service (USA), Inc.*,
201 F.3d 1111 (9th Cir. 2000) ............................................................................ 12

*Lambert v. Kysar*,
983 F.2d 1110 (1st Cir. 1993) ............................................................................. 9

*Landry-Bell v. Various, Inc.*,
Civ. A. No. 05-1526, 2006 U.S. Dist. LEXIS 6662 (W.D. La. Feb. 1, 2006) ......... 18

*Light v. Taylor*,
317 Fed. Appx. 82 (2d Cir. 2009) ....................................................................... 7

*MAK Marketing, Inc. v. Kalapos*,
620 F. Supp. 2d 295 (D. Conn. 2009) .................................................................. 7

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) .............................................................................. 9

*Martin v. Ball*,
No. 08-1757, 2009 WL 1637797 (4th Cir. June 12, 2009) ................................... 10

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*,
No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. April 19, 2004) ............... 19, 20

*McWilliams Murphy and Assocs., Inc. v. Heart and Vascular Clinic of N. Colo., P.C.*,
No. 1:08-CV-361, 2008 WL 4933956 (M.D.N.C. Nov. 14, 2008) ......................... 12

*Nagrampa v. Mailcoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ............................................................................ 16

*Novak v. Overture Servs., Inc.*,
309 F. Supp. 2d 446 (E.D.N.Y. 2004) ................................................................. 18

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007)......................................................................... passim

*Robinson v. American Honda Motor Co., Inc.*,
551 F.3d 218 (4th Cir. 2009) ............................................................... 16, 19, 20

*Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*,
502 F. Supp. 2d 531 (W.D. Tex. 2007)................................................................ 14

*Smith v. Lucent Techs, Inc.*,
Civ. A. No. 02-0481, 2004 U.S. Dist. LEXIS 4074 (E.D. La. Mar. 16, 2004) .......... 7

*Southeast Coastal Development Fund, L.L.C. v. Commercial Real Estate Inc.,*
   No. 5:08-CV-15- 2009 WL 928543 (E.D.N.C. April 3, 2009)............................................. 8, 12

*Sucampo Pharms., Inc. v. Astellas Pharma., Inc.,*
   471 F.3d 544 (4th Cir. 2006) ........................................................................................... 10

*Sun Dun, Inc. of Washington v. Coca-Cola Co.,*
   740 F. Supp. 381 (D. Md. 1990) ........................................................................................ 8

*Terra Int'l, Inc. v. Mississippi Chem. Corp.,*
   119 F.3d 688 (8th Cir. 1997) ............................................................................................ 9

*Transfirst Holdings, Inc. v. Phillips,*
   No. 3:06-CV-2303-P, 2007 U.S. Dist. LEXIS 14300 (N.D. Tex. March 1, 2007).................. 15

*Universal Commc'n Sys., Inc. v. Lycos, Inc.,*
   478 F.3d 413 (1st Cir. 2007)............................................................................................ 19

*Waits v. Frito-Lay, Inc.,*
   978 F.2d 1093 (9th Cir. 1992) ................................................................................... 16, 17

*Zapata Marine Service v. O/Y Finnlines, Ltd.,*
   571 F.2d 208 (5th Cir. 1978) .......................................................................................... 12

*Zeran v. America Online, Inc.,*
   129 F.3d 327 (4th Cir. 1997) .......................................................................................... 23

*Zeran v. America Online, Inc.,*
   958 F. Supp. 1124 (E.D. Va. 1997) ................................................................................. 22

**Statutes**

15 U.S.C. § 1125(a) .......................................................................................................... 16

47 U.S.C. § 230................................................................................................................ 18, 19

Va. Code § 18.2-499 ........................................................................................................ 14, 22

**Table of Authorities**
**(Continued)**

### Other Authorities

11 Richard A. Lord, *Williston on Contracts* (4th ed. Supp. 2009) ................................................. 12

141 Cong. Rec. H 8470-71 (daily ed. Aug. 4, 1995) .................................................... 23

H.R. Rep. 104-458 (1996).......................................................................................... 23

Restatement (Second) of Contracts § 202 (1981) ........................................................ 12

### Rules

Fed. R. Civ. P. 12(b)(3)........................................................................................ 1, 8

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 16

Plaintiff Rosetta Stone Ltd. ("Rosetta Stone") respectfully submits this Memorandum of Points and Authorities in Opposition to Defendant Google Inc.'s ("Google") Motion to Dismiss.

## INTRODUCTION

It is well established that a plaintiff is generally entitled to its choice of forum. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947) ("plaintiff's choice of forum should rarely be disturbed"). Yet Google asks this Court to force Rosetta Stone to bring this lawsuit in California on the basis of a click-through form contract wholly unrelated to the wrongful conduct of Google at issue in this lawsuit and not even referenced in the Complaint. The contract upon which Google's motion is based relates exclusively to Rosetta Stone's placement of advertising on the Google advertising network. It governs Rosetta Stone's advertising account with Google and nothing more -- certainly not Google's unauthorized sale of Rosetta Stone's trademarks to third parties, the issue at the center of this lawsuit. Moreover, Google's wrongful conduct at issue in this lawsuit began more than four years before the contract at issue was even entered into. Accordingly, Google's Rule 12(b)(3) motion should be denied.

Google's motion to dismiss Counts IV and VIII of the Complaint must also fail. Count IV properly pleads a "false endorsement" claim under Section 43(a) of the Lanham Act and, contrary to Google's assertion, such a claim is not limited to competitors of a plaintiff. Count VIII, which properly pleads a violation of the Virginia business conspiracy law, must also be sustained because Google creates in part the content of the advertisements on its advertising network and, therefore, cannot take advantage of the Communication Decency Act's safe harbor from state causes of action. Thus, Google's Rule 12(b)(6) motion must also be denied.

