IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ROSETTA STONE LTD.

    Plaintiff,

    v.

GOOGLE INC.

    Defendant.

CIVIL ACTION NO. 1:09cv736
(GBL / TCB)

# DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

**TABLE OF CONTENTS**

                                                              **Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................2

I.     THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES DISMISSAL OF ROSETTA STONE'S COMPLAINT .......................................2

          A.     Under All Applicable Rules of Contract Interpretation, The Forum Selection Clause Of The AdWords Contract Applies to Rosetta Stone's Complaint..............................................................................................2

          B.     The Parties' Forum Selection Clause Applies To All Of Rosetta Stone's Claims. ......................................................................................6

II.    COUNTS IV AND VIII SHOULD BE DISMISSED ............................................9

          A.     The Fourth Cause Of Action Fails to State A Claim Under The Lanham Act...............................................................................................9

          B.     The Eighth Cause of Action Is Barred By The Communications Decency Act..............................................................................................9

                    1.     Count VIII Can, And Must, Be Dismissed Under Rule 12(b)(6). ...............9

                    2.     The CDA Applies to Bar Claims Such As Count VIII. .............................10

                    3.     Google Is A Protected Interactive Service Provider. ................................12

CONCLUSION..................................................................................................................15

Defendant Google Inc. ("Google") hereby respectfully submits this Reply Memorandum In Further Support Of Its Motion To Dismiss the Complaint of Plaintiff Rosetta Stone Ltd. ("Rosetta Stone") and in reply to Rosetta Stone's Opposition Memorandum ("Opp.").

## INTRODUCTION

In its Opposition, Rosetta Stone: (1) concedes that it reviewed and agreed to the terms of the AdWords Contract that expressly requires that all claims relating to Google's advertising programs be litigated only in the courts of Santa Clara County, California; (2) does not dispute that the AdWords program is one of Google's advertising programs; and (3) does not dispute that the forum selection clause is mandatory. Rosetta Stone tries to mask these fatal concessions with citations to numerous inapposite cases and contracts, but it fails to offer any legitimate reason why the plain and clear language of the Parties' agreed-upon forum selection clause should not result in dismissal.

Nor does the Opposition salvage Rosetta Stone's Fourth Cause of Action. The very precedent relied upon by Rosetta Stone establishes that a "false endorsement" claim must be based on public deception as to the plaintiff's endorsement of "the *defendant*'s product." Having admitted in the Opposition that its claim against Google is based on the alleged misimpression that Rosetta Stone endorses *third-party advertisers* (i.e., not Google), Rosetta Stone has not pled a valid "false endorsement" claim.

The Communications Decency Act's immunity for interactive service providers that publish information of third parties applies here and requires dismissal of Count VIII. Because Rosetta Stone alleges that the conspiracy is based on contractual breaches and trademark infringement arising from third parties' participation in Google's AdWords program and Google's display of ads through the program, its current contention that the claim "is not based on Google's publication of its Sponsored Links" defies all logic. In addition, it has not identified

1

any precedent refusing to apply CDA protection to an interactive service provider based on allegations similar to those pled in its Complaint.

# ARGUMENT

## I. THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES DISMISSAL OF ROSETTA STONE'S COMPLAINT

In this Circuit, forum selection clauses are presumed valid and enforceable. *E.g.*, *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213 (4th Cir. 2007) ("A forum-selection clause is 'prima facie valid and should be enforced . . . .'") (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). When a forum selection clause is mandatory and applicable to the claims at issue, as it is here, the party resisting enforcement bears the heavy burden of clearly proving that enforcement would be unreasonable and unjust. *E.g., Garrett v. Gulf Stream Coach, Inc.*, No. 3:08cv792, 2009 WL 936297, at *2 (E.D. Va. Apr. 7, 2009) (citing *M/S Bremen,* 407 U.S. at 15, 17). Knowing that it could not satisfy of any of this Circuit's tests for refusing to enforce a valid and applicable clause—and unable to dispute that the clause here is mandatory—Rosetta Stone devotes much of its brief to trying to find some other way to nullify the plain language of the Parties' Agreement. Under well-accepted principles of contract law, governing precedent, and common sense, however, these diversionary tactics should be rejected.

