1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
                          )
ROSETTA STONE LTD,        )
                          )
          Plaintiff,      )  Civil No. 09-736
                          )
     VS.                  )  September 18, 2009
                          )
GOOGLE, INC.,             )
                          )
          Defendant.      )
_____ )
```

REPORTER'S TRANSCRIPT

MOTIONS HEARING

BEFORE:      THE HONORABLE GERALD BRUCE LEE
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

  FOR THE PLAINTIFF: GIBSON DUNN & CRUTCHER, LLP
                     BY: TERENCE P. ROSS, ESQ.

  FOR THE DEFENDANT: ODIN FELDMAN & PITTLEMAN, PC
                     BY: JONATHAN DAVID FRIEDEN, ESQ.
                     QUINN EMANUEL URQUHART OLIVER & HEDGES
                     BY: MARGRET MARY CARUSO, ESQ.
                              ---

OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR,CRR
                         U.S. District Court
                         401 Courthouse Square, 5th Floor
                         Alexandria, VA  22314

<u>INDEX</u>

ARGUMENT BY THE DEFENDANT   3,  21

ARGUMENT BY THE PLAINTIFF   8

RULING BY THE COURT         25

---

1             (Thereupon, the following was heard in open

2   court at 12:32 p.m.)

3             THE CLERK:  1:09 civil 736, Rosetta Stone,

4   LTD versus Google, Incorporated.

5             MR. ROSS:  Good morning, Your Honor.

6   Terrance Ross for the plaintiff, Rosetta Stone, Limited.

7             THE COURT:  Good morning, Mr. Ross.

8             MR. FRIEDEN:  Good morning, Your Honor.

9   John Frieden for the defendant, Google.

10            It's my pleasure to introduce Margret Caruso

11   who is admitted pro hac vice in this action.

12            THE COURT:  Good afternoon.

13            MS. CARUSO:  Good afternoon.

14            THE COURT:  I'm ready.

15            MS. CARUSO:  Good afternoon, Your Honor.

16   Margret Caruso for the defendant, Google, Inc.

17            We're here on Google's motion to dismiss

18   Rosetta Stone's complaint.  The primary basis for the

19   motion is the party forum selection clause.

20            This forum selection clause is very plain

21   language, and it requires that all claims relating to

22   Google's programs, defined as Google's advertising

23   programs, "be litigated exclusively in the federal or

24   state courts of Santa Clara County, California, USA".

25            Unlike the earlier forum selection clause,

there is no mention here in the clause between exclusively and the federal state courts. It's simply right there. It applies to all claims relating to Google programs.

And the plaintiff, Rosetta Stone, has not contested that its complaint relates to Google's advertising programs.

What they've tried to do, instead, is a -- those words or the Google programs don't have meaning. They don't add anything at all to the forum selection clause. The forum selection clause simply applies to the agreement of the parties.

That, of course, as contrary to basic principles of contract interpretation which all words of the contract have meaning and they're not superfluous words, that all the words have to be accredited here. And the explanation that Rosetta Stone offers does not give any meaning to those words.

THE COURT: So does a conspiracy claim against Google, is that encompassed in the forum selection clause if it involves third party?

MS. CARUSO: Yes, Your Honor, it is because the only defendant here is Google. And that claim is based entirely on Google's advertising programs.

All the allegations in the complaint are directed to actions that are taken in connection with

1    third parties advertising through Google AdWords program.

2              THE COURT:  The plaintiff's claim here

3    involves trademark infringement.  Is it your view that

4    because the trademark infringement asserted has to do with

5    Google's website that that would encompass the forum

6    selection clause?

7              MS. CARUSO:  Yes, Your Honor, but more

8    particularly every allegation of trademark infringement is

9    based on the Google AdWords program and the operation of

10   Google AdWords program.

11             So because that is -- it's not because the

12   AdWords program is a covered Google program under this

13   clause, yes, it relates to this clause and is covered by

14   it.

15             THE COURT:  Well, help me with the -- your

16   view of the clause is really straightforward.  Anything

