# Exhibit 1

Dockets.Justia.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

ROSETTA STONE LTD.,

                    Plaintiff,

       -v-                                    Civil Action No. 1:09cv736(GBL/TCB)

GOOGLE INC.,

                    Defendant.

## PLAINTIFF ROSETTA STONE LTD.'S FIRST REQUEST
## FOR THE PRODUCTION OF DOCUMENTS FROM DEFENDANT GOOGLE

Plaintiff Rosetta Stone Ltd. ("Rosetta Stone") hereby requests, pursuant to Rules 26 and

34 of the Federal Rules of Civil Procedure, that Defendant Google Inc. ("Google") produce the

following documents and electronically stored information at the offices of Gibson, Dunn &

Crutcher LLP, 1050 Connecticut Avenue N.W., Suite 900, Washington, DC 20036, within thirty

(30) days after service of this request.

## INSTRUCTIONS

1.      This First Request for the Production of Documents calls for the production of all

information and documents in the possession of Google and/or its attorneys, or subject to the

custody or control of Google or its attorneys.  Google must make a diligent search of its records

(including but not limited to paper records, computerized records, and electronic mail records) and of other papers and materials in its possession or available to Google or its attorneys.

2.     Each Request for the Production of Documents ("Request") herein constitutes a request for documents in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  Documents attached to each other, by means including but not limited to a staple, clip, tape, e-mail attachment, or "Post-It" note, should not be separated.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the documents.

3.     Defendants shall produce any and all drafts and copies of each document that are responsive to any Request, and all copies of such documents that are not identical in any respect, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all hand-written notes should be identified.

4.     Responsive documents that exist only in paper form shall be organized as they have been kept in the ordinary course of business.  If with respect to any category there are no responsive documents, so state in writing.

5.     Responsive documents shall be produced in TIFF format with metadata included. Responsive documents that cannot be produced in TIFF format due to technical reasons shall be produced in a computer-readable and text searchable format to be mutually determined by the parties.  Google should produce certain documents in their native format, including copies of all responsive documents maintained in an electronic format where:  (a) such responsive documents contain electronically stored information that is only reviewable in such documents' native electronic format; or (b) such responsive documents are most conveniently viewed in their native

electronic format. This includes but is not limited to Microsoft Excel files, Microsoft Power Point files, HTML files, and database files.

6. In all cases in which metadata associated with any responsive document or electronically stored information is itself reasonably calculated to lead to the discovery of admissible evidence, Google must so notify Rosetta Stone and produce such responsive documents and electronically stored information in an electronic format that will preserve such metadata and make it reasonably accessible to Rosetta Stone, including but not limited to producing e-mails that list visible "bcc" recipients and Microsoft Word documents that preserve and reveal any hidden notations, creation or alteration records, and other responsive file system or document metadata. Google should preserve all metadata associated with all responsive documents, including metadata that is not produced pursuant to this instruction. This instruction should be read in accordance with the requirements and limitations imposed by Rules 26(b) and 34 of the Federal Rules of Civil Procedure.

7. If you object to a portion or an aspect of a Request, state the grounds for your objection with specificity and respond to the remainder of the document request. If any documents, or portion thereof, are withheld because you claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, you are required to provide a privilege log, specifying for each such document: (*i*) the title of the document, if any; (*ii*) the nature of the document, *e.g.*, letter memorandum, telegram, e-mail, etc.; (*iii*) a description of the subject matter of the document; (*iv*) the name, title, and business affiliation of each person who prepared, received, viewed, and/or has or has had possession, custody or control of the document; (*v*) the name of all persons to whom the information in the document was disclosed, such as would enable your privilege claim to be analyzed and

adjudicated; (*vi*) the date of the document; and (*vi*) a statement of the basis upon which the privilege or work product claim is made.

8.     If you claim that a portion of a document is protected from disclosure for any reason, produce such document with redaction of only the portion claimed to be protected. Any document produced in redacted form should clearly indicate on its face that it has been redacted.

9.     If you object that a Request is vague or ambiguous, identify the objectionable aspect of the Request, state your interpretation of the Request and respond to that interpretation.

10.     If Google cannot fully respond to a Request, after a diligent attempt to obtain the requested information, Google must answer the Request to the extent possible, specify the portion of the Request Google is unable to answer, and provide whatever information Google has regarding the unanswered portion.

11.     If any document called for by the Requests has been destroyed, lost, discarded or is otherwise no longer in Google's possession, custody or control, Google shall identify such document as completely as possible, and shall specify the date of disposal of the document, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the document.

12.     The following rules of construction apply to all Requests:

   a.   The terms "any," "all," "each" and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the Requests all responses that might otherwise be construed to be outside of their scope.

b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all responses that might otherwise be construed outside of their scope.

c. The use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural.

d. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the document requests all responses that might otherwise be construed to be outside of their scope.

13.     These Requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required if additional responsive information is acquired or discovered between the time of responding to this request and the time of trial.

14.     Unless otherwise specified, the relevant time period for these Requests is January 1, 2002, through the present.

## DEFINITIONS

1.     "Rosetta Stone" means Rosetta Stone, Inc. and any of its successors, predecessors, divisions, departments, or affiliates, and any of its present or former officers, directors, employees, accountants, agents, attorneys, or other persons acting for, at the direction of, or in concert with such persons or entities.

