IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ROSETTA STONE LTD.

    Plaintiff,

v.

GOOGLE INC.

    Defendant.

CIVIL ACTION  NO. 1:09cv736
(GBL / TCB)

## DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Dockets.Justia.com

Defendant Google Inc. ("Google") hereby submits this memorandum of law in opposition to Plaintiff Rosetta Stone Ltd.'s ("Rosetta Stone") Motion to Compel Production of Documents.

## INTRODUCTION

Rosetta Stone's motion to compel must be evaluated in light of the claims it has plead. Each claim, including trademark infringement and dilution, relates exclusively to Rosetta Stone's alleged trademarks. According to Rosetta Stone, only its advertising should be allowed on Google's search results pages when Internet users search for anything containing any alleged Rosetta Stone trademark, including "Rosetta Stone," "Language Library," "SharedTalk," and "Dynamic Immersion." Compl. ¶¶ 6, 16, 52. In Rosetta Stone's view, even authorized resellers of its genuine products, such as Amazon or Barnes & Noble, should not be permitted to bid on the opportunity to have their advertisements featured as labeled "Sponsored Links" on such search result pages on Google.com. Compl. ¶¶ 6, 52, 55, 65; *compare* Google Search Results Page for Query: "Rosetta Stone," Ex. 1, Declaration of Margret M. Caruso ("Caruso Decl."), submitted herewith, ¶2, Ex. A.

Rosetta Stone's legal theory defies almost a century of trademark precedent. *See Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61-62 (2d Cir. 1992) ("As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner.").[1] Perhaps that explains why Rosetta Stone now seeks to distract Google and this Court from exploring the merits of Rosetta Stone's action with its premature and overreaching motion to compel and misleading descriptions of the meet and

---

[1] *See also Golden Nugget,* [*Inc. v. American Stock Exchange, Inc.,*] 828 F.2d [586] at 591 [(9th Cir. 1987)] ("Describing [a] product nondeceptively and by name brand has never been a violation of a manufacturer's trademark."); *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368 (1924) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.").

confer process. Indeed, Rosetta Stone timed its surprise motion perfectly such that Google's

opposition is due the very day it is deposing Rosetta Stone's confusion expert—a deposition

Google's counsel had requested to occur the prior week, but was told could occur no sooner than

January 13. Caruso Decl. ¶ 3, Ex. B.

From its expansive 143 Requests for Production, Rosetta Stone's motion seeks three

(sometimes overlapping) categories of documents:

- <u>Documents Google has agreed to produce</u>, such as click data relating to every ad that was displayed as a result of an advertiser's bid on an alleged Rosetta Stone trademark as a keyword; all non-privileged communications concerning Rosetta Stone all Google trademark policies implemented since 2004, including all non-privileged documents relating to the reasons for such policies, and all studies and experiments relating generally to trademark use and potential confusion, going back to 2001.

- <u>Documents that relate to the trademarks of third parties</u>, such as information about every advertisement that appeared in response to a search query that contains any trademark, settlement agreements, written discovery in other trademark lawsuits, and expert reports relating to potential confusion arising from third party-advertisers' use of other third parties' trademarks.

- <u>Documents that are not feasible or unduly burdensome to collect and produce</u> because they require extensive engineering time to create and run code for and process into comprehendible documents and/or require knowledge or information Google does not possess.

Rosetta Stone's motion should be denied because it is premature as to documents Google has

agreed to produce and because the remainder of it requests are irrelevant, unduly burdensome,

and/or harassing.[2]

---

[2] For the convenience of the Court, attached is a chart reflecting Rosetta Stone's requests and Google's responses, and summarizing Google's position, submitted herewith as Exhibit 2.

<u>**ARGUMENT**</u>

I.    <u>**GOOGLE HAS MADE A GOOD FAITH EFFORT TO COMPLY WITH PLAINTIFF'S DISCOVERY REQUESTS.**</u>

Since October 30, 2009, Rosetta Stone has served Google with 143 requests for production. Ex. 3, Declaration of Kris Brewer ("Brewer Decl."), submitted herewith, ¶ 2. Notwithstanding the duplicative, overbroad, and sometimes incomprehensible nature of these requests, as conceded by Rosetta Stone's counsel during meet and confer efforts, Google supplied detailed responses (and, where appropriate, objections) to each set by the appropriate deadline, and will do the same for requests for which the deadline for response has not yet occurred. Google's counsel spent hours talking to Rosetta Stone's counsel in an attempt to identify the relevant information Rosetta Stone actually needs and wants and how most efficiently to provide it. Caruso Decl. ¶ 4. Only after identifying this information could Google's engineers begin to develop the custom scripts necessary to retrieve the requested information from the massive amount of data Google stores relating to the billions of searches conducted every day through its search engine as well as the extensive data relating to the advertising displayed in connection with those searches. This process is unavoidably time consuming. Brewer Decl., ¶ 9. Even as to documents that did not require custom queries, however, production could not commence until after December 14, 2009, when an agreed protective order was filed with the Court.

