IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSETTA STONE LTD., | ) |
| Plaintiff, | ) |
| -v- | ) Case No. 1:09-cv-00736 (GBL/TCB) |
| GOOGLE INC., | ) |
| Defendant. | ) |

**ROSETTA STONE LTD.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY GOOGLE INC.**

This matter comes before the Court on Plaintiff Rosetta Stone Ltd.'s ("Rosetta Stone") Motion to Compel Production of Documents by Defendant Google Inc. ("Google"). Pursuant to the Court's request, counsel for the parties have conferred in a further effort to narrow the issues presented in this motion.[1] As a result of that conference, Rosetta Stone has agreed to withdraw from this motion Plaintiff's Request Nos. 8-9, 17, 42-43, 54, 62-63, 92, 98-99, 107-112.

**INTRODUCTION**

For several years, Google has made money by facilitating the sale of counterfeit Rosetta Stone products by software pirates based in the Far East. Thousands of innocent American consumers have been victimized by this piracy and Rosetta Stone's reputation with consumers

---

[1] The parties conferred by telephone on January 19, 2010.

has been tarnished. Moreover, both consumers and Rosetta Stone have lost significant amounts of money from this unlawful scheme which Google refers to as its AdWords Program.

An integral part of the Internet search service offered by Google to consumers is its AdWords Program. The AdWords Program monitors consumer searches and displays advertising purportedly relevant to those searches. Google refers to these ads as "Sponsored Links." Google has set up the AdWords Program to confuse consumers as to the nature and source of these Sponsored Links in order to induce them to click on the Sponsored Links – the only way Google makes money on advertising.[2] Needless to say, Google has implemented the AdWords Program in such a way to maximize its revenues. Google has engaged in substantial research of consumer behavior to determine where to place Sponsored Links on a search results page, what background color to use, even whether to label them Sponsored Links as opposed to what they really are, "Paid Advertisements."

Google's research discovered that consumers are more likely to click on Sponsored Links that are displayed when searching for a branded company, product or service. Accordingly, Google allows its advertisers to "buy" third-party trademarks as keyword triggers for advertising. Thus, Google "sells" Rosetta Stone's trademarks to counterfeiters and pirates which they use to trigger the display of "Sponsored Links" when a consumer seeking to purchase Rosetta Stone products searches for the Rosetta Stone website using the Google search engine.[3] Moreover, Google allows these pirates to use Rosetta Stone's trademarks within the text of Sponsored Links, as if the links will take a consumer to the Rosetta Stone website. As a consumer survey

---

[2] Google does not get paid for the mere display of Sponsored Links. Google is only paid if a consumer actually clicks on a Sponsored Link and goes to an advertiser's website.
[3] Google does offer to take down pirate advertisements when Rosetta Stone calls such ads to Google's attention, but Google only takes it down for one day at a time, requiring constant monitoring/reporting by trademark owners.

has conclusively demonstrated, the result of this is significant confusion leading to the diversion of consumers to non-Rosetta Stone websites.[4]

Google's actions plainly constitute trademark infringement and dilution. Far from being consistent with "a century of trademark precedent," as Google argues in its Opposition to this Motion to Compel, this is exactly the type of wrongful use of trademarks that the Lanham Act is intended to prohibit. Rosetta Stone has brought this lawsuit to stop Google from doing any further harm to Rosetta Stone's valuable trademarks and to put a halt to the continuing victimization of innocent consumers.[5]

## STATUS OF GOOGLE'S DOCUMENT PRODUCTION

**Documents Produced**

On December 23, 2009 (three weeks after they were due), Google produced 3,986 unique documents (after removal of duplicates). Almost all of these documents had been produced by Google in prior lawsuits. In other words, they had already been culled from Google's files, reviewed for privilege and readied for production. There is no reason why these documents could not have been produced weeks earlier at the commencement of discovery.

On January 11, 2010 (after this Motion to Compel was filed), Google made a token production of approximately 912 unique documents. This small number of new documents produced, however, was of no use because they were improperly produced, such that attachments

---

[4] This survey found gross confusion of 47% among consumers.
[5] Google argues in its Opposition that the usage of Rosetta Stone's trademarks by "resellers" of Rosetta Stone product is lawful. (Google Opp., p. 1). That is incorrect. Rosetta Stone expressly prohibits the use of its trademarks, even by authorized resellers, in paid search-engine advertising, such as Google AdWords.

3

to e-mails were not actually attached to the relevant e-mail.  A corrected production was made on January 15, 2010.

