EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ROSETTA STONE LTD.

    Plaintiff,

    v.

GOOGLE INC.

    Defendant.

CIVIL ACTION NO. 1:09cv736
(GBL / TCB)

## DECLARATION UNDER PENALTY OF PERJURY OF MARGRET M. CARUSO

1.  I am over the age of eighteen. I am competent to testify to, and have personal knowledge of, the matters contained herein.

2.  I represent Defendant Google Inc. in this action. In that capacity, I have gained personal knowledge of the facts contained herein, each of which is true and correct.

3.  Attached to this declaration as Exhibit A is a true and correct copy of a printout of the webpage http://adwords.google.com/support/aw/bin/answer.py?hl=en&answer=6118, printed on February 12, 2010.

4.  Attached to this declaration as Exhibit B is a true and correct copy of the February 4, 2010 letter sent from Rosetta Stone's counsel Jen Spaziano to me via email and a true and correct copy of the February 5, 2010 Notice of Deposition of Google Inc. that was sent from Rosetta Stone's counsel Jen Spaziano to me via email.

5.  Attached to this declaration as Exhibit C is a true and correct copy of the February 10, 2010 letter sent from Rosetta Stone's counsel Jen Spaziano to me via email.

6.  Attached to this declaration as Exhibit D is a true and correct copy of the Order entered on August 28, 2009 in *PA Advisors, LLC v. Google, Inc. et. al*, Case No. 2:07-cv-480-DF

in the United States District Court in the Eastern District of Texas, as retrieved from the Public

Access to Court Electronic Records (PACER) system.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE

AND CORRECT.  EXECUTED ON THIS 12TH DAY OF FEBRUARY, 2010.


_____/s/_____
Margret M. Caruso

# EXHIBIT A

# Google AdWords
## AdWords Help

**Upgrade your browser for faster account navigation**                    Hide
We suggest that you upgrade to a recommended browser for optimal performance with AdWords.

## What is Google's AdWords and AdSense trademark policy?

Google recognizes the importance of trademarks. Our AdWords Terms and Conditions with advertisers prohibit intellectual property infringement by advertisers. Advertisers are responsible for the keywords they choose to generate advertisements and the text that they choose to use in those advertisements.

Google takes allegations of trademark infringement very seriously and, as a courtesy, we investigate matters raised by trademark owners. Trademarks are territorial and apply only to certain goods or services. Therefore, different parties can own the same mark in different countries or different industries. Accordingly, in processing complaints, Google will ask the trademark owner for information regarding where the mark is valid and for what goods or services. Please note the following about our complaint process:

The trademark owner doesn't need to be a Google AdWords advertiser in order to send a complaint.
Any such investigation will only affect ads served on or by Google.
Google's trademark policy does not apply to search results. Our investigations only apply to sponsored links. For trademark concerns about websites that appear in Google search results, the trademark owner should contact the site owner directly.
In the case of an AdSense for Domains trademark complaint, an investigation will affect only the participation of the domain name in question in our AdSense for Domains program.
Because Google is not a third-party arbiter, we encourage trademark owners to resolve their disputes directly with the advertisers, particularly because the advertisers may have similar ads running via other advertising programs.

## AdWords Trademark Policies in Sponsored Links

Below, you can find information on our trademark complaint procedure across different regions as well as on our advertiser authorization procedure.

I see an unauthorized ad using my trademark. What is Google's trademark policy?

I have previously filed a trademark complaint, but now I want to allow an advertiser use my trademark. What is Google's trademark authorization policy?

## AdWords Counterfeit Goods Complaint in Sponsored Links

A Google advertiser is selling counterfeit goods. What is Google's Counterfeit Goods policy?

## AdSense for Domains Trademark Policy

A parked domain is serving AdSense ads, and the domain name is using my trademark or variation thereof. What is Google's AdSense for Domains trademark policy?

**Was this information helpful?**          ○ Yes ○ No

AdWords - Contacting Us - Help with other Google products - Change Language:  English (US)

©2010 Google - Google Home - Privacy Policy - Terms of Service - Advertising Policies

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| ROSETTA STONE LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     **Case No. 1:09-cv-00736 (GBL/TCB)** |
| | ) |
| GOOGLE INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>NOTICE OF DEPOSITION OF GOOGLE INC.</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Rosetta Stone Ltd., through its attorneys, will take the deposition upon oral examination of Google Inc., through one or more persons who are designated by Google Inc. to testify, and who consent to so testify, concerning the matters identified in Exhibit A attached hereto. The deposition will take place on February 16, 2010, beginning at 9:00 a.m., at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 525 University Avenue, Suite 1100, Palo Alto, California 94301. The deposition will be taken before a Notary Public or some other officer duly authorized by law to administer oaths. This deposition will be taken by stenographic means with real-time capability. Telephonic participation for this deposition is not contemplated.