## FACTUAL BACKGROUND

Rosetta Stone is the foremost language education company in the United States. (Complaint, ¶¶ 1, 14). Rosetta Stone was founded in 1992 in Virginia. (Declaration of Harold

Narus ("Narus Dec."), ¶ 2) (appended hereto as Exhibit 1).[1]  Rosetta Stone is headquartered in Roslyn, Virginia (Complaint, ¶ 7) -- just a ten-minute drive from this Court.  Rosetta Stone has obtained federal trademark registration for many of its trademarks and service marks (the "Rosetta Stone Marks").  (*Id.* at ¶ 15).[2]  Rosetta Stone has expended millions in marketing in order to build the recognition and goodwill of the Rosetta Stone Marks.  (*Id.* at ¶¶ 18-24).  As a result, the Rosetta Stone Marks are some of the most-recognized trademarks in the United States and have become "famous" within the meaning of the Lanham Act.  (*Id.* at ¶ 23).

Google operates an Internet "search engine."  (*Id.* at ¶ 3).  Although headquartered in Northern California, Google leases offices and does substantial business in the Commonwealth of Virginia, including within this District.  (*Id.* at ¶ 8).  When a web user enters a search term into Google's search engine, he or she will receive a list of hyperlinks to web pages that Google identifies as relevant to that search.  (*Id.* at ¶ 4).  These are known as "organic search results." (*Id.*).  Google generates revenue by displaying advertising – which it refers to as "Sponsored Links" – above and/or beside these organic search results.  (*Id.* at ¶ 5).  Google offers advertisers the ability to select certain "keywords" that will trigger a "Sponsored Link" to the advertisers chosen website.  (*Id.*).  Among the types of keywords Google allows advertisers to select to trigger a "Sponsored Link" are the trademarks of third parties.  (*Id.* at ¶ 5).  In effect, Google is selling the use of third-party trademarks without authorization.  (*Id.*).

---

1  Rosetta Stone was originally founded as Fairfield & Sons, Ltd., but operated as Fairfield Language Technologies.  (Narus Dec., ¶ 2).  The corporate name was not changed to Rosetta Stone until March 2007, even though its products and services had been branded as Rosetta Stone since 1993.  (*Id.*).

2  A partial listing of the Rosetta Stone Marks may be found at Paragraph 16 of the Complaint.

This lawsuit challenges Google's unauthorized misappropriation and sale of the Rosetta Stone Marks to divert consumers away from the Rosetta Stone website and to websites that sell pirated Rosetta Stone products and/or inferior language education software, among others. The Complaint states causes of action for: (1) direct trademark infringement under the Lanham Act; (2) contributory trademark infringement under the Lanham Act; (3) vicarious trademark infringement under the Lanham Act; (4) false representation under the Lanham Act; (5) trademark dilution under the Lanham Act; (6) trademark infringement under Virginia law; (7) unfair competition under Virginia law; and (8) violation of the Virginia business conspiracy law. (Complaint, ¶¶ 70-135). The Complaint does *not* allege any breach of contract between Google and Rosetta Stone or analogous claims. Yet Google asserts that the form terms and conditions governing Rosetta Stone's advertising account with Google requires this lawsuit to be brought in Santa Clara County, California, where Google's headquarters is located.

Rosetta Stone began participating as an advertiser with Google in or about February 2002. Google asserts that, at that time, all advertisers were required to agree to a click-through electronic set of terms and conditions governing the advertiser's placement of ads on the Google network. (Declaration of Christina Aguiar ("Aguiar Dec."), ¶ 8).[3] Section 1 of that form provided in pertinent part: "The following sections set forth the terms and conditions ('Terms') that govern your participation in the Google's AdWords Select Advertising Program ('AdWords Select Program')." (Declaration of Kyle M. Amborn, Tab 1) (appended hereto as Exhibit 3).

---

[3] Google asserts that Brian Miller electronically agreed to its form terms on February 20, 2002. (Aguiar Dec.), ¶ 8). Brian Miller, however, did not begin work for Rosetta Stone until September 2002. (Declaration of Brian James Miller ("Miller Dec."), ¶ 2) (appended hereto as Exhibit 2) (*See also* Narus Dec. at Tab 1). Obviously, Google's assertion in this regard is incorrect, as are many of the assertions it makes in its motion.

Section 20, captioned "Choice of Law and Venue," provided in pertinent part: "You agree that the exclusive venue for any disputes arising under this Agreement shall be the state and federal courts located in Santa Clara County, California." (*Id.*). There is no dispute that this 2002 forum selection clause does not cover the claims at issue in this lawsuit.

In or about August 2006, Google apparently modified these terms and conditions for advertising accounts. At that time, Rosetta Stone's Database Marketing Manager, Brian Miller, while logging onto the Rosetta Stone advertising account with Google, discovered a notification that Google had revised the terms and conditions governing Rosetta Stone's advertising account. (Miller Dec., ¶ 4) (appended hereto as Exhibit 2). Mr. Miller read the terms and conditions and then clicked on a box accepting them as directed by Google. (*Id.*). These 2006 terms and conditions were drafted exclusively by Google. (*Id.* at ¶ 5). They were not the subject of a negotiation between Google and Rosetta Stone. (*Id.*). Google presented these 2006 terms and conditions for Rosetta Stone's advertising account on a "take-it-or-leave-it" basis. (*Id.*).[4]

There are two provisions in these 2006 terms and conditions for Rosetta Stone's advertising account relevant for present purposes. The preamble states in pertinent part: "These Terms govern *Customer's participation* in Google's advertising program(s) ('Program') and, as applicable, any insertion orders or service agreements ('IO') executed by and between the parties and/or *Customer's* online management of any advertising campaigns." (Aguiar Dec., Ex. 1) (emphasis added). In addition, Section 9, which is captioned "Miscellaneous," provides in

---

[4] Section 9 of the Google terms and conditions for Rosetta Stone's advertising account states in part: "The Agreement must be construed as if both parties jointly wrote it. . . ." (Aguiar Dec., Exhibit A). Rosetta Stone manifestly had no role in drafting these terms. Even Google's representative, Ms. Aguiar concedes that advertisers must agree to the form terms and conditions as presented by Google or they are unable to activate an account and advertise through Google. (Aguiar Dec., ¶¶ 5-7, 9).

pertinent part: "All claims arising out of or relating to this Agreement or the Google Program(s) shall be litigated in the Federal or State courts of Santa Clara County, California, USA. . . ." (*Id.*). Mr. Miller reviewed these terms and conditions. (Miller Dec., ¶ 4). He understood that the above-referenced provision in Section 9 meant that any lawsuit relating to Rosetta Stone's advertising account with Google would be brought in Santa Clara County, California. (*Id.*).