### A. Under All Applicable Rules of Contract Interpretation, The Forum Selection Clause Of The AdWords Contract Applies to Rosetta Stone's Complaint.

It is undisputed that the AdWords Contract is a valid agreement between the Parties. Rosetta Stone admits that it affirmatively agreed to the current AdWords Contract and reviewed the revisions it contained. Declaration of Brian James Miller dated Sept. 3, 2009 ("Miller Decl."), ¶ 4. The forum selection clause had been revised to provide that "all claims . . . relating to . . . Google's Programs . . . shall be litigated exclusively in the federal or state courts of Santa

Clara County, California." Declaration of Christina Aguiar dated Aug. 21, 2009 ("Aguiar Decl."), Ex. A, ¶ 9. This language is clear and unambiguous. As such, it must be enforced.

Rosetta Stone contends that principles of contract interpretation somehow require this Court to ignore the plain language of the contract. However, "[w]here the meaning of the language used is clear, a contract needs no interpretation. It speaks for itself." *E.g., Carter v. Carter*, 202 Va. 892, 896 (Va. 1961).

Rosetta Stone's suggestion that the specific language of the forum selection clause is somehow limited by other, more general terms (Opp. at 10-11) is also unfounded. The preamble's reference to the AdWords Contract "govern[ing]" a customer's "participation in Google's advertising program(s)" is a logical introduction to the terms that customers must agree to as a prerequisite for participating in the AdWords program. Moreover, Rosetta Stone's position is contrary to the principle that "specific language trumps general text." *Aetna Casualty & Surety Co. v. Holsten*, 100 F.3d 950, 950 (4th Cir. 1996).

Rosetta Stone also proffers parol evidence of its privately-held interpretation of the contract language to try to create an ambiguity. Opp. at 16; Miller Decl., ¶ 4. However, "this court need not concern itself with the reasonableness of [a party's] expectations, if it first decides that the [contract language is unambiguous]." *Aetna Casualty & Surety Co.,* 100 F.3d at 950 (rejecting plaintiff's "attempts to read an ambiguity" into the contract and affirming summary judgment for the defendant); *accord Daniels v. Non-Fluid Oil Equipment Co.,* 966 F.2d 1210, 1993 WL 219811, at *2 (4th Cir. 1993) ("If the language of the contract is clear and unambiguous, the court must interpret the contract as written, and cannot look beyond the terms to see what the parties' intent might have been.").

3

While the forum selection clause of the AdWords Contract may not be "typical," in that it is broader than clauses relating only to a contract, that does not render it unenforceable. "[P]arties have the right to make their own contracts, and when such contracts are capable of clear interpretation, the court's province is confined to the enforcement of the contract." *Daniels*, 1993 WL 219811 at *2. As such, "neither party may contend for an interpretation at variance with the language on the ground that the writing did not fully express his intent." *Id*. (internal quotation marks and citation omitted). Likewise, Rosetta Stone's post-hoc suggestion of more specific language (Opp. 13), which would have restricted the scope of the clause inconsistently with its present meaning, neither requires nor justifies not enforcing the plain language of the agreement. *E.g., Doswell Ltd. Partnership v. Virginia Electric and Power Co.*, 251 Va. 215, 223 (Va. 1996) (Even if the language in the contract could have been set forth with more specificity, " the court must construe the language as written if its parts can be read together without conflict.").

Rosetta Stone references multiple other contracts so as to have the plain language "relating to Google Programs" read out of the contract. But these contracts further demonstrate that the plain language of the AdWords Contract's forum clause must necessarily apply to something more than claims arising from or related to Rosetta Stone's placement of ads through Google. Consider, for example, the contracts Rosetta Stone cites for its own goods and services:

- "Licensee agrees that any action *arising out of or related to **this Agreement*** must be brought exclusively in a US state or Federal court in the Commonwealth of Virginia . . . ." Enterprise License Agreement, attached to the Declaration of Harold Narus dated September 9, 2009 ("Narus Decl."), Tab 2, at ¶ 12 A (emphasis added).

- "The parties agree to submit to the personal jurisdiction of the United States District Court for the Eastern District of Virginia for all claims and actions *arising under **this Agreement*** . . . ." Rosetta Stone Purchase Order Terms and Conditions, Narus Decl., Tab 3, at ¶ 19 (emphasis added).