17   that -- any lawsuit that a client of Google wants to bring

18   has to be brought in California under the forum selection

19   clause; is that right?

20             MS. CARUSO:  Any claim that relates to the

21   Google advertising programs that's brought by a customer

22   of the Google advertising programs, yes.

23             THE COURT:  And you already said trademark

24   infringement is encompassed in that.

25             MS. CARUSO:  Yes, as alleged in Rosetta

Stone's complaint.

THE COURT:  Okay.  Well, if you would address the issue of the false endorsement claim.

MS. CARUSO:  Yes, Your Honor.  This claim as under the Lanham Act, and as Rosetta Stone admits in the false endorsement claim what matters is whether or not there's a perception that the plaintiff endorses the defendant -- the defendant's products.

And, uniformly, you look at those cases and any other false endorsement cases, they're all about whether the plaintiff is endorsing the defendant.

And, Rosetta Stone has not alleged that. They've alleged that there is -- the public is under the misimpression that Rosetta Stone endorses third parties, not the defendant.

And that's a critical distinction for the language of the Lanham Act and all of the cases construing it in false endorsement claims.

THE COURT:  Does the Lanham Act require that the parties be competitors?

MS. CARUSO:  No, Your Honor, not for purposes of a false -- false endorsement claim.  That -- in our opening brief, we were not sure exactly what the contours of their allegations were so we addressed all the various theories that section of the Lanham Act.  And

1 false advertising claims require competitors, but most --

2 any other claim filing under that section of the Lanham

3 Act does not.

4     THE COURT:  Okay.  And, would the conspiracy

5 claim be barred by the Communications Decency Act because

6 Google is an information content provider?

7     MS. CARUSO:  We believe that Google is not

8 an information content provider under the CDA.  Instead,

9 Google is solely a provider of an interactive computer

10 service.

11     Google has been held in numerous cases to be

12 a provider of interactive computer services, and there

13 aren't any cases that hold the kind of activities alleged

14 in Rosetta Stone's complaint constitute activities that

15 give rise to an information content provider.

16     THE COURT:  Okay.

17     MS. CARUSO:  If Your Honor would like, I can

18 go through some of the cases that they cited and highlight

19 how different those facts are from the ones we have here.

20     THE COURT:  Well, I'm not sure that that's

21 necessary, and I have received your reply brief.

22     I've focused on the questions that I want to

23 ask you at the outset.

24     Let me hear from Mr. Ross and I'll give you

25 a chance to respond.

1              MS. CARUSO:  Thank you, Your Honor.

2              THE COURT:  I'm sorry.  I should ask you if

3    there's something else you felt you wanted to say that you

4    weren't given a chance to say right now.

5              MS. CARUSO:  If there's anything else

6    remaining at the end.

7              THE COURT:  Okay, all right.

8              MR. ROSS:  Your Honor, I think this is a

9    fairly straightforward contract interpretation issue as

10   presented to the Court here.

11             THE COURT:  I've been told that many times

12   today.

13             MR. ROSS:  Yes.  I couldn't believe when I

14   heard the first case.  It was a forum selection clause.

15   That's an incredible coincidence.

16             THE COURT:  What are the chances that would

17   happen twice in the same docket.  I understand.

18             MR. ROSS:  I've practice 20 years and I've

19   only had a couple of these and now two on the same docket.

20             Your Honor, the very first rule of contract

21   interpretation, all that's required day one in contracts

22   is that every part, every provision, every clause of the

23   contract has to be given meaning.  You don't read any out.

24             And the fundamental argument that Google is

25   making here is you have to ignore the preamble.

1           Now, there's actually a way to do that.

2  I've drafted clauses like that.  You put it towards the

3  end of the contract and you say all the captions in the

4  foregoing sections and the whereas clauses are not to be

5  used in interpreting contract.

6           There is no such provision here.  And that's

7  a noticeable absence.  And without such a provision, this