2.     The phrase "Rosetta Stone Marks" means any and all names, logos, symbols, nicknames, and other indicia that consumers use to identify goods or services offered, marketed,

promoted, sponsored, endorsed or approved by Rosetta Stone, including: ROSETTA STONE; GLOBAL TRAVELER; ROSETTA STONE LANGUAGE & LEARNING SUCCESS; LANGUAGE LIBRARY; DYNAMIC IMMERSION; THE FASTEST WAY TO LEARN A LANGUAGE. GUARANTEED; ROSETTASTONE.COM; ROSETTA WORLD, ADAPTIVE RECALL, CONTEXTUAL FORMATION; SHAREDTALK; and AUDIO COMPANION.

3.     The phrase "Terms Similar To The Rosetta Stone Marks" includes all terms similar to the Rosetta Stone Marks, including but not limited to: "rosettastone," "roseta stone," "rose etta stone," "rosetta sttone," "rossetta stone," and all other typographic variants or misspellings of the Rosetta Stone Marks, including pluralized forms of the Rosetta Stone Marks.

4.     The phrase "Rosetta Stone's Competitors" means entities that compete with Rosetta Stone commercially by selling products and/or services that compete with, counterfeit, or imitate Rosetta Stone's products or by selling copies of Rosetta Stone's products obtained through unauthorized channels.

5.     The terms "Google," "you," and "your" mean Google Inc. and any of its predecessors, successors, parents, subsidiaries, divisions, departments, or affiliates, and any of its present or former members, officers, directors, partners, employees, contract employees, accountants, agents, attorneys, or other persons acting for, at the direction of, or in concert with such persons or entities.

6.     The term "Google Customer" means any person who has provided or will provide consideration to Google in exchange for any goods or services provided by Google.

7.     The phrase "Google's Advertising Programs" means all of Google's advertising programs and business solutions, including but not limited to Google AdSense and Google AdWords, both described at _http://www.google.com/intl/en/ads/_, Google Custom Search, as

described at *http://www.google.com/coop/cse*, Google Site Search, as described at *http://www.google.com/sitesearch/index.html*, and Google AdWords Comparison Ads, as described at *http://adwords.blogspot.com/2009/10/introducing-adwords-comparison-ads.html*.

8.     The phrase "search query" refers to the entry of search terms and the terms entered by a user of a Google website or Google search technology into a search box.

9.     The term "Keyword" refers to any word, phrase, or term that is used by Google or its programming to trigger Internet advertising or any other message or service that causes Google to earn any consideration, directly or indirectly.

10.     The term "Related Keywords" refers to Keywords suggested by Google or its programming when a Google Customer designates a particular work or phrase to be used as a Keyword in one of Google's Advertising Programs.

11.     The terms "broad match" or "broad matched" refer to the AdWords matching option whereby the Google AdWords system runs Sponsored Links in response to search queries that do not necessarily contain the exact Keywords chosen by the Google Customer who requests the Sponsored Link, but contain a word or words that are similar to the chosen Keyword.

12.     The term "Broad Match Keywords" refers to variants of Keywords or terms related to Keywords that Google designates through its broad match system to trigger the Sponsored Link of a Google Customer in one of Google's Advertising Programs when an Internet user does not enter into his or her search engine the exact Keyword or Keywords designated by the Google Customer.

13.     The term "Sponsored Link" refers to any Internet advertisement or other message that (*a*) is or was published as a part of Google's Advertising Programs as a result of the entry of

a Keyword into Google's search engine or other Internet programming and (*b*) contains a hyperlink to an Internet website.

14.     The phrase "AdWords Process" refers to the series of actions taken by Google or its programming as part of Google's AdWords program involving the receipt of a search query and including related revenue journal entries in Google's accounting system, related creation of data accessible through Google Analytics, and any other external or internal reporting or data collection related to Google's Advertising Programs that is generated by a search query. This series of actions includes, but is not limited to, the collection of the user's search query, IP address and Google account user name, the identification of possible Sponsored Links through exact match, phrase match or broad match, the determination of which Sponsored Links are actually served (including any scoring system applied to Sponsored Links or Keywords), tracking of and response to any user Clickthrough on any of the served Sponsored Links, the collection of clickstream data beyond the Sponsored Link Clickthrough, and any analysis, summarizing or reporting done on the data collected or generated by this series of actions.

15.     The term "Studies" includes all investigations, surveys, searches, tests, pools, focus groups or studies of any kind, including but not limited to disclaimer studies, consumer confusion experiments, or other user experiments.

16.     The term "communication" has the broadest meaning possible and shall mean the transmittal of information, including but not limited to oral, electronic, digital or written means.

17.     The terms "concern" or "concerning" shall have the broadest meaning possible and shall mean directly or indirectly, in whole or in part, alluding to, responding to, with respect to, relating to, pertaining to, referring to, describing, mentioning, evidencing, reflecting or

constituting, commenting on, consisting of, in connection with, or otherwise having a connection to the subject matter of the Request.