Although Google's production suffered a significant setback when 274 gigabytes of data crashed the discs they were stored on and had to be recollected and reloaded onto the production management system, Google produced its first set of documents shortly thereafter on December 23, 2009. Brewer Decl. ¶¶ 6-8. Google told Rosetta Stone's counsel on January 4, 2010 that Google would be producing more documents by early the following week, and then more

documents the week after.  Although Rosetta Stone's motion implies that additional documents were expected by January 8, its January 5th letter acknowledged the phone discussion where Google stated that a new batch of documents would be produced no later than January 12, 2010. Both Margret Caruso and Cheryl Galvin followed up separately with counsel for Rosetta Stone to confirm in response to the January 5 letter that additional documents would be produced on January 11, and documents were indeed produced on that date.  By end of day today, Google will have produced thousands of documents, as promised to Rosetta Stone prior to the premature filing of the instant motion.  Brewer Decl. ¶ 8.

Although the parties resolved many issues during their meet and confer sessions, not all issues were resolved during the calls, including the issue of the relevance of documents that relate only to third parties' trademarks, which have no bearing on Rosetta Stone's claims in this case.  Rosetta Stone's counsel, Bennett Borden, stated that Google would receive, in writing, Rosetta Stone's positions regarding the relevance of those documents, but the first written explanation Google received was Rosetta Stone's motion of last Friday.

On December 14, 2009, Plaintiff sent Google a detailed letter outlining the various agreements and disagreements of the parties about Plaintiff's numerous document requests. Many of the outstanding requests required Google's counsel to consult with Google engineers, as Plaintiff requested much information that would be very difficult or infeasible to collect.  Rather than merely objecting and refusing to produce documents in response to these extremely burdensome requests, Google spent substantial time consulting with engineers to determine the feasibility of collecting the information, as well as finding reasonable compromises to collect certain information that would otherwise be extremely burdensome to collect.  Because of the two week holiday period that occurred shortly after Plaintiff's letter and the number of engineers

that were not available during the holidays, Google was not able to write a comprehensive letter in response to the December 14 letter until January 8, 2010. Google's counsel was in touch with Mr. Borden several times in December to inform him that the letter would be forthcoming and that the holidays were causing some problems with responding. He responded to one of these discussions with email saying "No worries, I'll look for it after the holidays." Caruso Decl. ¶ 5, Ex. C.

Google received no notice from Plaintiff that it was planning imminently to file a motion to compel, and no substantive meet and confer sessions have been held since mid-December 2009.[3] Although Google's counsel had discussions with Rosetta Stone's counsel regarding a potential motion to extend discovery, these communications were all presented as Rosetta Stone seeking Google's agreement to file a consent motion or not oppose a motion for an extension, and at no time did Rosetta Stone's counsel hint that his intended extension would be requested as part of a motion to compel, much less that he would be filing one the very day they exchanged emails and he said he was unavailable to talk. Nor did Rosetta Stone's counsel inquire about Google counsel's availability to attend a hearing 3,000 miles away with a week's notice. When Google's counsel told Rosetta Stone's counsel after the motion was filed of counsel's prior commitments, he brushed those aside, saying that "I find it hard to believe that with two law

---

[3]     Until Rosetta Stone filed its motion last Friday night, every indication was that the parties were continuing to resolve these disputes. As such, Google has not brought a discovery motion against Plaintiff for its discovery deficiencies. For example, Rosetta Stone initially refused to respond to Google's Interrogatory 8, served on October 23, but after meeting and conferring on the issue, Rosetta Stone agreed to respond in full. Rosetta Stone's counsel repeatedly stated that Rosetta Stone would provide that response "soon," and confirmed in the December 14 letter that it would "respond to Interrogatory 8 in the near future." Although Google still has not received a response to that interrogatory, believing that the parties were still continuing the meet and confer process, and accepting Rosetta Stone's counsel at its word that it would respond, Google has refrained from filing a motion to compel on the issue, and last week, requested the response by January 13. Caruso Decl. ¶ 7, Ex. E.

firms representing Google, with hundreds of attorneys between them, that no attorney is available on the 15th for the hearing on this motion."  Caruso Decl. ¶ 6, Ex. D.