On January 13 -15, 2010, Google made a rolling production, primarily of documents from its Trax database, which archives complaints from its advertisers.  After duplicates were removed, this production consisted of approximately 12,480 unique documents.  Some of these documents, however, were produced in a corrupted manner.  Specifically, thirteen e-mails responsive to Rosetta Stone's document production requests were produced with 42,599 attachments to them.   A single one of these e-mails had more than 10,000 attachments to it.  Although not every attachment has been reviewed by Rosetta Stone, it is clear that they are virtually all "spam" that has nothing to do with this case.  Google has acknowledged this and explained that there was no other way to produce the documents from the Trax database as quickly as necessary.  Unfortunately, Google did not explain this until after Rosetta Stone had expended significant time and cost reviewing these attachments to determine that they were "spam" and sought an explanation for it from Google.

Thus, Google has produced only 17,078 unique documents to date.  Google has still not produced any documents for many document requests to which Google did not object.  For example, Google has not produced any documents required by Rosetta Stone to calculate its damages (*e.g.*, how much revenue Google generated selling Rosetta Stone's trademarks and how many click-throughs on Sponsored Links using Rosetta Stone trademarks occurred).  Google has also not yet produced what its own counsel described as "the most important documents in this case," spreadsheets showing who Google sold Rosetta Stone's trademarks to as keywords and associated data, such as the advertisements displayed.  Of particular note, Google has also not produced any documents from six of the eleven Google employees that Google identified in its

4

Rule 26 Initial Disclosures as "likely to have discoverable information."

Google has represented that it will not be able to complete document production until January 29, 2010. This is a mere two weeks prior to the close of fact discovery. Even assuming that there are no further issues relating to the production that will require court intervention, there will be insufficient time prior to the discovery cut-off for Rosetta Stone to process these documents, let alone make use of them in depositions.

**Documents Still Objected To By Google**

Google attached to its Opposition a chart it described as "reflecting Rosetta Stone's requests and Google's responses, and summarizing Goggle's position." (*See* Google Opp. at Ex. 2).[6] This chart makes crystal clear that there is one central objection by Google that the Court needs to resolve. Google objects to Request Nos. 5-7, 10, 12-15, 18-23, 26-29, 67-69, 76-79, 93, 96, 106 and 113, on the ground that "documents relating to other trademark owners, including trademark complaints of third parties . . . including emails, cease and desist letters, complaints, and discovery responses are irrelevant to the current case." (Google Opp. at Ex. 2, p.1).[7] As discussed below, these documents are relevant and are typically produced in trademark infringement cases, including the very cases cited by Google in its Opposition.

---

[6] Included in this chart are Request Nos. 8-9, 17, 42-43, 54, 62-63, 92, 98-99, and 107-112 which are no longer part of this motion.

[7] In addition to this objection, Google also had objected to producing any documents created prior to July 10, 2004, with two exceptions. First, Google will produce back to 2002 any documents relating to Google's display of Sponsored Links triggered by a keyword including a Rosetta Stone trademark. Second, Goggle will produce documents relating to its own 2004 internal trademark policy changes, even if created before 2004. (*See* Google Opp., pp. 6-7). Counsel for Google, however, has now assured Rosetta Stone that, if this motion is granted, it will produce third-party documents without regard to this date limitation. Thus, that aspect of the motion is now moot.

## ARGUMENT

### I. Third-Party Documents Are Relevant To Google's Intent.

As discussed in Rosetta Stone's initial memorandum, Google's intent in "selling" the trademarks of others as keywords to trigger Sponsored Links, as well as allowing those trademarks to appear in the text of the Sponsored Links, is relevant to several issues in the case. In particular, if Google acted in reckless disregard of the rights of trademark owners, its conduct was "willful." *See, e.g.*, *Agri-Supply Company Inc. v. Agrisupply.com*, 457 F. Supp. 2d 660, 666 (E.D. Va. 2006). Such willfulness is relevant in trademark cases to establish: (i) a likelihood of confusion; (ii) plaintiff's entitlement to recovery of defendant's profits; and (iii) that a case is "exceptional" for purposes of an award of attorneys' fees. Google's opposition has not contested that its intent is relevant. Rather, Google has argued that two categories of documents it admittedly possesses, are not privileged, and are responsive to Rosetta Stone's document requests are not relevant to a determination of willfulness. Those two categories are cease and desist letters from third parties and certain pleadings prepared in prior litigation.