Dated: February 5, 2010

Respectfully submitted,

/s/
_____

Warren T. Allen II (Va. Bar No. 72691)
Attorney for Rosetta Stone Ltd.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone: (202) 371-7126
Facsimile: (202) 661-9121
Warren.Allen@skadden.com

# EXHIBIT A

## DEFINITIONS

1.    "Rosetta Stone" means Rosetta Stone, Inc. and any of its successors, predecessors, divisions, departments, or affiliates, and any of its present or former officers, directors, employees, accountants, agents, attorneys, or other persons acting for, at the direction of, or in concert with such persons or entities.

2.    The phrase "Rosetta Stone Marks" means any and all names, logos, symbols, nicknames, and other indicia that consumers use to identify goods or services offered, marketed, promoted, sponsored, endorsed or approved by Rosetta Stone, including: ROSETTA STONE; GLOBAL TRAVELER; ROSETTA STONE LANGUAGE & LEARNING SUCCESS; LANGUAGE LIBRARY; DYNAMIC IMMERSION; THE FASTEST WAY TO LEARN A LANGUAGE. GUARANTEED; ROSETTASTONE.COM; ROSETTA WORLD; ADAPTIVE RECALL; CONTEXTUAL FORMATION; SHAREDTALK; and AUDIO COMPANION.

3.    The phrase "Terms Similar To The Rosetta Stone Marks" includes all terms similar to the Rosetta Stone Marks, including but not limited to: "rosettastone," "roseta stone," "rose etta stone," "rosetta sttone," "rossetta stone," and all other typographic variants or misspellings of the Rosetta Stone Marks, including pluralized forms of the Rosetta Stone Marks.

4.    The terms "Google," "you," and "your" mean Google Inc. and any of its predecessors, successors, parents, subsidiaries, divisions, departments, or affiliates, and any of its present or former members, officers, directors, partners, employees, contract employees, accountants, agents, attorneys, or other persons acting for, at the direction of, or in concert with such persons or entities.

5.    The phrase "Google's Advertising Programs" means all of Google's advertising programs and business solutions, including but not limited to Google AdSense and Google

3

AdWords, both described at *http://www.google.com/intl/en/ads/*, Google Custom Search, as described at *http://www.google.com/coop/cse*, Google Site Search, as described at *http://www.google.com/sitesearch/index.html*, and Google AdWords Comparison Ads, as described at *http://adwords.blogspot.com/2009/10/introducing-adwords-comparison-ads.html*.

6.      The term "Keyword" refers to any word, phrase, or term that is used by Google or its programming to trigger Internet advertising or any other message or service that causes Google to earn any consideration, directly or indirectly.

7.      The term "Sponsored Link" refers to any Internet advertisement or other message that (*a*) is or was published as a part of Google's Advertising Programs as a result of the entry of a Keyword into Google's search engine or other Internet programming and (*b*) contains a hyperlink to an Internet website.

# **TOPICS**

1.  Google's past and current trademark policy, changes and the reasons or decision to make any changes to Google's trademark policy and the supervision, implementation and creation of those policies, including but not limited to, Google's decision to use or not use trademarks not owned or licensed to Google as Keywords in Google's Advertising Programs from 2002 to the present.

2.  Surveys, tests, studies or reports relating to the use of trademarks not owned or licensed to Google, including the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as Keywords in Google's Advertising Programs.

3.  Surveys, tests, studies or reports relating to the design of the results pages which appear in response to a search request, including without limitation, the design and display of Sponsored Links.

4.  Surveys, tests, studies or reports relating to user interface, consumer eye tracking or the way in which users understand Google's results pages.

5.  Google's decision to use the term "Sponsored Link" as the designation for the advertisements displayed on Google's results pages and any consideration, test, survey or report regarding the use of that term or a different term.

6.  Google's efforts to educate its customers as to how to optimize their use of Google's Advertising Programs.

7.  Google's Smart Ad Selection System ("Smart ASS"), including but not limited to, the creation/development, implementation, improvements, updates, upgrades, modifications, operation, internal and third party communications, and the persons involved or responsible for the creation/development, administration, modification and implementation of Smart ASS.