In addition to these 2002 and 2006 terms and conditions for Rosetta Stone's advertising account, Google and Rosetta Stone are parties to at least three other contracts. Each of those three contracts contain forum selection provisions. Each of those forum selection clauses identify Virginia courts as the forum for litigation between the parties. Therefore, by Google's expansive interpretation of the August 2006 terms and conditions for Rosetta Stone's advertising account, there is an irreconcilable conflict among these various forum selection clauses. Rosetta Stone and Google are parties to an Enterprise License Agreement pursuant to which Google uses Rosetta Stone's language education products and services. (Narus Dec., Tab 2) (appended hereto as Exhibit 1). That license contains a forum selection clause which provides in pertinent part: ". . . Licensee [Google] agrees that any action arising out of or related to this Agreement must be brought exclusively in a U.S. State or Federal court in the Commonwealth of Virginia. . . ." (*Id.*). Rosetta Stone and Google are also parties to a Purchase Order, the terms and conditions of which include a forum selection clause. (*Id.* at Tab 3). That Purchase Order states: "The parties agree to submit to the personal jurisdiction of the United States District Court for the Eastern District of Virginia for all claims and actions arising under this Agreement unless federal subject matter jurisdiction is lacking, in which case the parties agree to submit to the personal jurisdiction of the state courts of the Commonwealth of Virginia." (*Id.*). In addition, Google is a party to the terms of Rosetta Stone's website because at least every few days Google's systems

access the Rosetta Stone website and "cache" its contents so that Google's search engine can include it in the body of websites it searches when it receives a search query. Those terms also include a forum selection clause which states in pertinent part: "Any dispute arising out of or connected with this legal notice shall be subject to the exclusive jurisdiction of the Commonwealth of Virginia or of the U.S. District Court for the Western District of Virginia." (*Id.* at Tab 4).

## ARGUMENT

## I.  THE FORUM SELECTION PROVISION IN THE 2006 TERMS AND CONDITIONS OF ROSETTA STONE'S ADVERTISING ACCOUNT WITH GOOGLE DOES NOT APPLY TO THIS LAWSUIT.

The burden of persuasion on a motion to dismiss based on a forum selection clause is on the party seeking enforcement of the clause. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009); *Cable-La, Inc. v. Williams Commc'ns, Inc.*, 104 F. Supp. 2d 569, 574-75 (M.D.N.C. 1999). In order to meet that burden, Google must prove that: "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc.*, 572 F.3d at 89 (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)). "After the party seeking enforcement has established these three conditions, *the burden shifts* to the party resisting enforcement to rebut the presumption of enforceability. . . ." *Id.* (emphasis added).[5]

---

[5]  Google's Motion to Dismiss repeatedly states that there is a "heavy burden" upon Rosetta Stone to show that the forum selection clause should not be enforced. This argument is extraordinarily misleading. As the case law uniformly holds, the initial burden of persuasion

[Footnote continued on next page]

For present purposes, Rosetta Stone does not contest the second element that Google must establish -- whether the forum selection clause is mandatory. Rosetta Stone does contest whether the forum selection clause was reasonably communicated and whether the claims in this lawsuit are subject to the forum selection clause. Not only does Google have the burden of persuasion on these issues, but all facts must be viewed in a light most favorable to Rosetta Stone. *See Phillips*, 494 F.3d at 384.

### A.   The Claims In This Lawsuit Do Not Arise Out Of Or Relate To Rosetta Stone's Participation In Google's Advertising Program.

"Before a Court can consider a forum selection clause, it first must decide whether the clause applies to the type of claim asserted in the lawsuit." *Smith v. Lucent Techs, Inc.*, Civ. A. No. 02-0481, 2004 U.S. Dist. LEXIS 4074, at *25-26 (E.D. La. Mar. 16, 2004) (internal quotation marks omitted). *Accord Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1431 (N.D. Cal. 1997) ("The threshold issue . . . is the applicability of the forum selection clause. . . ."). Of course, this is true because "[f]orum selection clauses are enforced only when they encompass the claim at issue." *Light v. Taylor*, 317 Fed. Appx. 82, 83 (2d Cir. 2009). In making this determination, courts should "accept uncontroverted allegations in the plaintiff's complaint as true and resolve factual conflicts in the plaintiff's favor." *Gullion*

---

[Footnote continued from previous page]
    is upon Google to establish that the forum selection clause is applicable and valid. Only after Google meets that burden, does a rebuttable presumption of enforceability arise, shifting the burden to Rosetta Stone to show that enforcement would be unfair. *See, e.g., Altvater Gessler-J.A. Baczewski Int'l (USA) Inc.*, 572 F.3d at 89; *MAK Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295, 300-301 (D. Conn. 2009). *See also Berry v. Soul Circus*, 189 F. Supp. 2d 290, 293-94 (D. Md. 2002).