4

- "Any dispute *arising out of or connected with **this legal notice*** shall be subject to the exclusive jurisdiction of the courts of the Commonwealth of Virginia or of the U.S. District Court for the Western District of Virginia." Terms and Conditions [of Rosetta Stone's website], Narus Decl., Tab 4, at ¶ 8 (emphasis added).

By their plain language, Rosetta Stone's forum selection clauses apply only to claims, actions, and/or disputes "arising out of," "arising under," "related to," and/or "connected to" only *its agreements*. Accordingly, they are inapplicable because none of Rosetta Stone's claims against Google implicate those agreements. Moreover, these agreements highlight the stark contrast to the venue scope of the AdWords Contract, which includes not only "ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT" but also "ALL CLAIMS . . . RELATING TO . . . THE GOOGLE PROGRAM(S)," which is defined as "Google's advertising program(s)." Aguiar Decl. ¶ 10, Ex. A.

This language is also unequivocally different from and notably broader than the language in the first AdWords agreement between the Parties. There, the forum selection clause was limited to "disputes arising under *this Agreement*."[1] 2002 Google Terms and Conditions, attached the Declaration of Kyle M. Amborn, dated Sept. 9, 2009, Tab 1, ¶ 20 (emphasis added). Given their obvious differences, the plain language of the AdWords Contract cannot reasonably be construed to mean the same thing as these other provisions, which expressly designate venue only for claims connected with the agreements containing them; doing so would render the additional language entirely superfluous. *E.g., American Airlines v. Yahoo! Inc.*, 2009 WL 381995 *1, n.2 (N.D. Tex. Jan. 19, 2009) (contrasting difference in language of two clauses to demonstrate difference in meaning); *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36 (Va. 1995) ("No word or clause in [a] contract will be treated as meaningless if a reasonable

---

[1] Although not necessary for the current AdWords Contract's forum selection clause to apply, Rosetta Stone's Complaint does contain specific references to Rosetta Stone's participation in the AdWords program. *Compare* Opp. at 8 *with* Compl. ¶ 67, p. 36.

meaning can be given to it, and there is a presumption that the parties have not used words needlessly.").

### B. The Parties' Forum Selection Clause Applies To All Of Rosetta Stone's Claims.

With the exception of Count VIII (discussed below), Rosetta Stone basically concedes that the substance of its Complaint relates to Google's advertising programs. Opp. at 14. Despite doing so, Rosetta Stone still tries to carve out portions of its Complaint as outside the scope of Google advertising programs covered by the AdWords Contract. But Rosetta Stone's citation of case law interpreting inapposite forum selection clauses does nothing to diminish the applicability of the relevant clause to all claims here.

The entirety of the authority Rosetta Stone cites for the proposition that the AdWords Contract can apply only to conduct after 2006 amounts to two cases construing forum selection clauses tied to the agreements that contained them. Opp. at 14. Because those clauses were limited to litigation connected to specific agreements, claims that arose before those agreements existed and did not relate to those agreements naturally did not fall within the scope of those clauses. *Guillion v. JLG Serviceplus, Inc.*, No. H-06-1015, 2007 U.S. Dist. LEXIS 6038, at \*\* 22-23 (S.D. Tex. Jan. 29, 2007) ("By its own terms, the Employment Agreement's forum selection clause applies only to '**action[s] commenced hereunder**,' and, as such, it was not intended to govern disputes commenced under earlier, separate agreements, such as the alleged partnership agreement that forms the basis of Plaintiff's complaint.") (emphasis added); *Anselmo v. Univision Station Group, Inc.*, No. 92Civ.1471, 1993 U.S. Dist. LEXIS 428, at \*8 (S.D.N.Y. Jan. 15, 1993) ("[T]he forum selection clause by its terms applies only to litigation **relating to 'this Agreement,'** so it was not intended to govern disputes arising under the terms of earlier contracts or agreements . . . .") (emphasis added).