8  Court has to interpret this contract to give meaning to

9  that second sentence which Ms. Caruso so studiously

10 ignores.

11          And that second sentence says, "these terms"

12 and the forum selection clause is one of "these terms

13 govern customer's participation in Google advertising

14 programs".  Customer's participation, meaning Rosetta

15 Stone.

16          And so the forum selection clause must be

17 interpreted in light of that second sentence of the

18 preamble.  The forum selection clause must be understood

19 to mean that claims arising out of the contract or

20 relating to Rosetta Stone's participation in the Google

21 program must be pro --

22          THE COURT:  Where are you reading from?

23          MR. ROSS:  Your Honor --

24          THE COURT:  Is that tab one of your --

25          MR. ROSS:  Do you have the Google

advertising contract in front of you?

           THE COURT:  I have tab one, the terms and conditions of AdWords select advertising program.

           MR. ROSS:  If you look at the very opening brief of Google's, Your Honor, there's an affidavit at the back of that brief --

           THE COURT:  Oh, I see it.

           MR. ROSS:  Exhibit A.

           THE COURT:  I have it.  Hold on.  I have it here.  Okay.  I see it.  I see it.

           MR. ROSS:  So you see there on that very second sentence --

           THE COURT:  Right.

           MR. ROSS:  Because fundamentally, what is the contract about?  The second primary rule of contract interpretation is we look to interpret provisions of the contract as a whole.

           What is this contract about?  Well, the second sentence tells us it's about advertising by Rosetta on the Google's network.  But if you read every other section of this contract, it is all about what Rosetta Stone does to advertise with Google.

           It's nothing about third party.  It imposes a bunch of requirements on Rosetta Stone for advertising with Google.  And so when we get to this forum selection

clause at the very end, applying the two fundamental rules
of contract interpretation, how -- we got to make sure we
give every clause meaning and we look at a contract as a
whole.  We have no choice but to conclude that the claims
that have to be sent to Santa Clara County are claims that
deal with breach of contract, breach of this contract, or
that relate to Rosetta Stone's participation, i.e.,
advertising on Google.

Now, Ms. Caruso said well, that would give
no meaning to this word, the second part of the forum
selection clause claims or claims arising out of the
program.  That's not true.

There could be lot of claims that don't
involve a breach of contract by Rosetta Stone that would
have to go out to California.

I'll give you an example, Your Honor.
There's nothing in the contract that says you, Rosetta
Stone, don't put any viruses on our Google network when
you advertise with us.

So if we did, if Rosetta Stone put a virus
on the Google's network, it could not bring a breach of
contract claim that would have to go out to California.
But it could bring a tort claim against us, and that would
have to go out to California.

So the clause she's planning on does have

1  meaning when you use our interpretation which of course is
2  limited to Rosetta Stone's participation in this
3  advertising.

4           And of course, Your Honor, this is drafted
5  by Google, and the uniform rule in all the circuit courts
6  is that if a forum selection clause, if there's any doubt
7  or uncertainty as to what it should mean or how it should
8  apply, then it's not enforced.  Uniform rule of all the
9  circuits.

10          So that's our argument with respect to forum
11 selection clause unless you have other questions.

12          THE COURT:  Well, the claims that are
13 brought here don't necessarily turn on the contractual
14 relationship between Google and Rosetta Stone.  Trademark
15 infringement claims can be brought in any event against
16 Google or any others that infringe the trademark.

17          MR. ROSS:  That's correct, Your Honor.  And
18 you obviously have in mind the case that's not before the
19 Fourth Circuit because we haven't dealt with this, but
20 other circuits said the only time you use these forum
21 selection clause but not on breach of contract cases is
22 when they somehow revolve around this contract or they
23 somehow require interpretation of contract, for example,
24 *Manetti* case in the Ninth Circuit.

25          Your Honor is absolutely right.  We -- these