18.     The terms "relate to," "relates to" and "relating to" shall have the broadest meaning possible and shall mean directly or indirectly, in whole or in part, alluding to, responding to, with respect to, concerning, pertaining to, referring to, describing, mentioning, evidencing, reflecting or constituting, commenting on, consisting of, in connection with, or otherwise having a connection to the subject matter of the Request.

19.     The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" set forth in Rule 34 of the Federal Rules of Civil Procedure and they shall have the broadest meaning possible and shall mean any form of communication however produced, reproduced or recorded, including all originals, non-identical copies and drafts, including, without limitation:  correspondence, letters, electronic mail, enclosures, memoranda, notes or notations, intra-office communications, notes and minutes of telephone or other conversations, conferences or meetings, calendar or diary entries, notices, announcements, requisitions, resolutions, opinions, reports, studies, analyses, evaluations, agreements, ledgers, books or records of account, financial statements, logs, server logs, data compilations, account memoranda, trial balances, spreadsheets, summaries, charts, graphs, sound recordings, photographs, video recordings, records in electronic, mechanical, magnetic, optical, or electric form, records or representations of any kind (including but not limited to computer data, computer files, computer programs, hard drives, floppy disks, compact disks, magnetic tapes and cards, and all other electronically stored information, regardless of the medium in which such records are stored), and things similar to any of the foregoing, whatever the form.

20. The phrase "electronically stored information" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure. It shall have the broadest meaning possible and shall mean any information stored in electronic form.

21. The term "including" means "including but not limited to."

22. The term "person" means any individual, corporation or any other type of entity, including, but not limited to limited liability companies, partnerships or groups of individuals.

23. The term "associated with" shall have the broadest possible meaning and shall mean physically or logically connected, necessary to, utilized by, created by, or otherwise in a relationship in any direct, indirect, tangible or intangible way.

24. The terms "trademark" and "trademarks" shall also include service marks and trade names and shall include both registered and unregistered trademarks, service marks and trade names.

25. The phrase "Trademarks Owned By Third Parties" refers to trademarks owned by parties other than Google or a Google Customer for whom Google sells, designates, uses, or includes such trademarks in connection with Google's Advertising Programs.

## DOCUMENTS REQUESTED

1. All documents relating to Google's policy or policies in the United States in effect up to 2004 that related to Google's trademark policy, with respect to Google's Advertising Programs, including but not limited to policies that prevented or were designed to prevent Google Customers from selecting Trademarks Owned By Third Parties as Keyword triggers for their advertisements.

2.　All documents relating to Google's change in policy in the United States in or around 2004 regarding the use of Trademarks Owned By Third Parties in Google's Advertising Programs in order to allow advertisers to use Trademarks Owned By Third Parties as Keyword triggers for their advertisements, including but not limited to all documents relating to the reasons that Google changed such policies, as well as documents sufficient to show the date when this change occurred.

3.　All documents relating to Google's change in policy in the United States after the settlement of *GEICO v. Google Inc.*, Case No. 1:04-cv-00507 (E.D. Va.) (filed May 4, 2004) on or around September 7, 2005 regarding the use of Trademarks Owned By Third Parties in Google's Advertising Programs, including but not limited to all documents relating to the reasons that Google changed such policies, as well as documents sufficient to show the date when this change occurred.

4.　All documents relating to Google's change in policy in the United States on or around May 14, 2009 regarding the use of Trademarks Owned By Third Parties in Google's Advertising Programs in order to, among other things, allow the use of trademark terms in add text, including but not limited to all documents relating to the reasons that Google changed such policies, as well as documents sufficient to show the date when this change occurred.

5.　All documents relating to Google's communications with current or past Google Customers or with users of Google's Internet search engine, website, or other Internet-related services relating to the sale, marketing, promotion, offering, designation, use, or inclusion of one or more trademarks of language education companies, including but not limited to the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, as Keywords or other designated

search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs.

6.      All documents relating to Google's analysis of the use of trademarks as Keywords in paid advertisements, including but not limited to data provided by or communicated to third party consultants, data or analysis generated by or stored in third party software, data or analysis generated by or stored in software developed by Google.

7.      All documents relating to any senior executive or board meeting, including but not limited to Board of Directors meetings, Executive Management Group meetings, and GPS meetings at which Google's trademark policy or any lawsuit related to that policy was discussed. Such documents shall include, but not be limited to, minutes, notes or reports of meetings.

8.      All documents relating to the sale, marketing, promotion, offering, designation, use, or inclusion of one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, as Keywords or other designated search terms in Google's Advertising Programs or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs.

9.      All documents relating to communications between Google and Rosetta Stone.

10.      All documents relating to communications between Google and any third party complaining, objecting to or criticizing Google's sale, marketing, promotion, offering, designation, use, or inclusion of such party's trademarks as a Keyword or other designated search term in Google's Advertising Programs or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, including cease and desist letters received by Google from any owner or purported owner of any trademark and any

responses to such cease and desist letters, as well as allegations that the use of trademarks would or had caused consumer confusion.