II.     **GOOGLE ALREADY AGREED TO PRODUCE DOCUMENTS RELATING TO ROSETTA STONE AND THE TRADEMARK POLICIES OF GOOGLE'S ADVERTISING PROGRAMS.**

Despite Plaintiff's claims to the contrary, Google has not objected to "in whole or substantial part, more than a quarter of Rosetta Stone's document requests."  Rather, Google agreed to produce documents in response to nearly all of Rosetta Stone's numerous requests, and will produce thousands of documents by the end of today.  As described above, Rosetta Stone's complaints about any alleged delays in Google's document production did not require filing of the instant motion.  Billions of searches are run on Google every day, and hundreds of millions of ads are served every month.  Brewer Decl. ¶ 9.  Needless to say, sorting through this enormous amount of data for documents responsive to Plaintiff's numerous and extremely broad requests takes time.  Unlike Plaintiff, who has indicated that it has another batch of documents ready to produce but is withholding those documents until it believes that Google has produced a sufficient number of documents, Google is diligently searching for, reviewing and producing documents as quickly and frequently as is feasible.

Before receiving Rosetta Stone's Motion to Compel, Google had already agreed to produce all documents that relate to Rosetta Stone's alleged trademarks and Google's advertising programs.  Google stated as much in its meet and confer phone calls with Bennett Borden, as well as in a letter to Mr. Borden dated January 8, 2010.  (Caruso Decl. ¶ 7. Ex. E).  For a time period going back to 2002, Google has agreed to produce, for each U.S. Sponsored Link displayed as a result of an advertiser's bid on a keyword consisting of or containing any of Rosetta Stone's registered trademarks, as well as a list of similar terms:

- The name of the advertiser

- The contents of the Sponsored Link

- The number of impressions

- The click-through rate

- The average cost per click

- The total cost

- The keyword

- The type of keyword

- The URL linked to the Sponsored Link

Google expects that those documents will be produced by this Friday, January 15.

In addition, pursuant to its agreement to do so, this week Google will produce its non-privileged communications relating to Rosetta Stone (in connection with Google advertising programs) or its alleged trademarks. Further, Google has agreed to produce all documents setting forth Google's advertising program trademark policies since 2004, along with documents that reflect any changes to those policies and the reasons for the policy changes. Google has also agreed to produce all non-privileged documents that describe studies, experiments and analyses that have been conducted that relate to trademarks in advertising and/or to the coloring and layout of Sponsored Links, and to produce documents describing how its advertising programs work. These documents satisfy requests 5-10, 17-23, 26-29, 42-43, 54, 76-79 and 92, mooting Rosetta Stone's motion.

Further, Google has agreed to produce to Plaintiff documents that are responsive to requests 62 and 63. These requests ask for documents relating to reports and analyses as well as optimization regarding other language education companies that advertise with Google's advertising programs. Google previously reached an agreement with Plaintiff's counsel

regarding these documents, as memorialized in its January 8 letter to Mr. Borden. "After receipt of Rosetta Stone's list of companies in the language education field that have advertised on Google using an alleged Rosetta Stone mark as a keyword, Google agrees to perform additional queries to search for documents responsive to Request 63, and 62, to the extent there are fewer than 10 companies identified." Caruso Decl. ¶ 7, Ex. E. Thus, it was unnecessary for Plaintiff to move to compel documents responsive to these requests.

III.    **THE REMAINDER OF PLAINTIFF'S REQUESTS ARE TECHNICALLY INFEASIBLE, UNDULY BURDENSOME AND IRRELEVANT.**

Many of Rosetta Stone's requests require that Google engineers spend substantial time writing scripts and running new code to retrieve the requested metrics and information, sorting through the results, and formatting the information in a meaningful way. Google has agreed to undertake this effort for the vast majority of Plaintiff's requests, even many with scant relevance. Some of Plaintiff's requests, however, are technically infeasible and/or completely irrelevant. Without some greater showing of relevance than has been made, Google should not be required to respond to these broad and irrelevant requests. "Discovery should not become a 'fishing expedition.'" *R. Ernest Cohn, D.C., D.A.B.C.O. v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991) (upholding district court's refusal to allow unnecessary discovery).