At the outset, however, it is important to note that Rosetta Stone's requests seek far more than merely cease and desist letters and pleadings. Rosetta Stone's requests also seek:

- documents relating to third-party trademarks that indicate the Google AdWords Program causes consumer confusion;

- research studies, such as consumer surveys, triggered by a specific trademark owner's objections, testing whether the use of third-party trademarks in the Google AdWords Program cause confusion;

- documents relating to "deals" made with third parties by which Google agreed not

- to sell their trademarks because it was likely to cause confusion;

- reports from third parties, including consumers, that Google's AdWords Program had caused *actual* confusion in purchases;

- notes of Google board meetings or other internal meetings that discussed how its AdWords Program cause confusion even if the discussion centered on third-party trademarks;

- documents relating to the financial implications of selling or not selling trademarks as keywords, even if based only on third-party trademarks;

- documents relating to how Google decided to position Sponsored Links on a Google results page; the color used as background for Sponsored Links; the use of the term "Sponsored Links"; and similar factors that may have been deliberately taken to cause consumer confusion;

- documents relating to how consumers perceive Sponsored Links, even if based on third-party trademarks; and

- documents relating to how Google trains its employees to help advertisers use the trademarks of others, even if based on third-party trademarks.

Google makes no argument as to why these categories of documents – as opposed to cease and desist letters or pleadings in other cases – are irrelevant. Although this lawsuit only seeks relief for infringement of Rosetta Stone's trademarks, the causes of action are grounded in the argument that Google's AdWords Program was designed to make money by confusing

consumers into clicking on Sponsored Links in the belief that they would be taken to the website for the specific branded company or product for which they were searching. Thus, surveys, meeting notes, and click-through rates, even if only relating to third-party trademarks, can be used to show that Google set up the AdWords Program with an intent to cause confusion – an intent not limited to any specific trademark but rather impacting all trademarks. The documents sought by Rosetta Stone are thus highly relevant to Google's intent.

By way of example, assume that Google received an objection from StarBucks Coffee Company to the effect that Google was consuming customers. As a result of that objection, Google conducted a consumer survey to test its AdWords Program, specifically whether the display of Sponsored Links in response to a search for a trademarked product or service caused confusion. Assume further that, in the survey, Google used the registered trademark "Starbucks Coffee" as the test trademark. If that survey indicated substantial levels of consumer confusion resulting from the manner in which AdWords operated in the context of a search for a trademarked product or service, the survey would be evidence that Google proceeded to implement or continued to operate AdWords knowing that it confused consumers. Such evidence would be highly relevant to the issue of Google's state of mind in this case, even though the survey did not specifically test a Rosetta Stone trademark. Similarly, if that same survey was then discussed at a high level executive meeting within Google in which officers of the company discussed the significant revenues generated for Google by allowing trademarks to be used as keywords, notes of that meeting would be relevant to the issue of intent in this case, even though the executives did not specifically mention a Rosetta Stone trademark. These are precisely the types of documents Google is withholding on the grounds that they are irrelevant.

### A. Third-Party Communications About Google's Unauthorized Use Of Trademarks Is Relevant.

Google argues that cease and desist letters from third-party trademark owners to Google are "not probative of bad faith." (Google Opp., p. 10). Of course, the standard for discovery under Rule 26 is not whether the information sought is "probative" (or even admissible), but whether it is relevant. Moreover, as Professor McCarthy makes clear, cease and desist letters are relevant in trademark infringement cases.

> "Another evidentiary fact which has been used as a basis from which to infer intent is the continued use by defendant of his mark after being informed by plaintiff that plaintiff considered such a use to be infringement."

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:120 at p. 23-370 (4th ed. 2009). Numerous courts have reached the same conclusion. For example, in *OBH, Inc. v. Spotlight Magazine, Inc.,* 86 F. Supp. 2d 176 (W.D.N.Y. 2000), the district court held that defendants' "refusal to discontinue using the mark after plaintiffs sent them [a cease and desist] letter is evidence that defendants were not acting in good faith." 86 F. Supp. 2d at 189. *Accord Pfizer v. Sachs*, 2009 WL 2876255, at * 5 (S.D.N.Y. Sept. 8, 2009); *New York State Soc'y of Certified Pub. Accountants v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 349-50 (S.D.N.Y. 1999).