8.  Google's AdWords auction, including but not limited to, the creation/development, implementation, improvements, updates, upgrades, modifications, operation, internal and third party communications, and the persons involved or responsible for the creation/development, administration, modification and implementation of the auction.

9.  The revenues and profits generated for Google from Google's Advertising Programs from 2002 to the present, including but not limited to the revenue generated as a result of the sale, use or including of trademarks as Keywords generally, and specifically the sale, use or inclusion of the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as Keywords.

10.  Analyses, budgeting, pricing, forecast, annual reports, and financial reports concerning the financial impact of allowing or not allowing the use of trademarks, including but not limited to the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as Keywords in Google's Advertising Programs from 2002 to the present.

11.  Royalties paid by Google to any third party for use of a trademark, including but not limited to royalties paid by Google to any third party for use of a trademark in connection with Google's Advertising Programs from 2002 to the present.

12.  The identity of any third party that has purchased, advertised or included the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as Keywords from Google in Google's Advertising Programs from 2002 to the present.

13.  The landing pages to which users have gone immediately upon clicking on Sponsored Links displayed as a result of entry of one of the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as a search term into the Google search engine.

14.  The number of searches performed using the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as a search term in the Google search engine, including the records kept by Google of the number of searches performed by users using the Rosetta Stone Marks as a search term or portion thereof.

15.  Google's review and knowledge of advertisements and Web sites that are associated with advertisers who purchase one or more of the Rosetta Stone Marks as Keywords.

16.  The factual basis upon which Google asserts that using one of the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks as a search term in the Google Search engine does not result in consumer confusion or deception by the resulting display of Sponsored Links.

17.  Communications between Google and any owner or purported owner of any trademark complaining, objecting to, or criticizing Google's sale, marketing, promotion, offering, designation, use, or inclusion of such party's trademarks as a Keyword or other designated search term in Google's Advertising Programs or in the text of Sponsored Links, including but not limited to cease and desist letters.

18.  The conversion rates of click throughs to sales by users who have clicked on any advertisement displayed by Google's Advertising Programs upon entry of a search in the Google search engine, including without limitation when one of the Rosetta Stone Marks or Terms Similar to the Rosetta Stone Marks are used as a search term in the Google search engine.

19.  The records kept by Google of the entrance and exit Web pages from the Google Web site, including but not limited to records of the exit pages associated with users who have clicked on AdWords advertisements served when the user conducts a search using one of the Rosetta Stone Marks as a search term or portion thereof; and records of the number of users who have exited the Google Web site to Web pages affiliated with the domain google.com.

20.  Google's policing and enforcement efforts to protect its own trademarks.

21.  Google's investments in language learning tools.

## CERTIFICATE OF SERVICE

I hereby certify that this document is being served on February 5, 2010, by electronic mail to:

Jonathan D. Frieden
ODIN, FELDMAN & PETTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
jonathan.frieden@ofplaw.com

Margret M. Caruso
QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
margretcaruso@quinnemanuel.com

*Counsel for Defendant, Google Inc.*

Dated: February 5, 2010

Respectfully submitted,

/s/_____
Warren T. Allen II (Va. Bar No. 72691)
Attorney for Rosetta Stone Ltd.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone: (202) 371-7126
Facsimile: (202) 661-9121
Warren.Allen@skadden.com

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

TEL: (202) 371-7000

FAX: (202) 393-5760

www.skadden.com

DIRECT DIAL
202-371-7872
DIRECT FAX
202-661-8327
EMAIL ADDRESS
JEN.SPAZIANO@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 4, 2010

**VIA ELECTRONIC MAIL**

Margret M. Caruso, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065

Re: *Rosetta Stone Ltd. v. Google Inc.*
Case No.: 1:09-cv-00736-GBL-TCB

Dear Margret:

Further to our discussions on Tuesday and today, below is a list of Google employees that Rosetta Stone presently intends to depose along with proposed dates for the depositions:

| | |
|---|---|
| David Baker | 02/22/2010 |
| Christina Aguiar | 02/23/2010 |
| Daniel Dulitz | 02/24/2010 |
| Baris Gultekin | 02/25/2010 |
| Jonathan Alferness | 02/26/2010 |
| | |
| Terri Chen | 03/01/2010 |
| Alana Karen | 03/02/2010 |
| Bill Lloyd | 03/03/2010 |
| Cory Louie | 03/04/2010 |
| Mickey Ryder | 03/05/2010 |
| | |
| Edward Chiang | 03/08/2010 |
| Heather Wilburn | 03/09/2010 |
| Rose Hagan | 03/10/2010 |

        Richard Holden      03/11/2010
        John Ploumitsakos  03/12/2010

Please let us know whether any of these individuals are no longer Google employees and, if so, whether Rosetta Stone will need to subpoena them. Please also provide last known addresses for any employees that need to be subpoenaed. As discussed, Rosetta Stone will provide the same information for any Rosetta Stone employees that you identify. In addition, Rosetta Stone will not require that current Rosetta Stone employees be subpoenaed and it will attempt to secure the attendance of former employees at deposition without the need for subpoenas.