*v. JLG ServicePlus, Inc.*, Civ. A. No. H-06-1015, 2007 U.S. Dist. LEXIS 6038, at \*15 (S.D. Tex. Jan. 29, 2007).[6]

This lawsuit does not plead any breach of contract by Google arising out of Rosetta Stone's advertising with Google. *Rosetta Stone's advertising* on the Google network is simply not at issue. Thus, Google cannot and does not invoke the forum selection clause in the typical manner -- to transfer a claim for breach of the contract in which the forum selection clause appears. Rather, Google argues that the forum selection clause extends to claims arising from actions outside the "deal" between Google and Rosetta Stone embodied in the advertising contract. There have been cases in which courts have applied forum selection clauses to tort causes of action facially independent of the contractual arrangement in which the forum selection clause is found. Those cases, however, involved efforts by the plaintiff to "plead around" the forum selection clause by bringing a quasi-contract claim or tort causes of action that required interpretation of the contract. *See, e.g., Phillips*, 494 F.3d at 388. That is not the case here.

The test for determining whether a forum selection clause applies to claims other than for breach of the contract in which the clause appears varies slightly among the Circuit Courts.[7] In the Ninth Circuit, this question turns on "whether resolution of the claims relates to interpretation

---

[6] Google's Motion to Dismiss is again quite misleading as to the standard for a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure. In deciding a motion under Rule 12(b)(3), a court is free to look outside the pleadings because the pleadings need not be accepted as true, but "all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D. Md. 1990) (quoting *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 457 (4th Cir. 1983)).

[7] The Fourth Circuit has never addressed this issue. *See Southeast Coastal Development Fund, L.L.C. v. Commercial Real Estate Inc.*, No. 5:08-CV-15-F, 2009 WL 928543, at \*11 (E.D.N.C. April 3, 2009) (the Fourth Circuit has not addressed "the precise issue of whether the 'scope' of a forum selection clause includes torts claims").

of the contract." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). The Third Circuit has held that the forum selection clause will only extend to non-contract claims when such claims "ultimately depend on the existence of a contractual relationship" between the parties. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983). The First Circuit and Eighth Circuit have phrased the test somewhat differently, asking whether the claims at issue "involve the same operative facts as would a parallel claim for breach of contract." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). *Accord Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993). No matter which test is applied here, however, the forum selection clause does not apply to Rosetta Stone's lawsuit.

None of the causes of action in this lawsuit require an interpretation of the advertising contract between Google and Rosetta Stone. None of the causes of action in this lawsuit turn on the existence of a contractual relationship between Google and Rosetta Stone. Even if Rosetta Stone had never advertised with Google, it could still bring this lawsuit. And, the same facts set out in the lawsuit would not allow Rosetta Stone to plead a cause of action for breach of contract against Google. Therefore, the Court must conclude that the forum selection clause at issue here, does not apply to the causes of action brought by Rosetta Stone.[8]

---

[8] The Fifth Circuit has reached this same conclusion under similar facts with respect to another search engine, Yahoo. American Airlines brought claims against Yahoo similar to those brought here by Rosetta Stone against Google. Yahoo sought to dismiss the case based on a forum selection clause in the terms and conditions governing the American Airlines advertising account with Yahoo. The district court denied Yahoo's motion. That decision was upheld by the Fifth Circuit which stated: "American's claims against Yahoo are based on trademark infringement occurring through relationships between Yahoo and third parties. The claims do not depend on the contractual relationship between American and Yahoo, do not require interpretation of the Sponsored Search Agreement contract, and involve different

[Footnote continued on next page]

Google's Motion to Dismiss wholly ignores the foregoing body of caselaw. Instead, Google argues that the scope of the 2006 forum selection clause is broader than the contract in which it is contained -- that it applies to anything remotely related to advertising on the Google website. Google's argument flies in the face of the plain language of the 2006 terms and conditions for Rosetta Stone's advertising account, as well as basic rules of contract interpretation.

"In analyzing the applicability of forum selection clauses, we use general principles of contract interpretation." *Martin v. Ball*, No. 08-1757, 2009 WL 1637797, at *2 (4th Cir. June 12, 2009) (*per curiam*) (citing *Sucampo Pharms., Inc. v. Astellas Pharma., Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). *Accord Phillips*, 494 F.3d at 386 (court should "apply general contract principles . . . to discern the meaning and scope of the forum clause."). Of particular importance here is the general rule of contract law that "A contract 'must be construed as a whole and the intention of the parties must be ascertained from consideration of the entire contract, not some isolated portion.'" *Hanson v. McCaw Cellular Commc'n, Inc.*, 77 F.3d 663, 668 (2d Cir. 1996) (quoting *County of Marin v. Assessment Appeals Bd.*, 134 Cal. Rptr. 349, 352 (1976)).

The 2006 terms and conditions for Rosetta Stone's advertising accounts state at the outset that: "These terms govern *Customer's participation* in Google's advertising program(s) ('Program') and, as applicable, any insertion orders or service agreements ('IO') executed by and between the parties and/or *Customer's* online management of any advertising campaigns." (Aguiar Dec., Ex. 1) (emphasis added). Thus, the forum selection clause -- one of the "Terms" referenced in the preamble -- does not extend to absolutely anything relating to Google's

---

[Footnote continued from previous page]
operative facts than would exist if American brought a breach of contract claim against Yahoo. . . ." *In re Yahoo! Inc.*, 313 Fed. Appx. 722 (5th Cir. 2009).

AdWords program, but rather is limited to "*Customer*'s *participation* in Google's advertising program(s)." "Customer" here, of course, refers to Rosetta Stone. Reading the preamble and Section 9 together, as the Court must, the proper interpretation of the forum selection clause is that claims arising out of or related to the 2006 Google-Rosetta Stone contract or *Rosetta Stone's participation* in Google's advertising program must be brought in Santa Clara County, California. As Google concedes, the lawsuit does not arise out of the 2006 advertising agreement between Google and Rosetta Stone. And, the lawsuit does not relate to Rosetta Stone's participation in Google's advertising program: it relates to Google's unauthorized sale to third parties of Rosetta Stone's trademarks. Accordingly, the asserted forum selection clause does not apply.