Unlike *Guillion* and *Anselmo*, because the forum selection clause here is not limited to claims related to the AdWords Contract, it is not inherently limited in time by the creation of that contract. Rather, it plainly and unambiguously relates to "ALL CLAIMS . . . RELATING TO . . . THE GOOGLE PROGRAM(S)." Aguiar Decl. ¶ 10, Ex. A, ¶ 9. The Complaint does not cover any actions that occurred before the creation of the Google advertising programs, and nothing in the plain language of the forum selection clause justifies the temporal line Rosetta Stone wishes existed—particularly given the integration clause in the AdWords Contract. *Id.*

The attempt to carve out Count VIII from the application of the forum selection clause similarly fails. That count is predicated entirely upon Google's advertising program, and its most substantive paragraph alleges: "Google entered into agreements with . . . a direct competitor of Rosetta Stone . . . pursuant to which Google would display 'Sponsored Links' . . . in response to searches for the Rosetta Stone Marks . . . ." Compl. ¶ 132. Those agreements are indisputably AdWords Contracts, and the "display of 'Sponsored Links'" is unequivocally related to Google's advertising programs. Rosetta Stone's assertions to the contrary are frivolous.

Likewise, Rosetta Stone's reliance on the *Yahoo!* decision is misplaced. As the district court explained, the "Choice of Law" paragraph at issue in that action appeared in a "boilerplate 'terms and conditions' website, incorporated by reference into an advertising contract," and required the other party to "submit to the exclusive jurisdiction of the state and federal courts located in Los Angeles County or Santa Clara County, California, or another location designated by us." *Yahoo!*, 2009 WL 381995 at * 1. Because the "clause makes no mention that American's claims must be brought exclusively in a forum of Yahoo's choosing, only that American itself will submit to a California (or other designated) court's jurisdiction"—i.e., it was

not a mandatory forum selection clause—the court found that "the clause does not pertain to claims brought by American against Yahoo." *Id.* The court then noted that its interpretation was reinforced by comparing that clause to another that Yahoo! had prepared that provided that "*any and all claims, causes of actions or disputes* (regardless of the theory) arising out of or relating to the [agreement], or the relationship between you and Yahoo!, *shall be brought exclusively in the courts located in [California]." Id.* n.2 (alterations and emphasis original). Given these facts, it is unsurprising that the Fifth Circuit found that the "high hurdle for obtaining the extraordinary writ of mandamus has not been cleared in this case." *In re Yahoo! Inc.*, 313 Fed. Appx. 722, 2009 WL 613174, at *1 (5th Cir. Mar. 11, 2009).

Again, the facts here are significantly different. Unlike the inapplicable Yahoo! Provision, Google's AdWords Contract's forum selection clause is contained directly in the parties' agreement, not merely incorporated by reference, and, more importantly, it is indisputably mandatory. *See* Opp. at 7. Accordingly, the *Yahoo!* decision does not support Rosetta Stone's position that "the forum selection clause at issue here[] does not apply." Opp. at 9 and n.8. Nor do any of the other cases it cites, including the non-Fourth Circuit decisions addressing when a forum selection clause expressly tied to the contract that contains it applies to non-contract claims.[2]

---

[2] In none of the cases Rosetta Stone cites was there any dispute that the scope of the forum selection clauses at issue were tied to the parties' contractual relationship. *See*, *e.g.*, *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 511 (9th Cir. 1988); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 192 (3d Cir. 1983); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 690 (8th Cir. 1997); *Lambert v. Kysar*, 983 F.2d 1110, 1111-12 (1st Cir. 1993). Moreover, in all four cases the courts held that the forum selection clauses did apply to the tort claims at issue.

Because Rosetta Stone has failed to identify any precedent that rebuts the presumed validity of the parties' AdWords Contract, Google respectfully submits that this Court must enforce the Parties' agreed-upon forum selection clause and should dismiss the Complaint.

## II. COUNTS IV AND VIII SHOULD BE DISMISSED

Even if the Court does not dismiss Rosetta Stone's entire Complaint, it should dismiss Counts IV and VIII.