```
 1    claims have absolutely nothing to do with our advertising
 2    on their system or this contract.  You're right.
 3                 THE COURT:  Well, as it relates to this
 4    lawsuit here, the claim of Rosetta Stone is all about what
 5    appears on the Google ads and the Google website, isn't
 6    it?
 7                 MR. ROSS:  That's true.  And we --
 8                 THE COURT:  Doesn't that relate to Google's
 9    advertising program?
10                 MR. ROSS:  No, Your Honor, because the
11    contract here is dealing exclusively with Rosetta Stone's
12    advertising on that network.
13                 We aren't complaining in the underlying
14    lawsuit that we did anything wrong or that we committed
15    trademark violation.  We're saying some third party did
16    that, and therefore, it has nothing to do with this
17    contract.
18                 In our lawsuit, this contract will never be
19    entered into evidence, talked about, testified to by us or
20    by Google because it's completely irrelevant to those
21    third party trademark suits.  It's limited to Rosetta
22    Stone's advertising of the network.
23                 THE COURT:  But, when you say third party
24    trademark suits, what you're really complaining of is the
25    display of an ad for a so-called sponsored link that might
```

1    refer to another corporation or a competitor of Rosetta

2    Stone; is that right?

3                MR. ROSS:  Yes, Your Honor.  There are ads

4    that Rosetta Stone has nothing to do with them.  They are

5    being brought -- they are ads by some third party

6    completely unrelated to Rosetta Stone or our contract with

7    Google.

8                THE COURT:  Those third parties are not

9    before the Court.  So, for example, if there is some

10   company called, you know, Language, Inc, that you think is

11   using Rosetta Stone's mark in the similar fashion because

12   they have authorized Google to present an ad for Language,

13   Inc on their website, you have not brought them into this

14   suit, have you?

15               MR. ROSS:  You're absolutely right.  We have

16   not and we are not required to under the Lanham Act.  We

17   could have brought if we wanted to a direct claim for -- a

18   claim for direct trademark infringement against them.

19   But, why?  They would just change their name and morph

20   into something else.

21               The only way to stop this sort of conduct is

22   to bring it against the party that's facilitating and

23   making it possible and that's Google.  And the Lanham Act

24   clearly allows that.  No dispute here.  They have not

25   moved to dismiss our trademark claims.

THE COURT:  Let's turn to the conspiracy claim and the issue of whether Google is an interactive computer service provider rather than an information content provider under the CDA.

MR. ROSS:  Your Honor, there's absolutely no doubt that they're an interactive computer system.  That's only one of the three prongs that they have to fulfill.

We're arguing the other two prongs which is that they are an information content provider and this is not Speech Online.  Let me deal with Speech Online first.

What's happening -- what their claim fundamentally is -- there are permutations of it.  But we, Rosetta Stone, have people out there who are called resellers.  We have contracts with them.  They're authorized to sell our product.  They're not authorized to put ads on the Google network.  The contract says that.  You can't use our trademark in that context.

Google is going to them and saying, hey, come put an ad on our network, notwithstanding that contract.

THE COURT:  So, induce them to breach their contract with Rosetta Stone?

MR. ROSS:  They're conspiring, yes.  And that has nothing to do about online speech.  That's a completely offline activity.

1          And the CDA, the immunity for the CDA which

2     is originally passed for AOLs of the world service