11.     All documents related to policies, decisions, requests, or other efforts by Google to prevent the distribution or publication of, or to remove, redact or otherwise alter the content of presentations made by Google regarding its Advertising Programs or trademarks, including, but not limited to, a 2003 presentation made by Sheryl Sandberg at the Search Engine Strategies Conference & Expo (*see* www.searchenginestrategies.com/sew/summer03/presentations.html), and a 2004 presentation made by David Fischer at the Search Engine Strategies Conference & Expo (*see* www.searchenginestrategies.com/sew/summer04/presentations.html). This request also covers the contents of the presentations themselves.

12.     All documents relating to "standing requests" from trademark owners to Google asking to prevent those trademark owners' trademarks from being used in the text or title of a Sponsored Link, including but not limited to all documents relating to: (*a*) the statement of Google's spokesperson to the Washington Examiner as published on October 18, 2007, to the effect that Google's "Trademark Complaint Form" is "both a way for trademark owners to file a complaint about an existing ad and a way for them to place a 'standing request'"; (*b*) copies of all such "standing requests" and Google's responses thereto; (*c*) all steps that Google has taken to honor such "standing requests"; (*d*) all ways that Google has communicated to trademark owners the option of making such "standing requests"; and (*e*) whether or not Google has considered treating the Rosetta Stone Marks as subject to such a "standing request."

13.     All documents relating to settlement agreements or any other documents memorializing settlement arrangements between Google and a third party relating to Google's sale, marketing, promotion, offering, designation, use, or inclusion of the third party's

trademark(s) as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, including but not limited to the settlement agreement in *American Airlines, Inc. v. Google Inc.*, Case No. 4:07-cv-00487-A (N.D. Tex.) (filed Aug. 16, 2007).

14. All documents related to any negotiations, agreements, settlements, arrangements or communications with RE/MAX International, Inc. or any of its subsidiaries, affiliates or franchisees related to the use of RE/MAX's trademarks (or those of its subsidiaries, affiliates or franchisees) in Google's Advertising Programs.

15. All documents related to any negotiations, agreements, settlements, arrangements or communications with Time Warner, Inc. or any of its subsidiaries, affiliates or franchisees (including but not limited to AOL LLC) related to the use of Time Warner's trademarks (or those of its subsidiaries, affiliates or franchisees) in Google's Advertising Programs.

16. All documents related to arrangements, negotiations, discussions or communications with any party concerning requested, suggested, considered or otherwise contemplated modifications of the AdWords Process or other Google policies and procedures concerning the presence of trademarked words or phrases in search queries or Keywords.

17. All documents relating to the use of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, in any lists of "More Specific Keywords," "Similar Keywords" or any other suggestions of terms, phrases or words to be sold, marketed, promoted, offered, designated, used, or included as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs.

18. All documents relating to any analysis, review, consideration, deliberations, debate, or other communications by or on behalf of Google with respect to the possibility of removing Trademarks Owned By Third Parties, including but not limited to the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, from any lists or sets of words, terms, or phrases available to be used, included, or designated as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs.

19. All documents relating to any analysis, review, consideration, deliberations, debate, or other communications by or on behalf of Google with respect to the possibility of limiting the sale, marketing, promotion, offering, designation, use, or inclusion of Trademarks Owned By Third Parties, including but not limited to the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, in Google's Advertising Programs.

20. All documents relating to any analysis, review, consideration, deliberations, debate, or other communications by or on behalf of Google with respect to the possibility of prohibiting advertisers or potential advertisers from bidding on, purchasing or otherwise using the Trademarks Owned By Third Parties as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs.

21. All documents relating to any analysis, review, consideration, deliberations, debate, or other communications by or on behalf of Google with respect to any financial implications to Google, including but not limited to any increase or decrease in the value of Google's stock or stock options, related to the sale, marketing, promotion, offering, designation, use, or inclusion of Trademarks Owned By Third Parties, including but not limited to the Rosetta

Stone Marks and Terms Similar To The Rosetta Stone Marks, as a part of Google's Advertising Programs.

22.     All documents relating to any analysis, review, consideration, deliberations, debate, or other communications by or on behalf of Google with respect to any financial implications to Google, including but not limited to any increase or decrease in the value of Google's stock or stock options, if Google were to cease all sale, marketing, promotion, offering, designation, use, or inclusion of Trademarks Owned By Third Parties, including but not limited to the Rosetta Stone Marks and Terms Similar To The Rosetta Stone Marks, as a part of Google's Advertising Programs.

23.     All documents relating to any Google polices, guidelines, procedures, or other guidance relating to the sale, marketing, promotion, offering, designation, use, or inclusion of Trademarks Owned By Third Parties as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, including all documents relating to any change in, amendment to or modification of such policies, guidelines, procedures or other guidance and the reasons for such changes, amendments or modifications.

24.     All documents relating to Google's policies, procedures, and guidelines relating to the sale, marketing, promotion, offering, designation, use, or inclusion of Google's own trademarks, including but not limited to the trademark "Google," as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, including all documents relating to any change in, amendment to or modification of such policies, guidelines, and procedures, and the reasons for such changes, amendments or modifications.