A.    **Rosetta Stone's Irrelevant Requests Relating to Third Parties' Trademarks Settlement Agreements and Past Discovery.**

Many of Plaintiff's requests ask for information that relates solely to third parties' trademarks, which have no connection to Rosetta Stone's alleged trademarks or this action. On those grounds, Google objected in writing to all such requests. *See* Rosetta Stone Ltd.'s Motion to Compel Production of Documents by Defendant Google Inc. ("Motion to Compel"), Exs. 3 and 4. Yet in discussing Google's objections, Mr. Borden was not initially prepared to articulate the arguable relevance of those requests. In later calls, he committed to provide a written

explanation of the relevance of such third-party documents. According to an email from Mr. Borden on Saturday, without otherwise informing Google, he later decided not to provide this written explanation. (Caruso Decl. ¶ 8, Ex. F).

Documents that relate to other trademark owners' accusations against Google, including emails, cease and desist letters, complaints, and discovery responses are irrelevant to the current case. Trademark infringement actions depend on the likelihood of confusion between a senior user's mark and a junior user's use, and "determining the likelihood of confusion is an 'inherently factual' issue that depends on the facts and circumstances in each case." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 933 (4th Cir. 1995). As such, cases in which the "facts and circumstances" were different than the current case—different trademarks were at issue, different advertisements, different products, different types and identities of advertisers, different consumer expectations—have no bearing on this litigation. Requests 13-15, 67-69, 76-78, 93 and 96 are therefore not relevant to the extent that they request settlements, expert reports, deposition transcripts and other documents from previous, unrelated litigations.

Rosetta Stone's argument that documents reflecting Google's knowledge of allegations of infringement concerning different trademarks relates to Google's alleged "willfulness" is unfounded. Google has never been found to have infringed anyone's trademarks. Accordingly, even if knowledge of prior infringement of a third party's trademark were relevant to the question of willfulness in a later action, no such facts exist here.

Tellingly, Rosetta Stone cites no authority for the proposition that judicial findings of infringement of other parties' trademarks are relevant to the question of intent—or any authority for the proposition that mere allegations or complaints that are never judicially resolved (or filed)

can provide such evidence. Indeed, this Court has held that the fact that a defendant continued to use a plaintiff's trademark after receiving a cease and desist letter from that very plaintiff concerning the same mark is not probative of bad faith. *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 697 (E.D. Va. 2005); *see also SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 189 (3d Cir. 1999), *held superseded on other grounds by statute*, 15 U.S.C. § 1117(a), 1999 amendment (failure to stop use of a mark after receiving a cease and desist letter "does not demonstrate willful infringement"); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *held superseded on other grounds by statute*, 15 U.S.C. § 1117(a), 1999 amendment ("[A] knowing use in the belief that there is no confusion is not bad faith").[4] Moreover, this Court—the only one to have actually ruled on Google's liability for trademark infringement in connection with its advertising programs— granted judgment as a matter of law in Google's favor on the issue of whether "the mere use by Google of the GEICO trademark as a search term or keyword, even in the context of Google's advertising program, violates either the Lanham Act or Virginia common law." *GEICO v. Google Inc.* 2005 WL 1903128 *1(E.D. Va. Aug. 8, 2005).[5]

---

[4] *See also*, *e.g.*, *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 525 (S.D.N.Y. 2008) (failing to abandon use of a trademark after receiving a cease and desist letter is insufficient to support an allegation of bad faith); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008) (same); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1096 (C.D. Cal. 2003) ("[T]he failure to stop using a mark after receiving a cease and desist letter does not show willful infringement"); McCarthy on Trademarks § 23:120 ("[A] defendant may well have considered that plaintiff's contention was legally wrong and continued use until a court stated otherwise.").

[5] Rosetta Stone's representation that the *GEICO* Court "has previously held that the exact conduct complained of in this lawsuit violates federal trademark law" is false. Although the Court found that although the use of "GEICO" in the text of headings of Sponsored Link could potentially be problematic, it did not determine "whether Google itself is liable for the Lanham Act violations resulting from advertisers' use of GEICO's trademarks in the headings and text of their Sponsored Links." *Id*. at *7.