Google's citation in its Opposition to several cases which it asserts are to the contrary is inaccurate. (*See* Google Opp., p. 10). First, in each of those cases, cease and desist letters were admitted into evidence at trial, thus indicating that they were considered relevant by the court. Second, the holdings in those cases do not stand for the proposition that cease and desist letters are irrelevant to an infringer's intent, but rather that a cease and desist letter, in and of itself, will not be sufficient to establish willfulness. Thus, the Third Circuit stated: "A defendant's refusal

to cease and desist using a mark upon demand is *not necessarily* indicative of bad faith. This is particularly true when the trademark at issue is not registered." *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 189 (3d Cir. 1999) (citations omitted and emphasis added).[8] Similarly, the U.S. District Court for the Southern District of New York noted: "[A] defendant's refusal to abandon a mark in the face of a cease and desist letter cannot demonstrate bad faith *standing alone.*" *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 525 (S.D.N.Y. 2008) (emphasis added).

Of course, Rosetta Stone does not intend to rely solely upon cease and desist letters, but rather upon a panoply of evidence that would have put any reasonable person on notice that there might be trademark infringement afoot, sending them to seek an opinion of non-infringement from a qualified trademark attorney.[9] One part of that evidentiary body Rosetta Stone intends to use to establish Google's willful intent in the manner in which it operates its AdWords Program will be cease and desist letters, but the inference of bad faith to be drawn from those letters and complaints will be supported by many other pieces of evidence. Thus, even if such communications are not alone sufficient at trial to establish Google's bad faith, they certainly are discoverable and, when coupled with other evidence may become admissible.

### B. Documents From Prior Lawsuits Are Also Relevant.

Rosetta Stone has also sought a limited number of documents from several prior lawsuits brought against Google. Google has objected to the production of such documents. There is, however, no prohibition in the Federal Rules of Civil Procedure insulating pleadings in one suit from being produced in another suit.[10] Moreover, these documents are relevant with respect to

---

[8] Rosetta Stone's trademarks are registered, unlike those at issue in the cases cited in Google's Opposition.
[9] Google has not asserted reliance upon counsel as an affirmative defense in this case.
[10] None of the documents sought in this regard were filed with a court or, if filed, were filed

Google's state of mind. For example, admissions executed by Google in another lawsuit as to how its AdWords Program works would be equally binding in this lawsuit. Similarly, testimony given by a Google under oath in a deposition in a prior lawsuit as to why paid advertising is referred to as "Sponsored Links" could not now be changed in this lawsuit. Moreover, as discussed above, consumer surveys conducted in prior lawsuits would be relevant to whether the AdWords Program confuses consumers, even if a Rosetta Stone trademark was not used in the research. Finally, settlement agreements in prior lawsuits, while not admissible to show liability, are relevant to Google's state of mind in continuing to operate the AdWords Program in a manner that confuses consumers. *See* Fed. R. Evid. 408.

## CONCLUSION

For the foregoing reasons, Rosetta Stone respectfully requests that its Motion to Compel. Production of Documents be granted and that the Court order Google to produce documents responsive to Document Request Nos. 5-7, 10, 12-15, 18-23, 26-29, 67-69, 76-79, 93, 96, 106 and 113. Moreover, given Google's delay in producing documents and the many problems Rosetta Stone has experienced with the documents actually produced to date by Google, Rosetta Stone respectfully requests an appropriate extension of time, not less than thirty days, to complete discovery.

---

under seal and cannot be obtained by Rosetta Stone.

                                                         Respectfully submitted,

Dated: January 20, 2010                              _____/s/_____
                                                         Terence P. Ross
                                                         VSB # 26408
                                                         CROWELL & MORING, LLP
                                                         1001 Pennsylvania Avenue, NW
                                                         Washington, DC 20004
                                                         Phone: 202-624-2645
                                                         Fax: 202-628-8844
                                                         tross@crowell.com


                                                         *Counsel for Plaintiff,*
                                                         *Rosetta Stone Ltd.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2010, I will electronically file Rosetta Stone Ltd.'s Supplemental Memorandum in Support of its Motion to Compel Production of Documents by Google Inc. with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Jonathan D. Frieden, Esq.
>ODIN, FELDMAN & PETTLEMAN, P.C.
>9302 Lee Highway
>Suite 1100
>Fairfax, VA  22031
>jonathan.frieden@ofplaw.com
>
>*Counsel for Defendant, Google Inc.*


>_____/s/_____
>Terence P. Ross
>VSB # 26408
>CROWELL & MORING, LLP
>1001 Pennsylvania Avenue, N.W.
>Washington, DC  20004
>Phone: 202-624-2645
>Fax:  202-628-8844
>tross@crowell.com
>
>*Counsel for Plaintiff,*
>*Rosetta Stone Ltd.*