      In addition to the Google employees identified above, Rosetta Stone intends to take a 30(b)(6) deposition of Google to begin on February 16, 2010. Rosetta Stone also intends to depose the following Google officers and proposes the following dates for these depositions:

        Eric Schmidt      02/17/2010
        Sergey Brin       02/18/2010
        Larry Page        02/19/2010

We intend to serve notices of these depositions tomorrow, but recognize that the dates may need to be shifted due to each deponent's availability.

      Finally, Rosetta Stone intends to depose Google's designated experts as follows:

        Edward A.Blair     02/22/2010
        Ronald R. Butters  02/24/2010
        Michael Wagner   02/26/2010

Rosetta Stone reserves the right to identify additional deponents.

      We anticipate that the depositions of current Google officers and employees will take place at Skadden's Palo Alto office and understand that the parties have agreed that Google's expert witnesses will be deposed in Washington, D.C. Please let us know as soon as possible whether the dates proposed above are not convenient and, if so, please propose alternate dates in the same time frame.

      Sincerely,

*Jen Spaziano*

Jennifer L. Spaziano

# EXHIBIT C

TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
202-371-7872
DIRECT FAX
202-661-8327
EMAIL ADDRESS
JEN.SPAZIANO@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 10, 2010

**VIA ELECTRONIC MAIL**

Margret M. Caruso, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065

Dear Margret:

      Further to our conversation of yesterday evening, this letter serves to confirm that Rosetta Stone intends to take the depositions of Eric Schmidt, Sergey Brin and Larry Page. As I stated during our call, the trademark policies underlying this case were the subject of considerable discussion within Google and resulted in a public disclosure regarding their risks. These individuals therefore are likely to have relevant information regarding the factors considered by Google in adopting the policies and the risks associated therewith, which would be relevant to both liability and damages.

      You suggested during our call that you are likely to move for a protective order with respect to these depositions. We hope that you will reconsider this position given the patent relevance of these individuals to the present matter. If you persist in filing such a motion, it should be scheduled so that it can be heard in time for the depositions to proceed within the discovery period. Toward that end, Rosetta Stone is willing to adjourn the depositions that were noticed to occur next week if Google is willing to agree to dates for such depositions during the weeks of March 1 or March 8.

      Sincerely,

      /s/

      Jennifer L. Spaziano

**EXHIBIT D**

PA ADVISORS, LLC,      §
    §
    **Plaintiff,**     §
    §
v.     §      **CIVIL ACTION NO. 2:07-CV-562 DF**
    §
**GOOGLE, INC., et al.,**     §
    §
    **Defendants.**     §
    §
    §
    §

# O R D E R

Before the Court is Google Inc.'s ("Defendant's") Motion to Quash and for Protective Order to Preclude Deposition of its Co-Founder and President. Dkt. No. 250. Also before the Court are Plaintiff's response and Defendant's reply. Dkt. Nos. 256 and 261. Having considered the briefing and all relevant papers and pleadings, the Court finds that Defendant's motion should be **GRANTED AS MODIFIED**.

## I. BACKGROUND

Plaintiff filed suit on November 2, 2007, alleging infringement of United States Patent No. 6,199,067, entitled "System and Method for Generating Personalized User Profiles and for Utilizing the Generated User Profiles to Perform Adaptive Internet Searches," which lists Mr. Ilya Geller as inventor. This case is on the Court's March 2010 trial docket, and a claim construction hearing has been set for September 17, 2009. *See* Agreed Docket Control Order, Dkt. No. 186.