Indeed, a review of the contract as a whole reveals that it was directed exclusively at the advertising relationship between Rosetta Stone and Google. For example, Section 1 imposes certain Google policies upon Rosetta Stone's advertising. Section 2 makes Rosetta Stone responsible for advertisement content. Section 3 governs how and when Google or Rosetta Stone can cancel Rosetta Stone advertising. Section 4 prohibits Rosetta Stone from certain actions relating to how it advertises on the Google network. Section 5 is a disclaimer of warranties by Google relating to Rosetta Stone's advertising. Section 6 is an acknowledgment that Rosetta Stone is authorized to advertise on Google and owns the rights to its ads. Section 7 establishes the terms of payment by Rosetta Stone for its advertising on the Google network. Section 8 requires Rosetta Stone to indemnify Google from any third-party claim against Google arising out of Rosetta Stone's advertising. Nowhere in the contract are there any references to Google's sale of trademarks to third parties. Thus, the contract taken as a whole is manifestly limited to Rosetta Stone's own advertising on Google's network and the forum selection clause

must be understood and interpreted in that context. *See* 11 Richard A. Lord, *Williston on Contracts* § 32.5 (4th ed. Supp. 2009) ("contract will be read as a whole"); Restatement (Second) of Contracts § 202 (1981) ("A writing is interpreted as a whole").

It should be evident from the foregoing that Rosetta Stone's proffered interpretation of the 2006 terms and conditions is more reasonable than Google's proffered interpretation. If, however, the Court believes that both proffered interpretations have some merit, then the forum selection clause must be declared ambiguous. *See* 11 Richard A. Lord, *Williston on Contracts* § 32.12 (4th ed. Supp. 2009) ("If a contract is capable of more than one reasonable interpretation, it is ambiguous."). And, any ambiguity in a forum selection clause must be construed against Google, the drafter of the provision. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77-78 (9th Cir. 1987); *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir. 1985) (*per curiam*); *Zapata Marine Service v. O/Y Finnlines, Ltd.*, 571 F.2d 208, 209 (5th Cir. 1978) (*per curiam*); *Southeast Coastal Development Fund, L.L.C. v. Commercial Real Estate Inc.*, No. 5:08-CV-15- 2009 WL 928543, at *10 (E.D.N.C. April 3, 2009); *McWilliams Murphy and Assocs., Inc. v. Heart and Vascular Clinic of N. Colo., P.C.*, No. 1:08-CV-361, 2008 WL 4933956, at *3 (M.D.N.C. Nov. 14, 2008). *See also* 11 Richard A. Lord, *Williston on Contracts*, § 32.12 (4th ed. 1991) ("any contract of adhesion, a contract entered into without any meaningful negotiation . . . is particularly susceptible to the rule that ambiguities will be construed against the drafter.").[9]

---

[9] Alternatively, the language of the forum selection clause should be interpreted against the party who caused the uncertainty to exist -- Google. *See* 11 Richard A. Lord, *Williston on Contracts* § 32.12 (4th ed. Supp. 2009). *Accord Insurance Co. of North America v. NNR Aircargo Service (USA), Inc.*, 201 F.3d 1111, 1114 (9th Cir. 2000) ("any uncertainty in a contract is construed most strongly against the party who caused the uncertainty to exist").

[Footnote continued on next page]

Quite frankly, if Google had wanted the 2006 forum selection clause to mean that "any cause of action Rosetta Stone may have against Google relating to the placement of advertising by third parties on the Google advertising network must be brought in Santa Clara County, California," it should have written the clause that way. It would not have been a difficult exercise in drafting and Google certainly has a large number of in-house lawyers and outside law firms available to develop language that means what Google wants it to say. The decision by Google to use language that did not convey the meaning it intended is attributable only to Google.[10] Therefore, the 2006 forum selection clause must be interpreted as not applying to this lawsuit.

**B.    The Forum Selection Clause Does Not Apply To Much Of Google's Wrongful Conduct.**

The particular forum selection clause asserted by Google in its Motion to Dismiss was first agreed to by the parties on or about August 29, 2006. (Aguiar Dec., ¶ 11). Prior to that date, the particular forum selection clause that applied to Rosetta Stone's advertising account with Google stated: "You agree that the exclusive venue for any disputes arising under this Agreement shall be the state and federal courts located in Santa Clara County, California." Clearly, this 2002 forum selection clause does not apply to the wrongful conduct Google stands

---

[Footnote continued from previous page]
Google presented this forum selection provision to Rosetta Stone on a "take-it-or-leave-it" basis, with no opportunity to discuss what it meant, let alone negotiate the language. Thus, Google created any uncertainty relating to the meaning of the language and the forum selection provision should be construed against it.

[10] It is impossible not to note that the 2002 forum selection clause was clearly drafted and set forth in a separate provision captioned "Choice of Law and Venue." (Amborn Dec., Tab 1). In contrast, the 2006 forum selection clause is buried in a thirteen-sentence provision captioned "Miscellaneous" and uses cryptic language. One cannot help but wonder if those changes reflect an attempt by Google to camouflage the intended purpose of the provision from its customers, which would be yet another reason to refuse to apply the clause here.

accused of in this lawsuit.  Indeed, Google concurs as it does not assert this clause as a basis for

dismissal of the lawsuit.  Thus, Google's argument for dismissal is, at best, an argument

applicable only to its wrongful conduct occurring after August 29, 2006.[11]  More than four years

of wrongful conduct are not encompassed by the forum selection clause asserted by Google.  *See*

*Gullion*, 2007 U.S. Dist. LEXIS 6038, at *22-23 (forum selection clause not intended to govern

causes of action arising under earlier agreements); *Anselmo v. Univision Station Group, Inc.*,

C.A. No. 92 Civ. 1471, 1993 U.S. Dist. LEXIS 428, at *8 (S.D.N.Y. Jan. 15, 1993) (same).