### A. The Fourth Cause Of Action Fails to State A Claim Under The Lanham Act.

In its Opposition, Rosetta Stone characterizes its self-styled "false representation" claim as one for "false endorsement." Opp. at 17. But a different label does not cure the defect. Even "false endorsement" claims must be premised on descriptions regarding the origin, sponsorship, or approval of the *defendant's* goods, services, or commercial activities. 15 U.S.C. § 1125. Indeed, the very precedent Rosetta Stone quotes confirms this requirement: the claim must be that the public was deceived "into believing that [plaintiff] endorsed, sponsored, or approved of the *defendant's product*." Opp. at 17 (citing *Comins v. Discovery Commc'ns, Inc.,* 200 F. Supp. 2d 512, 522 (D. Md. 2002) (emphasis added); *accord*, *Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir. 1993); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106-07 (9th Cir. 1992); *Holland v. Psychological Assessment Resources, Inc.*, 482 F. Supp. 2d 667, 683 (D. Md. 2007). Yet, Rosetta Stone has not alleged that the public believes that Rosetta Stone has endorsed *Google*. Instead, its claim is based on the alleged misimpression of the public that Rosetta Stone has "approved, endorsed or sponsored" the third-party advertisers. Opp. at 17. As such, Rosetta Stone's Count IV fails to state a claim on which relief can be granted and must be dismissed.

### B. The Eighth Cause of Action Is Barred By The Communications Decency Act.

*1. Count VIII Can, And Must, Be Dismissed Under Rule 12(b)(6).*

9

Under the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, Google is immune from Rosetta Stone's Count VIII. It is appropriate for a court to dismiss claims barred by the CDA at the pleading stage. *E.g., Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 427 (1st Cir. 2007); *Zeran v. America Online, Inc.*, 129 F.3d 327, 335 (4th Cir. 1997); *Goddard v. Google, Inc.*, No. C 08-2738 JF, 2009 WL 2365866, at *8 (N.D. Cal. Jul. 30, 2009); *Nemet Chevrolet, Ltd. v. Consumeraffairs.Com, Inc.*, 564 F. Supp. 2d 544, 555 (E.D. Va. 2008); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006). Early dismissal is particularly justified for claims falling within the zone of CDA immunity, because without it defendants would be prejudiced by denial of "the CDA's 'robust' protections," which would "be eroded by further litigation." *Goddard,* 2009 WL 2365866 at *8. Because Google satisfies the prerequisites for dismissal under the CDA, Count VIII should be dismissed at this time.

### 2. The CDA Applies to Bar Claims Such As Count VIII.

The scope of CDA immunity includes claims such as Count VIII, which are based on the defendant's contractual relationships with third parties that result in the publication of such third parties' information on the Internet. As the Fourth Circuit explained, "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran*, 129 F.3d at 330. Rosetta Stone's attempt to avoid application of this rule by emphasizing actions performed in connection with the publication of information on Google's website is irrational and contrary to law.

The CDA's immunity extends to actions of defendants that led to publication of information on the Internet. *See*, *e.g.*, *Cornelius v. Deluca*, No. 1:09CV72, 2009 WL 2568044 at *3 (E.D. Mo. Aug. 18, 2009) (dismissing civil conspiracy claim); *Corbis Corp. v. Amazon.com,*

*Inc.*, 351 F. Supp. 2d 1090, 1118-19 (W.D. Wash. 2004) (dismissing claim for tortious interference under the CDA where the defendant entered into agreements with third parties as a prerequisite to publishing their Internet listings, provided forms that helped third parties complete their listings, and encouraged use of the site).  The recent *Cornelius* decision is instructive.  Recognizing that the plaintiffs had made "no specific allegations as to how moving defendants 'conspired' with other defendants to post these statements other than through operation of the message board," it dismissed the civil conspiracy claim as barred by the CDA. 2009 WL 2568044 at *3.

Like the dismissed conspiracy count in *Cornelius,* Rosetta Stone's Count VIII includes no allegations of conspiracy aside from Google's operation of its Adwords Program.  It merely alleges that Google conspired with third parties by entering into agreements with Rosetta Stone's competitors, "pursuant to which Google would display 'Sponsored Links' . . . in response to searches for the Rosetta Stone Marks."  Complaint, ¶¶ 132, 134.  These agreements were AdWords Contracts, which were a necessary prerequisite to the display of Sponsored Links.  The Complaint identifies no harm resulting from this alleged conspiracy other than that purportedly flowing from Google's display of Sponsored Links on its website.  Rosetta Stone's contrary representation that its "claim does not depend on the act of publishing communications" (Opp. at 22) is contradicted by its own allegations.