3     providers, is all about online speech.  It's not about

4     this offline conduct.  And that's what that claim is

5     about, and therefore it's not encompassed.

6          Now the second argument we make is that they

7     are also considered for purposes of the CDA information

8     content provider.  And specifically because it's a

9     12(b)(6) motion, if you look at paragraph 57 of our

10    complaint we expressly said that they create content.  And

11    that's the definition of an information content provider

12    under the CDA.

13          THE COURT:  They create content by

14    displaying -- creating the writing or the graphics that

15    appears on the sponsored links on their website.

16          MR. ROSS:  Yes, sir.  And they say that

17    they're more like editors of a newspaper.  They're

18    neutral.  They're just providing some, you know, editorial

19    discretion.  And that's not true.

20          If you wanted to advertise on Google, you

21    would have to have the words sponsored link on your ad.

22    Even if you thought that was misleading and want to say

23    this is a paid advertisement, they make you put the word

24    sponsored link.

25          THE COURT:  That leads to another question.

1    What does sponsored link means to you?  Is there consumer

2    confusion about what a sponsored link is?

3              MR. ROSS:  That's part of the case, yes,

4    Your Honor.  So part of the confusion they're responsible

5    for and therefore they're creating content and therefore

6    they don't get the immunity of the CDA.

7              Does that make -- does that make sense to

8    you, Your Honor, because I can elaborate some more.

9    Here's --

10             THE COURT:  I think that I understand what

11   you're saying.  You're saying that to the extent that

12   Google creates the ad that is displayed on their website,

13   even if the information is supplied by the client, they

14   are a content provider.

15             MR. ROSS:  Yes, Your Honor.  Now, there are

16   a couple of cases that they cite in their brief, correctly

17   cite that say if somehow you're doing that in a neutral

18   manner, you know, that the final decision -- here is the

19   way it's expressed -- the final decision is with the

20   advertising customer.

21             You suggest to them, oh, why don't you

22   brighten this ad up.  You'd get more business.  But it's a

23   suggestion.  They have the final decision.

24             Then you don't become an information content

25   provider.  What I'm saying to you is that's not the case.

1    It's not a suggestion.  You have to use their term

2    sponsored link.  You have to have the ad either at the top

3    or the side.  You have to have that little blue -- it's

4    yellow now, yellow background coloring.  Those are all

5    things they make you do.  It's not a suggestion like the

6    cases they cite.  And therefore, they're an information

7    content provider within the unique definition of CDA.

8         THE COURT:  Have you set forth a false

9    endorsement claim here?

10        MR. ROSS:  Yes, Your Honor.

11        THE COURT:  And I'm focused more

12   specifically on the issue of the likelihood of confusion

13   as to the source or origin of the goods or services.  What

14   does sponsored mean to you?

15        MR. ROSS:  Sponsored means to somehow convey

16   to the consuming public that you are giving an endorsement

17   to this product or that you approve it.

18        And our claim is that the way Google goes

19   about this, the people surfing online are under the

20   misimpression that Rosetta Stone is sponsored -- is the

21   sponsor of those sponsored link.  We think they

22   deliberately used that word sponsored link for the

23   purpose.

24        THE COURT:  Well, you know, in another

25   context, a sponsor is someone who pays money for permanent