25. All documents related to actions taken by Google to prevent the use in commerce of terms confusingly similar to Google's trademarks, including but not limited to letters or emails written to parties in connection with web sites operated at the Universal Resource Locators, www.g00gle.com, www.booble.com, www.prgoogle.com, and www.googlefone.com.

26. Documents sufficient to identify and disclose the conclusions or findings of all Studies conducted by, for, on behalf of, or to the benefit of Google concerning the use of the term "Sponsored Link" as opposed to any other form of designation for the Sponsored Links in Google's Advertising Programs.

27. Documents sufficient to identify and disclose the conclusions or findings of all Studies conducted by, for, on behalf of, or to the benefit of Google concerning ways in which Internet users distinguish between Sponsored Links and natural (organic) search results, including but not limited to Studies that test the effect of any language, colors, design elements, placement, or disclaimers on such Sponsored Links and natural (organic) search results.

28. All documents analyzing or reporting on the effect on consumers of the layout, design or wording of the results page that a consumer sees after conducting a Google search, including without limitation the selection of the fonts, the colors, the placement of ads and the use of Sponsored Links to denote paid advertisements.

29. Documents sufficient to identify and disclose the conclusions or findings of all Studies conducted by, for, on behalf of, or to the benefit of Google concerning the use of any trademark as a Keyword in one of Google's Advertising Programs.

30. All documents concerning the effectiveness for advertisers of Google's Advertising Programs, natural search results, or the use of trademarks or brands as Keywords.

31.     Documents sufficient to show calculations and/or estimates of the total amount of revenues, profits, and other consideration that Google has received or expects to receive from Google's Advertising Programs, by quarter, from the inception of such advertising programs to the date Google produces documents responsive to this Request, including documents that substantiate such calculations and/or estimates.

32.     Documents sufficient to show calculations and/or estimates of the total amount of revenues, profits, and other consideration that Google has received or expects to receive from the sale, marketing, promotion, offering, designation, use, or inclusion of Trademarks Owned By Third Parties as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, by quarter, from the inception of such advertising programs to the date Google produces documents responsive to this Request, including documents that substantiate such calculations and/or estimates.

33.     Documents sufficient to show calculations and/or estimates of the total amount of revenues, profits, and other consideration that Google has received or expects to receive from the sale, marketing, promotion, offering, designation, use, or inclusion of Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, by quarter, from the inception of such advertising programs to the date Google produces documents responsive to this Request, including documents that substantiate such calculations and/or estimates.

34.     Documents sufficient to show calculations and/or estimates of the total amount of revenues, profits, and other consideration that Google has received or expects to receive from the

sale of Trademarks Owned By Third Parties as Keywords in Google's Advertising Programs, including documents that substantiate such calculations and/or estimates.

35. Documents sufficient to show calculations and/or estimates of the total amount of revenues, profits, and other consideration that Google has received or expects to receive from the sale of one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks as Keywords in Google's Advertising Programs, including documents that substantiate such calculations and/or estimates.

36. Documents sufficient to show quarterly gross or net revenue, profits, costs and expenses attributable to the sale, marketing, promotion, offering, designation, use, or inclusion of Keywords or designated search terms in Google's Advertising Programs, from the inception of such advertising programs to the date when Google produces documents responsive to this Request.

37. All of Google's quarterly and annual audited financial statements and annual reports from 1998 through April 29, 2004, the date of Google's Form S-1 Registration Statement.

38. All documents relating to Google's relationship to EnglishCentral, Inc. ("EnglishCentral"), including but not limited to documents pertaining to Google Ventures' investment in EnglishCentral, Google's promotion or planned promotion of EnglishCentral's products and services; documents analyzing the competitive landscape for EnglishCentral's products and/or services; documents discussing English Central and Rosetta Stone, either directly or implicitly; and Google's or any other party's long-term strategic plans for EnglishCentral.

39.     All documents relating to any analysis, review, or consideration of any legal issue relating to, in any way, the sale, marketing, promotion, offering, designation, use, or inclusion by any person of trademarks, or words confusingly similar thereto, in Google's Advertising Programs.

40.     All documents relating to any legal opinion created by, obtained by, or provided to Google that relates to the sale, marketing, promotion, offering, designation, use, or inclusion of trademarks as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs.

41.     All documents relating to the role of trademarked terms in consumer search activity, including but not limited to studies, surveys, reports, analyses, opinions, memoranda, or communications, including, but not limited to, documents created by third-parties, such as consumer research organizations, investment banks, consulting firms, and advertising agencies.

42.     All documents relating to every instance in which any of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, has been sold, marketed, promoted, offered, designated, used, or included as a Keyword or other designated search term in any of Google's Advertising Programs, including but not limited to agreements, proposals, the advertisements or "Sponsored Links" triggered by or containing the Rosetta Stone Marks or by Terms Similar To The Rosetta Stone Marks and any screenshots of such advertisements or "Sponsored Links."

43.     All documents relating to every instance in which any of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, has been marketed, promoted, offered, designated, used, or included in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs, including agreements and proposals.

44.     All documents relating to every instance in which Google or its programming has included one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks in lists of "More Specific Keywords," "Similar Keywords" or any other suggestions of terms, phrases or words to be sold, marketed, promoted, offered, designated, used, or included as Keywords or other designated search terms in Google's Advertising Programs.