Nor do settlement agreements with third parties have any additional bearing on the question of willfulness. Just as with the other documents Rosetta Stone seeks relating to trademark complaint's by others, settlement documents reflect the lack of a judicial determination of infringement. "Rule 408 clearly provides that the settlement agreement itself is not proof that the infringement alleged in [the previous suits] did in fact occur." *Collister Alley Music, Inc. v. Warner Bros. Records, Inc.*, 1997 WL 198081 at *1 (S.D.N.Y. April 22, 1997) (internal citations omitted). Accordingly, prior settlement agreements do not prove, "and by virtue of Rule 408 [are] not relevant to, the strength of the claims asserted" in the previous suits against Google. *Id.*

As such, Rosetta Stone's motion regarding requests 13-15, 67-69, 76-78, 93 and 96 should be denied, as should requests 5-6, 10, 12, 18-23, 29, 79 and 106 to the extent they request documents relating to third parties with no connection to Rosetta Stone's alleged trademarks.

B. **Rosetta Stone's Infeasible and Overly Burdensome Requests**

Many of Rosetta Stone's requests not only lack relevance, but are also technically infeasible or overly burdensome. Google should not be required to respond to unduly burdensome or infeasible requests that have little or no probative value.

Requests 98-99 seek the click-through rates for Sponsored Links that are triggered by any keyword that is a trademark of any trademark owner, as well as all documents relating to click-through rates achieved when a Sponsored Link is triggered by a keyword that is a trademark of a competitor to the entity placing the Sponsored Link. Not only are these documents irrelevant because they do not relate to trademarks at issue in this action, but also these requests are prima facie unreasonable and harassing. Google serves hundreds of millions of ads every month for hundreds of thousands of advertisers. Brewer Decl. ¶ 9. Yet Rosetta Stone expects Google to search the keywords that trigger all of these ads—for a period of 97 months—and determine (1)

which are trademarked terms—presumably using the U.S. Patent and Trademark Office to determine the identity of all U.S. registered trademarks—and then (2) which of advertisers compete in some way with any of the owners of every trademarked keyword. This is not a feasible undertaking for purposes of discovery, particularly given the lack of relevance of the information sought.

In requests 107-113, Plaintiff asks Google to produce lists of the top 500 keywords, measured by gross revenue, total impressions, and click-throughs delivered, for each month since January 1, 2002. Further, Plaintiff asks Google to produce lists of the top 200 keywords that are trademarks, measured by gross revenue, total impressions, and click-throughs delivered, for each month since January 1, 2002. These requests are extremely overbroad. Plaintiff expects that Google can identify every trademarked term that is used as a keyword, which is simply not possible.

The burden of these requests is in no way outweighed by the fact that these documents have nothing to do with the use of Rosetta Stone's alleged trademarks. Plaintiff offers no explanation as to how the top 200 trademark keywords or the top 500 overall keywords have any bearing whatsoever on the alleged infringement of Rosetta Stone's trademarks, or how they may lead to the discovery of admissible evidence. During one meet and confer session, Plaintiff's counsel conceded that the only potential use for such information was for his firm to discover other companies that may have a complaint with Google. Plaintiff has pointed to no justification that relates to the claims at issue in this case or their need for such documents to prosecute the case.

Due to the enormous burden of these requests and their irrelevance, Google respectfully requests the Court to determine that Google need not produce documents responsive to requests 107-113.

## **CONCLUSION**

For the foregoing reasons, Google respectfully requests that Plaintiff's Motion to Compel Production of Documents be denied.


Dated: January 13, 2010

Respectfully Submitted,

GOOGLE INC.
By counsel

_____ /s/ _____
Jonathan D. Frieden, Esquire (VSB No. 41452)
Stephen A. Cobb, Esquire (VSB No. 75876)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22031
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
stephen.cobb@ofplaw.com

Margret M. Caruso, Esquire (Admitted *Pro Hac Vice)*
QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5101
(650) 801-5100 (facsimile)
margretcaruso@quinnemanuel.com
*Counsel for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of January, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Terence P. Ross, Esquire (VSB No. 26408)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036
tross@gibsondunn.com
*Counsel for Plaintiff Rosetta Stone Ltd.*

_____/s/_____
Jonathan D. Frieden, Esquire (VSB No. 41452)
Stephen A. Cobb, Esquire (VSB No. 75876)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22031
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
stephen.cobb@ofplaw.com
*Counsel for Defendant Google Inc.*