## II. THE PARTIES' POSITIONS

Defendant requests a protective order barring the deposition of its President and Co-Founder, Sergey Brin. Dkt. No. 250 at 1. Mr. Brin declares that he has no unique information about this case, and Defendant argues that discovery can be obtained by less disruptive means. *Id.*; Brin Decl., Dkt. No. 250-2 at ¶ 4. Defendant submits that "Plaintiff has taken the deposition of the senior Google engineer who is most directly responsible for Google's search algorithms and search quality," and "Google has offered dates for the depositions of other Google engineers." Dkt. No. 250 at 1. Defendant also submits that Plaintiff has not yet inspected Defendant's source code, even though Defendant has made source code available. *Id.* at 12. Defendant argues that although the inventor of the patent-in-suit, Ilya Geller, "sent a cold solicitation to 'sergeybrin@google.com' in 2001, seeking to market [Mr. Geller's] software company to Google," "there is no record of any follow up," and "[Mr.] Brin has no personal knowledge or memory about the solicitation." *Id.* at 2; *see id.* at 12; *see also* 8/27/2001 e-mail from Geller to sergeybrin@google.com, *id.* at Ex. 17. Defendant also submits that Plaintiff has unclean hands because "Plaintiff has actively prevented Google from taking the deposition of [Mr.] Geller and has suppressed critical evidence about this witness and his location." *Id.* at 2, 4-6, and 14-15; *see also* id. at Exs. 5, 7-12, 16, 21, 22, 25, 26 (correspondence between counsel regarding unavailability of Mr. Geller). Defendant also submits "blog" entries in which Mr. Geller purportedly commented on this litigation as recently as June 20, 2009. Dkt. No. 250, Exs. 27 and 28.

Plaintiff responds that a deposition of Mr. Brin is appropriate because he was "the one person to whom the e-mail [from Mr. Geller] was sent." Dkt. No. 256 at 2; *see also* Dkt. No.

256 at 7-8. Plaintiff also argues that Google failed to timely produce that e-mail. *Id.* at 2-3.

Plaintiff also submits that it interviewed Mr. Geller on video "[i]n January 2008, in an attempt to

preserve information related to this litigation," and "[a] copy of this video was thought to have

been produced in December of 2008 in response to Google's initial discovery in this litigation."

*Id.* at 3. Plaintiff also submits that it actually produced the Geller video in February 2009, after

Plaintiff discovered that the Geller video had, in fact, not been produced in December 2008 due

to an "inadvertent oversight." *Id.* at 4. Plaintiff further submits that "[t]he parties have agreed to

depose Mr. Geller on August 19, 2009." *Id.* at 5. Finally, Plaintiff argues that "[t]here is no

adequate substitute for the deposition of Mr. Brin" and that the "self-serving affidavit of Mr.

Brin" is insufficient. *Id.* at 6.

Defendant replies that Mr. Geller admitted in deposition that "[Mr.] Brin never replied to

the e[-]mail or otherwise responded to the inventor," that the Geller e-mail was part of a mass

solicitation to thousands of prospective investors, that Mr. Geller had no recollection of meeting

Mr. Brin at a particular trade show in 1999, and that Mr. Geller had no recollection of ever

speaking to Mr. Brin in person. Dkt. No. 261 at 1-3 (citing 8/19/2009 Geller dep., Dkt. No. 261

at Ex. A). Defendant emphasizes that Mr. Brin has submitted in his declaration that has "no

memory" of Mr. Geller's e-mail and "no personal knowledge" about Mr. Geller or the company

referenced in his e-mail. *Id.* at 1-2.

### III. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party may obtain
discovery of any nonprivileged matter "relevant to any party's claim or defense."
The definition of relevant information in Rule 26(b)(1) is broad, and relevant
information need not be admissible at the trial [i]f the discovery appears to be
reasonably calculated to lead to the discovery of admissible evidence. The phrase

3

> "relevant to any party's claim or defense" is also defined expansively in Local
> Rule CV-26(d).

*Gauthier v. Union Pac. R.R.*, No. 1:07-cv-12, 2008 WL 2467016, at *3 (E.D. Tex. June 18,

2008) (citation omitted). "As the party seeking discovery, the Plaintiff[] must establish the

threshold burden of relevancy under the Rules. Once the Plaintiff[] establish[es] that the

discovery requests are within the scope of permissible discovery, the burden shifts to the

Defendant to show why discovery should not be permitted." *Id.* Under the Federal Rules of

Civil Procedure ("Rules"), the party requesting a protective order has the burden of showing

good cause. Fed. R. Civ. P. 26(c).