Moreover, Count VIII of the Complaint for violation of the Virginia Business Conspiracy

Act, Va. Code § 18:2-499, is also not encompassed by the forum selection clause, even under

Google's proffered expansive interpretation of that clause.  Count VIII is based on Google

knowingly inducing Rosetta Stone's competitors to infringe the Rosetta Stone Marks and

knowingly inducing Rosetta Stone resellers to breach provisions of a contract that requires them

to refrain from purchasing, using, or registering any keywords or search terms that are identical

or similar to, or contain, any of the Rosetta Stone Marks.  (Complaint, ¶¶ 130-135).  This claim

does not depend on any act of advertising on the Google network.  Thus, it is outside the scope

of the 2006 forum selection clause, even under Google's interpretation of that clause.  It would

be inappropriate for the Court to dismiss the lawsuit under such circumstances where so much of

Google's wrongful conduct is not subject to the forum selection clause.  *See, e.g.*, *Seeberger*

*Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531, 536-38 (W.D.

Tex. 2007) (court refused to apply forum selection clause when not all of plaintiff's causes of

action were covered by it); *Transfirst Holdings, Inc. v. Phillips*, No. 3:06-CV-2303-P, 2007 U.S.

---

[11]  The narrow language of the 2006 forum selection clause does not evince any intent to
encompass preexisting claims.

Dist. LEXIS 14300, at *39-41 (N.D. Tex. March 1, 2007) (courts often refuse to give effect to a forum selection clause that would result in piecemeal adjudication).

**C.    Google's Proffered Interpretation Of The Forum Selection Clause Would Create A Conflict With Other Agreements Between The Parties.**

Under Google's proffered all-encompassing interpretation of the forum selection clause in the 2006 terms and conditions for Rosetta Stone's advertising account, a conflict would arise with other contracts between Rosetta Stone and Google in which Virginia courts are designated as the venue for any litigation. (*See* Narus Dec., Tabs 2-4) (appended hereto as Exhibit 1). A forum selection clause is not enforceable where, as here, there is a web of agreements among the parties with contradictory forum selection clauses. *See, e.g., B&O Mfg. v. Home Depot U.S.A., Inc.*, No. C07-02864, 2007 U.S. Dist. LEXIS 83998, at *8-9 (N.D. Cal. Nov. 1, 2007); *Dynamic Concepts, Inc. v. U-Tech Servs. Corp.*, C.V. A. No. 99-1260, 2000 U.S. Dist. LEXIS 6497, at *17 (D. D.C. Jan. 31, 2000). This conflict between the forum selection clause asserted by Google here, if interpreted as broadly as argued for by Google, and the forum selection clauses in other agreements between the parties renders it inoperable.

**D.    The Forum Selection Clause Was Not Clearly Communicated To Rosetta Stone.**

In addition to establishing that the forum selection clause applies to the claims in this lawsuit, Google also has the burden of proving that the forum selection clause was clearly communicated to Rosetta Stone. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc.*, 572 F.3d at 89; *Phillips*, 494 F.3d at 383-84. Clear communication is required to make certain the parties understand which claims will be subject to the clause. Unless a forum selection clause puts a party on notice that they have consented to have specific types of claims heard in a particular forum, that clause will not be enforced. *See, e.g., Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257,

1291 (9th Cir. 2006) (*en banc*) (refusing to enforce forum selection clause because ambiguous language in the clause "provided inadequate notice" to plaintiff). The inherent ambiguity of the forum selection clause here made it impossible for Rosetta Stone to understand that disputes unrelated to its own advertising on the Google network would have to be brought in California. As Brian Miller, who agreed to the 2006 terms on behalf of Rosetta Stone has testified, he understood the forum selection clause to mean only that "any lawsuit relating to Rosetta Stone's AdWords account would be brought in Santa Clara County, California." (Miller Dec., ¶ 4) (appended hereto as Exhibit 2). When a forum selection clause is ambiguous as to what claims are covered, the requisite mutual consent to that contractual term is lacking and no valid contract with respect to the forum selection clause exists. *See, e.g., Hunt v. Superior Court*, 97 Cal. Rptr. 2d 215, 219 (2000); *Carnival Cruise Lines, Inc. v. Superior Court*, 234 Cal. App. 3d 1019, 1026-27 (1991). Google's failure to use clear and unambiguous language in the forum selection clause must be strongly construed against it.

## II. COUNT IV OF THE COMPLAINT PROPERLY PLEADS A CAUSE OF ACTION FOR FALSE ENDORSEMENT UNDER SECTION 43(a) OF THE LANHAM ACT.

Google also seeks dismissal of Count IV of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. At this early stage, the Court must accept all factual allegations in the Complaint as true and construe them in the light most favorable to Rosetta Stone. *See Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009).

Count IV of the Complaint alleges that Google has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act contains "two prongs" under which a cause of action may be brought -- claims for "false association" and claims for "false advertising." *Cromer v. Lounsbury Chiropractic Offices, Inc.*, 866 F. Supp. 960, 963 (S.D.W.Va. 1994) (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)). "To state a

-16-

false advertising claim . . . the plaintiff must be a competitor." *Id.* This, however, is not true of a false association claim under Section 43(a). "To state a false association claim, the plaintiff need not be a competitor, but must have a commercial interest in the misused product." *Id.* False association claims includes instances of false endorsement. False endorsement under Section 43(a) of the Lanham Act occurs when a plaintiff's trademarks are "used in such a way as to deceive the public into believing that [plaintiff] endorsed, sponsored, or approved of the defendant's product." *Comins v. Discovery Commc'ns, Inc.*, 200 F. Supp. 2d 512, 522 (D. Md. 2002). Count IV is plead in exactly this manner -- as a false endorsement claim.

Google's Motion to Dismiss wholly fails to address the type of false endorsement claim that Rosetta Stone brings in Count IV of the Complaint. As Count IV clearly states: "Google's use of the Rosetta Stone Marks . . . as keyword triggers . . . conveys the false or misleading impression to the public that the third-party advertisers . . . are approved, endorsed or sponsored by Rosetta Stone. . . ." (Complaint, ¶ 101). This claim is entirely distinct from the false designation of origin or "passing off" claims addressed by the cases cited in Google's Motion to Dismiss.