Dismissal of claims based on actions performed in connection with publication of information on the Internet is also consistent with the purposes of the CDA.  As the Fourth Circuit explained in *Zeran*, because of the staggering amount of information communicated via interactive computer service, the "specter of tort liability in an area of such prolific speech would have an obvious chilling effect.  It would be impossible for service providers to screen each of

their millions of postings for possible problems." 129 F.3d at 331. Because "interactive computer service providers might choose to severely restrict the number and type of messages posted" if they faced liability for each one, "Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Id.* The same rationale holds true for the administration of the Google Ad Words programs, and the hundreds and thousands of contracts that underlie those postings.

### 3. *Google Is A Protected Interactive Service Provider.*

Rosetta Stone does not dispute that Google provides what the CDA defines as an "interactive computer service"—i.e., an "information service . . . that provides or enables computer access by multiple users . . . ." 47 U.S.C. § 230(f)(2). Instead, as Google predicted in its opening brief, Rosetta Stone contends that other actions Google allegedly undertakes render it an "information content provider" exempt from the CDA's protection. Opp. at 18-21. As a preliminary matter, even on a Rule 12(b)(6) motion, "the court is not required 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Demetry v. Lasko Products, Inc.,* 284 Fed. Appx. 14, 15, 2008 WL 2648907 (4th Cir. 2008) (quoting *Veney v. Wych*, 293 F.3d 726, 730 (4th Cir. 2002)). Rosetta Stone's allegations that Google "actively participates in the creation of 'Sponsored Links' for its customers, including the information provided within such 'Sponsored Links'" and that Google "creates the intentionally confusing titles and headings for 'Sponsored Links'" therefore need not be credited on this motion. Compl., ¶ 57.

Assuming for the sake of argument that all of Rosetta Stone's allegations should be taken as true, its claim still fails. Aside from Rosetta Stone's footnoted discussion of the *Goddard* case, it made no effort to distinguish any of the precedent Google relied upon and discussed. As that authority establishes, as long as the interactive service provider does not require the

12

publication of, or develop, the particular information at issue other than through the use of neutral tools, it does not become an unprotected "information content provider." *E.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124-25 (9th Cir. 2003) *Goddard*, 2009 WL 2365866 at *3; *Corbis Corp.*, 351 F. Supp. 2d at 1094; *see also* Google's Opening Brief at 13-14.

Rosetta Stone's attempt to distinguish *Goddard* by asserting that those allegations concerning Google's creative contribution to the Sponsored Links were less legally compelling is factually incorrect. Goddard's allegations go far beyond Rosetta Stone's. Her amended complaint included allegations that "a Google specialist would draft advertisements, choose keywords, and set cost per click budgets"; "[Google] provide[d] tailored advice [to AdWords customers] on how best to optimize their use of AdWords, including proposing ad budgets, selecting keywords and designing ad copy;" and "[Google] substantially participates in the creation of AdWords ads [and] their associated keywords." Goddard Amended Complaint, ¶¶ 18, 20, 21; *accord* ¶¶ 66, 74, 91 (Attached as Exhibit A to the Declaration of Jonathan Frieden dated Sept. 14, 2009, attached hereto as Exhibit 1.) Despite those allegations, the Court held that Google is not an information content provider because it is each *third party* that ultimately decides what content to include in its listing, not Google. *Goddard*, 2009 WL 2365866 at *3; *see also Corbis Corp.*, 351 F. Supp. 2d at 1118 ("Although Amazon may have encouraged third parties to use the zShops platform and provided tools to assist them, that does not disqualify it from immunity under § 230 because the [third party] vendor ultimately decided what information to put on its site.").