```
 1    display.  For example, a charitable activity, a sponsor is

 2    listed as a sponsor of the X, Y, Z Ball.  That does not

 3    necessarily suggest that the organization has adopted the

 4    sponsor, does it?

 5                  MR. ROSS:  No, it doesn't.  You're

 6    absolutely right, Your Honor, and remember this is a

 7    12(b)(6) motion and so --

 8                  THE COURT:  Yeah, the issue is -- the test

 9    is one of plausibility.

10                  MR. ROSS:  Yes, Your Honor.  That's

11    absolutely right, under Twombly.  Let me put it this way.

12    There are specific academic studies out there that say in

13    the context of the Internet, common users perceive that to

14    mean, sponsored link to mean that their search for a

15    specific company, Rosetta Stone.

16                  You know, this all starts when you the

17    searcher put in the term Rosetta Stone.  You don't put in

18    language software.  We wouldn't be here complaining.

19                  You punched Rosetta Stone.  In your mind

20    you're thinking I'm going to get results to tell me how to

21    get there.  You punch in Rosetta Stone and you get the top

22    of the page, the sponsored link.

23                  All the academic studies show that people

24    commonly think that that means Rosetta Stone sponsored

25    that.  And so it's a little bit different where in a
```

football, you know, college bowl series, year after year
we all know that when they say the Tortilla Doritos Fiesta
Bowl, we know what sponsored means there.  It's different
here.  Now, if I may add one other point.  I know you've
been here very long time this morning.  Thank you.

THE COURT:  This is honest government work.

MR. ROSS:  Yes, it is.  Thank you.

Their argument sort of morphed the opening
brief that Ms. Caruso admitted, and they're no longer
arguing about competition.  They're saying that we
didn't -- they didn't put there name Rosetta Stone on
their products.  And that's just not required in the
Lanham Act and the words of the Lanham Act answer this
question directly.

So, if I may just read to you from Title 15
of the United States Code Section 1125(a), if you'd bear
with me, the words are right here.

It says "any person who, or in connection
with any goods or services or containers for goods uses in
commerce, any word, term, name, symbol, device, any
combination thereof" --

THE COURT:  Slow down, slow down.  The court
reporter's got to take this down.

MR. ROSS:  I'm so sorry.

THE COURT:  And I can't even think as fast

1   as you can talk.

2           MR. ROSS:  She is actually very fast.  She's

3   very good.

4           So, false or misleading representation of

5   fact which, in commercial advertising, what they do

6   "misrepresents the nature, characteristics, qualities or

7   geographic origin of his or her or another person's goods

8   or services".  Another person's goods or services.

9           The notion that the false endorsement has to

10  be on a Google product is directly belied by the words of

11  the statute.  We don't need a case for that because the

12  statute says Google can put our name falsely endorsing

13  some other person's goods, and that's a clause of action.

14          THE COURT:  All right.  I've asked you the

15  questions that I have.  Thank you very much.

16          MS. CARUSO:  Thank you, Your Honor.  I'll

17  pick up right where Mr. Ross left off with the language of

18  the Lanham Act.  And the portion he was reading of the

19  Lanham Act is not the portion that controls here.  That's

20  the preamble that gets to where the Lanham Act lays out

21  what the claims can be.

22          And, there if again -- the language is a

23  little cumbersome, but I'll read it for the record.

24          THE COURT:  Slowly.

25          MS. CARUSO:  Yes.  To state this type of

     1     claim under Lanham Act, the allegation has to be that "the
     2     use of the word, term or trademark is likely to cause
     3     confusion as to the affiliation, connection, or
     4     association of such person" and that means the one alleged
     5     to have used the false designation of origin here, the
     6     defendant, "with another person", which the case law tells
     7     us is the plaintiff, "or as to the origins, sponsorship or
     8     approval of his or her", the defendant's "goods, services
     9     or commercial activities by another person", the
    10     plaintiff.
    11            And what's important, Your Honor, because
    12     it's not immediately apparently maybe the first time you
    13     look at it, this by-another-person language.  Uniformly,
    14     the case law tells us that that is the plaintiff.
    15            The cases that the defendant -- the Rosetta
    16     Stone cites all say the defendant, the defendant's goods.
    17     It has to be confusion as to the plaintiff's endorsement
    18     of the defendant's goods.
    19            And, Rosetta Stone has not offered any case
    20     that is to the contrary.  It's just not simply what the
    21     law is.
    22            I'd like to go back to the forum selection
    23     clause because I think that really moots this issue.
    24            First of all, the language about -- in the
    25     preamble that these terms govern the customer's

1  participation, this language, we don't need to shy away

2  from it in any way.  It -- these terms are the

3  requirements.  They're the rules under which the customer

4  has to agree to participate in Google's programs.

5          The customer could separately -- it could

6  choose not to be a customer and not to advertise to the

7  AdWords program and separately bring this case.  That's

8  true.

9          That's not what they did.  They agreed to

10  play it by these rules, the rules in which they agreed to