45.     Documents sufficient to identify and provide the following information concerning all search terms that Google or its programming have designated to trigger the publication of a question on Google's search results page asking whether the Internet user that entered the search term in question "mean[t]" to use one or more of the Rosetta Stone Marks as an Internet search term:

(a) the number of times that the search term was entered into Google's search engine and then triggered the publication of the question "Did you mean" one or more of the Rosetta Stone Marks, in terms of page views or another readily available measure; and

(b) the number of times that Internet users followed Google's suggestion and clicked on the link asking whether they "mean[t]" to search one or more of the Rosetta Stone Marks.

46.     Documents including, but not limited to, data dictionaries, data schema, flowcharts, technical manuals, user manuals, data flow diagrams, strategic plans, budgets, business analyst documentation, training materials and internal reports or publications sufficient to describe in detail all systems, programs, procedures, databases (for example, Bigtable), fields columns, tables and metadata associated with the transactional activity related to publication of a question on Google's search results page asking whether the Internet user that entered the search term in question "mean[t]" to use a certain search query.

47.     Documents sufficient to identify and provide the following information concerning all search terms that Google or its programming have identified as a "misspelling" of one or more of the Rosetta Stone Marks when entered into the Google search engine as a search

term such that the correct spelling of the Rosetta Stone Mark will appear within the text of the resulting Sponsored Link(s):

    (a) the number of times that the misspellings have been used as search terms in Google's search engine;

    (b) the number of page views of each Sponsored Link in which a "misspelled" search term was displayed in the text of the Sponsored Link as a Rosetta Stone Mark; and

    (c) the number of times that an Internet user "clicked through" a Sponsored Link in which a "misspelled" search term was displayed in the text of the Sponsored Link as a Rosetta Stone Mark.

48.    Documents sufficient to identify and provide the following information concerning all Broad Match Keywords that Google or its programming have designated to trigger the Sponsored Links of a Google Customer that has designated one or more of the Rosetta Stone Marks as a Keyword in one of Google's Advertising Programs:

    (a) the search query and Broad Match Keywords used;

    (b) the name of the Google Customer;

    (c) the contents of the Sponsored Link;

    (d) the number of page views of each Sponsored Link triggered by a use of such a Broad Match Keyword; and

    (e) the number of times that an Internet user "clicked through" a Sponsored Link triggered by a use of such a Broad Match Keyword.

49.    Documents sufficient to identify and provide the following information concerning all Related Keywords that Google or its programming have suggested to Google Customers and/or Internet users when such Google Customers and/or Internet users have designated one of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks as a Keyword in one of Google's Advertising Programs:

    (a) the Keywords and Related Keywords used and the identity of the Google Customers in question;

(b) the number of times that Google or its programming suggested that such Related Keyword be used, in terms of page views or other available measure;

(c) the number of times that a Google Customer followed Google's suggestion and designated such Related Keyword to be used as a Keyword in Google's Advertising Program;

(d) the number of page views of each Sponsored Link triggered by a use of such a Related Keyword;

(e) the contents of each Sponsored Link triggered by a use of such a Related Keyword; and

(f) the number of Clickthroughs a Sponsored Link triggered by a use of such a Related Keyword received.

50.     Documents sufficient to identify the 50 Related Keywords that Google or its programming have suggested to Google Customers and/or Internet users most frequently when such Google Customers and/or Internet users have designated one of the Rosetta Stone Marks as a Keyword in one of Google's Advertising Programs.

51.     Documents sufficient to identify the 100 Broad Match Keywords that Google or its programming have most frequently designated to trigger the Sponsored Links of Google Customers that have designated a Rosetta Stone Mark as a Keyword in one of Google's Advertising Programs.

52.     All documents sufficient to identify every search query for which Google or its programming has included or will include one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks in its list of Query Suggestions created by Google Suggest, and the related list of suggestions offered.

53.     All documents sufficient to identify the Query Suggestions generated by Google Suggest, Google or its programming when a search query based on a user's entry or partial entry of a query containing one or more of the Rosetta Stone Marks, Terms Similar To The Rosetta

Stone Marks, or fractions thereof which Google or its programming relates to the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, as well as the associated query text.

54. All documents that show every Sponsored Link or other message published as a part of Google's Advertising Programs, in the form it was published, that was triggered by a Keyword or other designated search term that incorporates one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks.

55. Documents sufficient to identify and provide the following information concerning each and every Sponsored Link or other messages published as a part of Google's Advertising Programs that was triggered by a Keyword or other designated search term that incorporates one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks:

(a) All identifying information in Google's possession relating to the Google Customer associated with such a Sponsored Link or message, and/or on whose behalf such a Sponsored Link or message was created or purchased;

(b) The Uniform Resource Locator (URL) linked to each such Sponsored Link or message;

(c) The number of impressions per month that each such Sponsored Link or other message received;

(d) The monthly total amounts of Internet traffic registered on or through each such Sponsored Link or message, as registered in clickthroughs, clicks, hits, unique Internet users and/or IP addresses;

(e) The Clickthrough rate for each such Sponsored Link or other message;

(f) The monthly total amounts of revenue, profits, or other consideration paid or owed to Google that are attributable to each such Sponsored Link or message, or if no such documents are available, the estimated amount of revenue, profits, or consideration to Google that are attributable to each such Sponsored Link or message;

(g) The monthly total amounts of costs and expenses incurred by Google that are attributable to each such Sponsored Link or message, or if no such documents are

available, the estimated amount of costs and expenses incurred by Google that are attributable to each such Sponsored Link or message;

(h) The amounts charged by Google per month to secure the placement of such a Sponsored Link or message.