Courts in the Fifth Circuit and others have required litigants to depose lower-level

persons or utilize other forms of discovery before noticing deposition of a high-ranking executive

of a large corporation. *Gauthier*, 2008 WL 2467016, at *4 and n.2; *see also Salter v. Upjohn

Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Reif v. CNA*, 248 F.R.D. 448, 453-54 (E.D. Pa. 2008);

*Kimberly-Clark Corp. v. Continental Cas. Co.*, No. 3:05-CV-475, 2006 WL 3436064, at *3

(N.D. Tex. Nov. 29, 2006); *Baine v. General Motors*, 141 F.R.D. 332, 335-36 (M.D. Ala. 1991);

*Mulvey v Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985). Thus, courts can properly exercise

their discretion under Rule 26 by issuing orders protecting high-ranking executives. *See, e.g.,*

*Thomas v. IBM Corp.*, 48 F.3d 478, 483-84 (10th Cir. 1995); *Lewelling v. Farmers Ins. of

Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter*, 593 F.2d at 651. A court can require

the party seeking the deposition to show that the high-ranking executive has relevant knowledge

that cannot reasonably be obtained through less invasive sources, such as interrogatories,

depositions of lower-ranking employees, or Rule 30(b)(6) corporate depositions. *See, e.g.,*

*Salter*, 593 F.2d at 651; *Thomas*, 48 F.3d at 483; *Reif*, 248 F.R.D. at 454; *Baine*, 141 F.R.D. at 335.

Plaintiff has shown that Mr. Geller sent an e-mail to Mr. Brin in an attempt to market the subject matter of the patent-in-suit. Dkt. No. 250 at Ex. 17. Plaintiff has suggested that "Mr. Brin is the only individual that can testify as to what actions he took following his receipt of Mr. Geller's e[-]mail." 8/22/2009 letter from Rafilson to Cannon, Dkt. No. 261 at Ex. D. Mr. Brin, however, has declared that he has "no knowledge about [Mr.] Geller" or "of ever meeting with Ilya Geller." Dkt. No. 250-2 at ¶ 4. Plaintiff has not sufficiently raised questions regarding the veracity of Mr. Brin's sworn declaration, especially given that Mr. Geller's own deposition testimony reflects that even Mr. Geller has no recollection of any contact with Mr. Brin other than Mr. Geller's unsolicited e-mail. *See* Dkt. No. 261, Ex. A at 92:9-93:12, 95:8-14, and 96:9-97:2. Mr. Geller also testified that he "tried to call Sergey Brin" but that Mr. Brin never returned the call. *Id.* at 95:8-23. As to burden, Defendant has shown that Mr. Brin is President of Technology for Defendant Google, Inc., which has over 20,000 employees worldwide, and the Court therefore finds that a deposition of Mr. Brin would likely cause significant disruption to Defendant's operations. Dkt. No. 250-2 at ¶¶ 2-3.

In sum, Plaintiff has failed to show, at this time, that a deposition of Mr. Brin would yield any relevant information (let alone any relevant knowledge that cannot reasonably be obtained through less invasive sources, such as interrogatories, depositions of lower-ranking employees, or Rule 30(b)(6) corporate depositions) that would justify a significant disruption to Defendant's operations. *See, e.g., Salter*, 593 F.2d at 651; *Thomas*, 48 F.3d at 483; *Reif*, 248 F.R.D. at 454; *Baine*, 141 F.R.D. at 335. Defendant's motion to quash should therefore be granted with the

5

qualification that Plaintiff shall be permitted to depose a 30(b)(6) representative of Defendant regarding Mr. Geller's 2001 e-mail and regarding what procedures, if any, Defendant had at the relevant time for handling e-mails of this sort. After that discovery is completed, Plaintiff can, if appropriate, re-notice a deposition of Mr. Brin, and any irreconcilable dispute regarding the appropriateness of such a deposition can be submitted to the Court at that time.

The Court finds that Plaintiff's opposition to this motion was sufficiently justifiable to prevent an award of expenses pursuant to Rule 26(c)(3) and Rule 37(a)(5). The Court therefore makes no award of expenses.

## IV. CONCLUSION

For at least the foregoing reasons, Google Inc.'s Motion to Quash and for Protective Order to Preclude Deposition of its Co-Founder and President (Dkt. No. 250) is hereby **GRANTED AS MODIFIED**.

The Court hereby **ORDERS** that Plaintiff shall be permitted to depose a 30(b)(6) representative of Defendant regarding Mr. Geller's 2001 e-mail and regarding what procedures, if any, Defendant had at the relevant time for handling e-mails of this sort. After that discovery is completed, Plaintiff can, if appropriate, re-notice a deposition of Mr. Brin, and any irreconcilable dispute regarding the appropriateness of such a deposition can be submitted to the Court at that time.

**IT IS SO ORDERED.**