Under a false endorsement claim, such as Count IV of the Complaint, "the plaintiff must prove the likelihood of consumer confusion as to the origin, approval or endorsement of the product." *Comins*, 200 F. Supp. 2d at 522. *Accord Holland v. Psychological Assessment Resources, Inc.*, 482 F. Supp. 2d 667, 685 (D. Md. 2007). There is no requirement that plaintiff and defendant be in competition. *See, e.g., Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir. 1993) (and cases cited therein); *Holland*, 482 F. Supp. 2d at 683 (false endorsement theory can be found "even in the absence of underlying business competition

between the parties"). Thus, Count IV of the Complaint is properly pleaded as a false endorsement claim.

## III. THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE GOOGLE'S UNLAWFUL CONDUCT.

The Communications Decency Act ("CDA") provides in pertinent part:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). This provision confers a limited immunity from certain causes of action such as defamation upon a narrow class of defendants. It is an affirmative defense which must be pleaded by a defendant which then bears the burden of proof as to whether immunity attaches. *See Curran v. Amazon.com, Inc.*, No. 2:07-0354, 2008 WL 472433, at *12 (S.D.W.Va. Feb. 19, 2008). And, "[b]ecause 'invocation of Section 230(c) immunity constitutes an affirmative defense [, a]s the parties are not required to plead around affirmative defenses, such an affirmative defense is generally not fodder for a Rule 12(b)(6) motion.'" *Doctor's Assocs., Inc. v. QIP Holders, LLC,* 82 U.S.P.Q.2d 1603, 1605 (D. Conn. 2007) (*quoting Novak v. Overture Servs., Inc.,* 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004)). *See also Landry-Bell v. Various, Inc.*, Civ. A. No. 05-1526, 2006 U.S. Dist. LEXIS 6662, at *2 (W.D. La. Feb. 1, 2006). Accordingly, Google's Motion to Dismiss Count VIII is inappropriately brought at this time and should be denied.

### A. Google Is An "Information Content Provider" Under The CDA And Not Entitled To CDA Immunity.

Even if the Court decides to entertain Google's motion with respect to Count VIII, it must still be denied as Google cannot invoke CDA immunity here. In order for a defendant to enjoy immunity under the CDA, it must establish that: (1) it is a provider or user of an interactive computer service; (2) it is not an "information content provider" with respect to the information

posted; and (3) the asserted claim treats the defendant as a publisher or speaker of information originating from a third party. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02-CV-2727-G, 2004 WL 833595, at *8 (N.D. Tex. April 19, 2004). Google cannot take advantage of the CDA's immunity because it is an "information content provider" with respect to the "Sponsored Links" at issue in this lawsuit. An "information content provider" is defined in the CDA as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Contrary to the assertions in Google's Motion to Dismiss, the Complaint does not claim Google is only liable for publishing information provided by third parties. Rather, the Complaint unequivocally states: "Google actively participates in the creation of 'Sponsored Links' for its customers, including the information provided within such 'Sponsored Links.'" (Complaint, ¶ 57). This allegation must be accepted as true for purposes of this Rule 12(b)(6) motion. *See Robinson*, 551 F.3d at 222. Thus, as an entity that "participates in the creation" of information provided through the Internet, Google fits squarely within the CDA's definition of an "information content provider" and cannot take advantage of the CDA's immunity. *See* 47 U.S.C. § 230(f)(3) (definition of "information content provider").

Moreover, the Complaint also alleges that: "Google actively solicits and encourages advertisers to use trademarks, service marks, and terms confusingly similar thereto as keyword triggers." (Complaint, ¶ 57). The Complaint further alleges that: "Google also creates the intentionally confusing titles and headings for 'Sponsored Links,' as well as the intentionally confusing visual appearance and positioning on the results page of the 'Sponsored Links.' (*Id.*).

These allegations also must be accepted as true for purposes of this Rule 12(b)(6) motion. *See Robinson*, 551 F.3d at 222.

Courts have held that when a defendant actively solicited and encouraged the posting of defamatory information and then created titles and headings for the defamatory website postings, the defendant was "responsible" for the creation or development of the defamatory information and was not entitled to CDA immunity. *See Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1148-49 (D. Ariz. 2005); *MCW, Inc.*, 2004 WL 833595, at *9-10. For example, the Ninth Circuit refused immunity under the CDA in circumstances comparable to those at issue here. In *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 489 F.3d 921 (9th Cir. 2007), the Ninth Circuit held, over the objection of *amicus* Google, that an online roommate matching service could be deemed an "information content provider" even though the information that it posted was provided by third parties. The Ninth Circuit reasoned that the defendant website's search mechanism and e-mail notifications alerting members to new postings indicated that defendant was neither a passive pass-through of information provided by others nor a mere facilitator of expression by third parties. By categorizing, channeling, and limiting the distribution of users' profiles, Roommates.com provided an additional layer of information that it is "responsible," at least "in part," for creating or developing. *Id.* at 929.

In fact, in one of the few reported decisions addressing CDA immunity in the context of search engine keywords, the court denied immunity to the search engine. In *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D. N.J. 2006), the defendant GoTo.com, a pay-for-priority search engine, sold advertisers the right to use plaintiff's trademark as keywords. GoTo.com contended that such practices were immune under the CDA. The district court disagreed and held: "Immunity does not seem to fit here because the alleged fraud is the use of

the trademark name in the bidding process, and not solely the information from third parties that appears on the search results page." *Id.* at 295.[12]

The Complaint here states an even more compelling case for denying CDA immunity than those in *Hy Cite Corp.*, *MCW, Inc.*, *Roommates.com, LLC* and *800-JR Cigar*. The Complaint avers that Google contributes the most confusing aspects of the Sponsored Link advertising program. This includes Google's decision to use a layout and a title or heading – "Sponsored Links" – that is clearly designed to confuse consumers into believing that these advertisements are officially "sponsored" by Rosetta Stone. (Complaint, ¶ 57). In addition, the Complaint avers that Google actively encourages its advertisers to select and use Rosetta Stone Marks in the title and text of their Sponsored Links. (*Id.*). These allegations support a finding that Google is an "information content provider," jointly responsible with its advertisers for the Sponsored Links.