Instead of attempting to distinguish any other decisions Google cited, Rosetta Stone cites three different cases with far more sweeping allegations of the defendants' involvement in creating content. Specifically, Rosetta Stone cites *Fair Housing Council of San Fernando Valley*

13

*v. Roommates.com*, 489 F.3d 921, 926 (9th Cir. 2007), *superseded*, 521 F.3d 1157 (9th Cir. 2008) (*en banc*), in which the defendant *required* that third parties include certain information that could be discriminatory in their postings; *Hy Cite Corp. v. BadBusinessBureau.com, LLC,* 418 F. Supp.2d 1142, 1145, 1148 (D. Az. 2005), in which the court refused to dismiss claims of extortion and wire fraud based on allegations that the defendant created editorial comments to, and produced original content contained in, "Rip-Off Reports" posted on its website; and *MCW, Inc. v. BadBusinessBureau.com, LLC,* 2004 WL 833595, at * 9 (N.D. Tex. Apr. 19, 2004), in which the plaintiff sought relief "because the defendants themselves create, develop, and post original, defamatory information," including disparaging editorial reports.[3]

Moreover, reliance on those decisions to deny CDA protection on the facts here would be contrary to the greater weight of authority. Indeed, in its *en banc* decision in the *Roommates.com* case (not noted in Rosetta Stone's Opposition), the Ninth Circuit emphasized the narrowness of its holding as predicated solely on the fact that Roommates.com required every user of its website service to answer certain potentially discriminatory questions with prescribed choices. 521 F.3d 1157, 1166 (9th Cir. 2008). Notably, the *Roommates.com* court also instructed that close cases "must be resolved in favor of immunity, lest we cut the heart out of section 230." *Id*. at 1174. More recent cases have affirmed the narrowness of *Roommates.com*'s holding and held that websites such as Google that do not actually create the third party content that they display, or require certain content to be displayed, are immune under the CDA. *See*, *e.g.*, *Goddard*, 2009 WL 2365866 at *4 (holding CDA applicable to Google,

---

[3] Rosetta Stone also cites *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006), but that decision did not even address whether the defendant's actions made it an information content provider. Rather, it denied immunity on the grounds that the defendant did not qualify as interactive computer service provider because it did not "provide access to the Internet like service providers such as AOL." *Id.* at 295. Even if this determination were sound, Rosetta Stone does not dispute that Google offers an interactive computer service.

14

which "does nothing more than provide options that advertisers may adopt or reject at their discretion"); *Doe v. MySpace, Inc.*, 629 F. Supp. 2d 663, 665 (E.D. Tex. 2009) (holding CDA applicable to MySpace, which does not require users to provide additional information to their profiles). Thus, the limited cases cited in the Opposition do not justify Rosetta Stone's position that despite all of the case law to the contrary Google is not a protected interactive service provider.

For all of these reasons, the CDA requires dismissal of Count VIII.

## Conclusion

Because Rosetta Stone entered a valid and binding contract with Google that contains a mandatory California forum selection clause, this action should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure. If, however, the Court finds that Rosetta Stone overcame the presumption of validity and denies Google's Rule 12(b)(3) motion, it should dismiss the Fourth Cause of Action because it is deficient as a matter of law and dismiss the Eighth Cause of Action because of Google's immunity under the Communications Decency Act, 47 U.S.C. §230.

                    Respectfully Submitted,

                    GOOGLE INC.
                    By counsel

_____/s/_____
Jonathan D. Frieden, Esquire (VSB No. 41452)
Stephen A. Cobb, Esquire (VSB No. 75876)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22031
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
stephen.cobb@ofplaw.com

Margret M. Caruso, Esquire (Admitted *Pro Hac Vice*)
QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5101
(650) 801-5100 (facsimile)
margretcaruso@quinnemanuel.com
*Counsel for Defendant Google Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of September, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following::

>Terence P. Ross, Esquire (VSB No. 26408)
>GIBSON, DUNN & CRUTCHER, LLP
>1050 Connecticut Avenue, NW
>Suite 300
>Washington, DC 20036
>tross@gibsondunn.com
>*Counsel for Plaintiff Rosetta Stone Ltd.*

>/s/
>Jonathan D. Frieden, Esquire (VSB No. 41452)
>Stephen A. Cobb, Esquire (VSB No. 75876)
>ODIN, FELDMAN & PITTLEMAN, P.C.
>9302 Lee Highway, Suite 1100
>Fairfax, Virginia 22031
>(703) 218-2100
>(703) 218-2160 (facsimile)
>jonathan.frieden@ofplaw.com
>stephen.cobb@ofplaw.com
>*Counsel for Defendant Google Inc.*