11  bring any claim relating to Google advertising programs in

12  California.

13          And one of the cases that they cite even

14  makes this point.  It says that -- what is the *Transfirst*

15  case.

16          It points out in a forum selection clause

17  that the plaintiff's claims relate to their employment

18  agreements but they would exist independently of those

19  employment agreements.

20          But, given the language of that forum

21  selection clause, it covers those claims, even though they

22  could have been brought in the absence of a contractual

23  relationship.

24          And, what's important here is that there is

25  this contractual relationship.  And, it's not necessary

1   that the claims to be brought in California relate to the

2   contractual relationship.

3                   And again, going back to the language of the

4   contract, this is clear.  So, the forum selection clause

5   says all claims, not just arising out of but relating to

6   this agreement.

7                   So, if you just stopped right there, already

8   you have enough language to see that Rosetta Stone's

9   argument is not correct, that their interpretation of

10  the -- of Google programs would add anything else because

11  tort claims that relate to this agreement would clearly be

12  covered by it.

13                  So, the "or Google programs" has to add

14  something.

15                  THE COURT:  All right.

16                  MS. CARUSO:  And they don't identify or fill

17  us in with what that might be.

18                  In addition, I think it's worth pointing out

19  that the terms of -- the advertising program terms aren't

20  just limited to what's necessary for Rosetta Stone to

21  advertise on the AdWords program.

22                  In paragraph four, section B, it specifies

23  that the customer shall not use any automated means or

24  form of scraping or data extraction to access, query or

25  otherwise collect Google's advertising related information

1       from any program, website or property.

2                       So whatever ability Rosetta Stone had to do

3       that technically or lawfully otherwise, they've now

4       agreed, just like they've agreed to bring any claims

5       relating to the program in California, not to do that.

6                       So, these program terms are all required, do

7       govern the conditions of Rosetta Stone's participation,

8       but they're not limited just to that advertising

9       relationship.

10                      THE COURT:  Thank you very much.

11                      MS. CARUSO:  You're welcome, Your Honor.  If

12      you would like to hear more about the CDA, I can talk

13      about that.

14                      THE COURT:  I'm trying to be polite.  When I

15      say thank you very much, that means that I think I

16      understand your position.

17                      MS. CARUSO:  Okay.

18                      The --

19                      THE COURT:  In California, that -- in

20      Virginia, that means the judge has heard enough.

21                      MS. CARUSO:  Thank you very much, Your

22      Honor.

23                      THE COURT:  Thank you.

24                      This matter is before the Court on the

25      defendant's motion to dismiss.  And the parties have

1    properly briefed the matter, and there are, I think, three

2    critical issues, and the first that has to be decided at

3    the outset is whether or not this lawsuit belongs in

4    Virginia under the forum selection clause of the AdWords

5    contract submitted by Google.

6            And, of course, such clauses are enforceable

7    under Virginia law and federal law.  And what we're

8    dealing with here is terms that are set forth in the

9    AdWords program contract in paragraph nine.

10           And both parties have briefed the matter.

11   So, I have to, as I am supposed to, determine if the

12   clause is clearly communicated to the other side, whether

13   it's mandatory permissive, whether the claims involved are

14   subject to the clause, and whether the resisting party has

15   rebutted the presumption of enforceability under the

16   *Phillips versus Audio Active* case.

17           Obviously, the first and the second are met

18   because the clause is obvious and it is, I think, a

19   mandatory clause.  And it was communicated electronically

20   to the Rosetta Stone's marketing manager.

21           And as it relates to the issue of whether or

22   not the claims are subject to forum selection clause, I

23   hold that they are not, because none of the claims concern

24   Rosetta Stone's participation in Google's advertising

25   programs.

1            Three of the claims concern Virginia

2    business law, and five are based on the Lanham Act.

3            Obviously, the *Yahoo* case from the Fifth

4    Circuit is not controlling.  But in that case, the Fifth

5    Circuit upheld District Court's judgment to not enforce a

6    forum selection clause because the clause in that case

7    required American Airlines to submit claims to California

8    forums and claims brought by Yahoo against it and the

9    clause is ambiguous.  And the claims between American

10   Airlines and Yahoo arose out of different circumstances.

11           Here what we're dealing with is a trademark

12   infringement claim that could have been brought

13   notwithstanding the contract.  The cause of action do not

14   turn on the contractual relationship between Google and

15   Rosetta Stone.

16           The claims arguably turn on Google's

17   relationship with other advertisers, that is to say the

18   relationship that Google has with other advertisers who

19   are being presented on the website as sponsored links.