(i) The text of all such Sponsored Links;

(j) All other Keywords used by the Google Customer responsible for such a Sponsored Link; and

(k) The price paid per click on each such Sponsored Link.

56.     All documents associated with the transactional activity related to the AdWords Process that relates to all search queries received by Google which included one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, including, but not limited to, the full text of the relevant search queries, all Sponsored Links served in response to those search queries, clickstream data collected in connection with the search queries, any scoring of the Sponsored Link or Keyword related to the search query, the price-per-click bid or impression cost associated with all Sponsored Links served in response to those search queries, and any revenue collected by Google associated with that search query.

57.     All documents associated with the transactional activity related to the AdWords Process that relates to all search queries received by Google which did not contain any of the Rosetta Stone Marks but were broad matched to Keywords which are Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, including, but not limited to, the full text of the relevant search queries, all Sponsored Links served in response to those search queries, clickstream data collected in connection with the search queries, any scoring of the Sponsored Link or Keyword related to the search query, the price-per-click bid or impression cost associated with all Sponsored Links served in response to those search queries, and any revenue collected by Google associated with that search query.

58.    All documents available to Google or Google's advertisers concerning each Sponsored Link or other message published as a part of Google's Advertising Programs that was triggered by a Keyword or other designated search term that incorporates one ore more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks including without limitation:

(a) click stream data;

(b) landing pages;

(c) conversion rate;

(d) quality score;

(e) measures of customer loyalty;

(f) length of visit;

(g) navigation summaries;

(h) funneling;

(i) depth of visit;

(j) Clickthrough rates and/or other data measured and captured by Google or its advertisers concerning consumer responses; and

(k) other data available to the advertisers responsible for such Sponsored Links through Google Analytics or any other program, database, or store of knowledge offered or maintained by Google.

59.    All documents associated with the use of Google Checkout for the purchase of language education products or services from any source.

60.    Documents sufficient to identify the individuals who develop, maintain or are responsible for all systems, programs, procedures and databases associated with the AdWords Process, as well as the individuals' immediate supervisor and any direct reports.

61.     Documents sufficient to identify the individuals with responsibility for functions related to Google's Advertising Programs, including individuals with marketing, sales, finance and operational responsibilities, as well as the individuals' immediate supervisor and any direct reports.

62.     All documents concerning all reporting on, advertising, marketing, optimizing or selling of Google's Advertising Programs to advertisers or potential advertisers in the language education field, whether or not the information concerns Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks.

63.     All documents concerning all Studies, analyses, reports or presentations prepared by or for Google relating to companies that Google considers to be within the language education field or that sell language learning products and/or services, including but not limited to Compete Studies and Quarterly Reviews.

64.     All documents sufficient to analyze the demographic profile or consumer typology of consumers who have or are likely to use Google's search engines to find information or services related to language education products and/or services.

65.     All documents concerning every instance in which one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks was purchased as an AdWord or other keyword by an entity other than Rosetta Stone for use in Google's Advertising Programs.

66.     Documents sufficient to describe and/or explain Google's Premium Sponsorship Program ("PS Program"), including but not limited to whether the PS Program used Keywords at any time, the policies relating to the PS Program and the reasons for discontinuing the PS Program.

67.     All transcripts of depositions and the exhibits thereto, in *American Airlines, Inc. v. Google Inc.*, Case No. 4:07-cv-00487-A (N.D. Tex.) (filed Aug. 16, 2007).

68.     All expert reports, consumer or user confusion studies, and all documents relating to such reports or studies prepared in connection with *American Airlines, Inc. v. Google Inc.*, Case No. 4:07-cv-00487-A (N.D. Tex.) (filed Aug. 16, 2007).

69.     Copies of all requests to and responses to requests for admission by Google in *American Airlines, Inc. v. Google Inc.*, Case No. 4:07-cv-00487-A (N.D. Tex.) (filed Aug. 16, 2007).

70.     All documents relied on by any expert whom Google intends to call as a witness in connection with this action or any other litigation relating to the Google's Advertising Programs.

71.     All factual observations, tests, supporting data, calculations, photographs, screenshots, opinions, records or reports of any expert whom Google may call to testify at trial or of any consulting expert whose opinions or impressions have been or will be reviewed by a testifying expert.

72.     All documents and tangible evidence prepared by or for each expert who may be called by Google to testify in the trial of the case and as to each consulting expert whose opinions or impressions have been or will be reviewed by a testifying expert.

73.     All papers, treatises, reports or other publications authored by (*a*) each expert who may be called by Google to testify at the trial of this case or (*b*) each consulting expert whose opinions or impressions have been or will be reviewed by a testifying expert.