---

[12] In *Goddard v. Google Inc.*, No. C-08-2738, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008), the plaintiff sought to hold Google liable for fraud committed by mobile service subscription services that advertised on the Google network. The district court held that plaintiff's state law claims were immune under the CDA, specifically noting "the absence of any argument that Google created or developed the offending content." *Id.* at *4. After being granted leave to amend, plaintiff contended that Google's Keyword Tool "requires" the inclusion of illegal content in Sponsored Links displayed on the Google network. *Goddard v. Google Inc.*, No. C 08-2738, 2009 WL 2365866 (N.D. Cal. July 31, 2009). The district court held that plaintiff's own amended complaint made clear that Google did not require inclusion of illegal content and, therefore, that CDA immunity still applied. *Id.* at *2. These decisions are distinguishable from this case because Rosetta Stone's Complaint clearly and unambiguously contends Google creates, at least in part, the content of the Sponsored Links. (Complaint, ¶ 57). Moreover, the Complaint alleges that Google creates the confusing titles and headings for the Sponsored Links; creates the confusing visual appearance and positioning on the results page of the Sponsored Links; and requires the use of the confusing term "Sponsored Link," instead of "Paid Advertisement." (*Id.*). This far more specific and detailed pleading distinguishes this lawsuit from the complaints at issue in *Goddard* and are sufficient at this early stage of the litigation to establish that Google is an information content provider and not entitled to CDA immunity.

**B.     CDA Immunity Is Inapplicable To Rosetta Stone's Conspiracy Claim.**

Google makes the conclusory assertion that the CDA provides it with immunity from Count VIII of the Complaint which alleges a violation of the Virginia Business Conspiracy Act, Va. Code § 18.2-499.  This is inaccurate.  Even if Google were not an "information content provider" and could take advantage of the CDA's immunity provision, CDA immunity does not apply to Count VIII.

The CDA only provides immunity from state law causes of action in which a defendant acted as "a publisher or speaker of information," such as a cause of action for libel.  Count VIII of the Complaint, however, is not based on Google's role as "a publisher or speaker of information."  Count VIII of the Complaint is based on Google's actions in knowingly inducing Rosetta Stone's competitors to infringe the Rosetta Stone Marks and in knowingly inducing Rosetta Stone resellers to breach provisions of a contract that requires them to refrain from purchasing, using, or registering any keywords or search terms that are identical or similar to, or contain, any of the Rosetta Stone Marks.  (Complaint, ¶¶ 130-135).  This claim does not depend on the act of publishing communications.  This cause of action, therefore, is not based on Google's publication of its Sponsored Links, and CDA immunity is unavailable.

In *Zeran v. America Online, Inc.*, 958 F. Supp. 1124 (E.D. Va. 1997), this Court concluded that Section 230 reflects Congress' unambiguous intent to retain state law remedies, except in event of clear conflict between those remedies and Section 230.  Specifically, this Court held that Congressional intent in enacting Section 230 was not "to preclude any state regulation of the Internet, but rather to eliminate obstacles to the private development of blocking and filtering technologies capable of restricting inappropriate online content."  *Id.* at 1131 ("[T]he CDA reflects no congressional intent, express or implied, to preempt all state law

causes of action concerning interactive computer services."). This decision was affirmed by the Fourth Circuit. *See Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997).

*Zeran* is consistent with the CDA's legislative history, which was to "provide[] 'Good Samaritan' protections from civil liability for providers or users of an interactive computer service for actions to restrict or to enable restriction of access to objectionable online material [and] overrule [particular] decisions which have treated such providers and users as publishers or speakers of content that is not their own." H.R. Rep. 104-458, at 194 (1996). *See also* 141 Cong. Rec. H 8470-71 (daily ed. Aug. 4, 1995). Nothing in the CDA's legislative history, however, evinces an intent to deprive states of their ability to police the wrongful conduct of parties who knowingly induce the breach of contracts and/or the infringement of trademarks. Google's actions in conspiring with third parties are unrelated to the type of protection for online speech that the CDA was intended to provided. Accordingly, Google's motion to dismiss Count VIII of the Complaint should be rejected.

## CONCLUSION

For the foregoing reasons, Google's Motion to Dismiss should be denied.

Respectfully submitted,

Dated:  September 9, 2009

Of Counsel:

Howard S. Hogan, Esq.
Bennett Borden, Esq.
Kyle Amborn, Esq.
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC  20036

_____/s/_____
Terence P. Ross
VA State Bar # 026408

GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC  20036
Phone:  202-955-8500
Fax:     202-467-053

Counsel to Plaintiff,
Rosetta Stone Ltd.

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2009, I will electronically file the

foregoing Memorandum of Points and Authorities in Opposition to Defendant's Motion to

Dismiss with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

> Jonathan D. Frieden, Esq.
> ODIN, FELDMAN & PETTLEMAN, P.C.
> 9302 Lee Highway
> Suite 1100
> Fairfax, VA 22031
> jonathan.frieden@ofplaw.com
>
> *Counsel for Plaintiff Google Inc.*

> _____/s/_____
> Terence P. Ross
> GIBSON, DUNN & CRUTCHER, LLP
> 1050 Connecticut Avenue, N.W.
> Suite 300
> Washington, DC 20036
> (202) 955-8500 (Telephone)
> (202) 467-0539 (Facsimile)
>
> *Counsel for Plaintiff,*
> *Rosetta Stone Ltd.*

100580245_1.DOC