20   And if that's an independent relationship between Google

21   and Rosetta Stone, obviously, the facts would be different

22   if Rosetta Stone brought a breach of contract claim which

23   would require interpretation of the AdWords contracts.

24           So, because the claims are not subject to

25   forum selection clause, I'm going to deny the motion to

dismiss as it relates to the forum selection clause.

That brings us to the false representation claim under 12(b)(6). Obviously, I'm applying *Bell Atlantic versus Twombly* and *Ashcroft versus Iqbal*. And it seems to me that I'm going to grant the motion to dismiss as it relates to the false representation of the so-called false endorsement claim because the plaintiff here has not sufficiently asserted that there is a likelihood of consumer confusion as to the origin, approval or endorsement of the product under the *Comins* -- and *Comins* is C-O-M-I-N-S *versus Discovery Communication* case.

And I think that a false endorsement claim can be viable even if the parties are not competitors under the *Holland versus Psychological Assessment* case.

But what we have here is a failure to, I think, sufficiently set forth a likelihood of confusion as it is required in the Fourth Circuit under the *Synergistic* case. And *Synergistic* is spelled S-Y-N-E-G-I-S-T-I-C case, Fourth Circuit, 2006.

Focusing on the seventh factor which is actual confusion, while the plaintiff sets forth background about the information on the Internet, Google Search Engine being based on keyword "advertising", I do not think that they sufficiently set forth a showing that would demonstrate confusion by web users or confusion by

1    web users that would allow web users to think that

2    sponsored link means that Rosetta Stone somehow endorses

3    the link.

4            I think that it has -- sponsored links means

5    arguably paid ads, not necessarily ads paid by or approved

6    or endorsed by Rosetta Stone.  And obviously, I give

7    Rosetta Stone a chance to revisit if they want to replead

8    that.  But I'm going to grant the motion as it relates to

9    the false endorsement claim.

10           As it relates to the issue of whether the

11   conspiracy claim is encompassed in the immunity afforded

12   by the Communications Decency Act, depending upon the

13   status of Google, I think that Google is an interactive

14   computer service provider.  And there's no indication here

15   that Google creates the contents of the ads.

16           I understand the theory about the banners

17   and the headings.  And I think my Neiman Ford -- Neiman

18   Chevrolet case address something about the banners and

19   headings.  But in any event, I do not think that is

20   sufficient to plead that Google would fall outside the

21   Communications Decency Act's immunity.

22           Rosetta Stone has cited to the *Fair Housing*

23   *Council of San Fernando Valley* case, and I think that that

24   case is distinguishable in about three ways.

25           First, the Roommates.com requires an

interested member to complete a questionnaire.  Second,
Roommates.com sends out e-mails containing member's
profile to other members; and third, information provided
by Roommates.com members in a comment box are displayed
for others to view.

In that case, the Court found that
Roommates.com is an information content provider because
as to the contents of the questionnaire and the e-mail
distribution, its content ads formulated by Roommates.

Here, Google is displaying its sponsored
links based upon the web user query.  And a web user has
to decide to use Google.  It's open.  It's the marketplace
on the web.  It's not the only game in town.  Obviously
there is Yahoo and Bing, B-I-N-G and others.

So, the displaying of a formatted
advertising is passive.  It's not the same as sending out
e-mails and soliciting private information which is shared
with others.  And similarly the *800-JR Cigar* case is
distinguishable in at least two ways.

First the Court did not determine whether
the defendant's conduct made it an information content
provider.  Rather it found that the defendant does not
qualify as an interactive computer service provider.

And second, the Court held that immunity was
inapplicable because the alleged fraud is use of the

1    plaintiff's trademark in the advertiser's bidding process,

2    not necessarily adds information from the third party that

3    may appear on the search results page.

4    So, seems to me that Rosetta Stone's claims

5    turn on the Google's relationship with other paid

6    advertisers regarding the use of Rosetta Stone's marks.

7    And since the purpose of the CDA is not to

8    shield parties from fraud or abuse, arise from their own

9    pay for priority advertisement but from the actions of

10    third parties, it is applicable for this case.

11    For those reasons, I'm going to grant the

12    motion to dismiss as it relates to Count VIII.

13    Thank you for the quality of your

14    preparation and your patience.

15    We're in recess.

16    (Proceedings concluded at 1:11 p.m.)

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, Renecia Wilson, an official court reporter for the United State District Court of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the motions in the case of Rosetta Stone, LTD vs. Google, Inc.

I further certify that I was authorized and did report by stenotype the proceedings and evidence in said motions, and that the foregoing pages, numbered 1 to 31, inclusive, constitute the official transcript of said proceedings as taken from my shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this 25th day of September , 2009.

```
                              /s/
                    _____
                    Renecia Wilson, RMR, CRR
                    Official Court Reporter
```