74.     All magazines, books, periodicals, articles, journals or treatises and any other published information upon which Google or any person who is to testify on your behalf, including experts, intends to rely for any purpose.

75.     Curriculum vitae for all expert witnesses designated by Google.

76.     All documents relating to consumer or user understanding or perception of Google's Sponsored Links, including but not limited to research or analysis conducted by or for Google on such understandings and perceptions.

77.     All documents relating to consumer or user confusion related in any way to Google's Sponsored Links, Google's Advertising Program and/or the use of Keywords in search engines, including surveys conducted by or for Google relating to the sale, marketing, promotion, offering, designation, use, or inclusion of Keywords by Google in any way.  This Request specifically includes draft surveys and survey results relating to the potential for likelihood of consumer confusion arising out of the sale, marketing, promotion, offering, designation, use, or inclusion of trademarks as Keywords or designated search terms in Google's Advertising Programs.

78.     All documents relating to consumers' ability, or lack thereof, to recognize Google's Sponsored Links as paid advertisements, including but not limited to research or analysis conducted by or for Google on such understandings and perceptions.

79.     All documents, including but not limited to those maintained in the Trakken system, that relate to consumer confusion (either showing confusion or lack of confusion) with, criticism of, or suggestions for improvement for: Sponsored Links, the relationship of Sponsored Links to natural search results, the layout of the paid and unpaid search results page, the use of

the terms "Sponsored Links" or the relationship between the consumer's search query and the paid results presented by Google.

80.     All documents on which Google intends to rely to defend against the claims asserted by Rosetta Stone in this lawsuit, including but not limited to all documents that Google intends to use to prove that Google did not willfully or intentionally violate any of Rosetta Stone' rights.

81.     All documents reflecting the absence of documents, failure to maintain documents, or destruction of documents relating to the sale, marketing, promotion, offering, designation, use, or inclusion of trademarks, or words confusingly similar thereto, as Keywords or other designated search terms in Google's Advertising Programs.

82.     All documents relating to Google's document retention policy from January 1, 2003, to the present.

83.     All charts, summaries or calculations of the contents of any voluminous writings, recordings or photographs as defined by Fed. R. Evid. 1001, which cannot conveniently be examined in court, and which Google or its attorneys plan or expect to offer or may offer as evidence at the trial of this lawsuit pursuant to Fed. R. Evid. 1006 or any other law.

84.     The contents of voluminous writings, recordings or photographs which Google or its attorneys may present in the form of such summaries, charts or photographs as described in the preceding Request.

85.     All documents sufficient to show how Google determines which Sponsored Links it presents to a user when one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks are used as a search term or as part of a search query.

86. All documents that identify or describe the manner in which a particular website is selected or listed as a Sponsored Link when a user enters a search using Trademarks Owned By Third Parties.

87. All documents sufficient to show how Google determines which search terms to suggest through its Google Suggest or Query Suggestions function, as described at *http://www.google.com/support/websearch/bin/answer.py?hl=en&answer=106230*, when a user enters or begins to enter a search query including one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, or any fraction thereof which Google or its programming relate to one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks.

88. All documents used by Google or its programming to broad match search queries containing one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks to Keywords which are not Rosetta Stone Marks or Terms Similar To Rosetta Stone Marks, including, but not limited to, data tables.

89. All documents used by Google or its programming to broad match search queries not containing Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks to Keywords which are or contain one or more of the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks, including, but not limited to, data tables.

90. All documents related to algorithms, processes, mechanisms or techniques used by Google or its programming to identify Keywords that it suggests, offers, provides or otherwise makes known to Google Customers as part of any optimization or other service provided to Google Customers.

91.     All documents related to algorithms, processes, mechanisms or techniques used by Google or its programming to identify words or phrases as part of the "Did You Mean" functionality of Google's web site.

92.     All agreements, including drafts thereof, that reference the Rosetta Stone Marks or Terms Similar To The Rosetta Stone Marks.

Respectfully submitted,

Dated: October 30, 2009



Terence P. Ross
VA State Bar # 26408
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-955-8500
Fax:    202-467-0539
tross@gibsondunn.com

Of Counsel:
Howard S. Hogan, Esq.
Bennett Borden, Esq.
Kyle Amborn, Esq.
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

Counsel for Plaintiff,
Rosetta Stone Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2009, I caused the foregoing

Plaintiff Rosetta Stone Ltd.'s First Request For The Production Of Documents From Defendant

Google to be served by electronic mail and hand delivery upon counsel for Defendant Google

Inc. as follows:

Jonathan D. Frieden, Esq.
ODIN, FELDMAN & PETTLEMAN, P.C.
9302 Lee Highway
Suite 1100
Fairfax, VA 22031
jonathan.frieden@ofplaw.com

*Counsel for Plaintiff Google Inc.*


Terence P. Ross
VSB # 26408
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Suite 300
Washington, DC 20036
(202) 955-8500 (Telephone)
(202) 467-0539 (Facsimile)
tross@gibsondunn.com

*Counsel for Plaintiff,*
*Rosetta Stone Ltd.*