# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| ROSETTA STONE LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Case No. 1:09-cv-00736 (GBL/TCB)** |
| ) | |
| GOOGLE INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ROSETTA STONE LTD.'S OPPOSITION TO
## GOOGLE INC.'S MOTION FOR PROTECTIVE ORDER

# FILED IN PART UNDER SEAL

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................2

ARGUMENT................................................................................................................4

I.     Google's Senior Executives Have Personal Knowledge Relevant to Rosetta Stone's Claims...........................................................................................................5

II.    Rosetta Stone Is Entitled To Depose the Senior Executives Because of Their Personal Knowledge of the Trademark Policy Changes, Notwithstanding Their High-Level Status....................................................................................................10

CONCLUSION.............................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Castle v. Jallah*, 142 F.R.D. 618 (E.D. Va. 1992) ........................................................................4

*Deluca v. Bank of Tokyo-Mitsubishi UFJ*, No. 05 Civ. 639 (GEL)(KNF),
    2007 WL 2589534 (S.D.N.Y. Aug. 30, 2007) ....................................................................11

*Gauthier v. Union Pacific Railroad Co.*, No. 1:07-CV-12 (TH/KFG),
    2008 WL 2467016 (E.D. Tex. June 18, 2008) ....................................................................11

*Lewelling v. Farmers Insurance Exchange of Columbus*, 879 F.2d 212 (6th Cir. 1989) .............12

*Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118 (D. Md. 2009)...............................................12

*Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) ......................................................11, 12

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) ....................................................................12

*Sharma v. Lockheed Engineering & Management Services Co.*,
    Nos. 87-3134(L), 88-3055, 1988 WL 118154 (4th Cir. Nov. 7, 1998)...........................10

*Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431 (M.D.N.C. 2001)...........4

*Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3-09-CV-0419-D,
    2010 WL 2351023 (N.D. Tex. Jan. 19, 2010)..................................................................11

*Thomas v. International Business Machines*, 48 F.3d 478 (10th Cir. 1995)...........................11, 12

**Rules**

Fed. R. Civ. P. 26 ..........................................................................................................................4

On July 10, 2009, Rosetta Stone Ltd. ("Rosetta Stone") filed the instant action against Google Inc. ("Google") to stop Google's unauthorized use and sale of Rosetta Stone's trademarks as keywords that trigger third-party, paid advertisements on Google search-results webpages. Through its AdWords program, Google sold – and continues to sell – Rosetta Stone's marks to, among others, Rosetta Stone's competitors and companies illegally selling pirated and counterfeit Rosetta Stone products. In so doing, Google not only has unjustly reaped millions of dollars in advertising profits from Rosetta Stone's famous marks, but also has caused Rosetta Stone significant financial harm by diverting Rosetta Stone's customers to competitors and pirates.

To explore the undeniably germane and discoverable issues relating to Google's policy of using the trademarks of other companies without authorization to generate billions of dollars in advertising revenue, Rosetta Stone served deposition notices on Google's founders and co-presidents, Sergey Brin and Larry Page, as well as Google's chief executive officer, Eric Schmidt. Google moved for a protective order precluding these depositions on the grounds that the three lack "unique personal knowledge relevant to this case and Rosetta Stone can pursue any relevant discovery through less burdensome means." (Google Mem. in Supp. of Mot. for Protective Order ("Google Mem.") at 3.) For the reasons set forth below, the depositions of Messrs. Brin, Page, and Schmidt are relevant and necessary to Rosetta Stone's action, are neither burdensome nor harassing, and therefore should be allowed to proceed.[1]

---

[1] Notably, at the same time Google asks this Court for a protective order with respect to its senior executives, it has advised Rosetta Stone of its intent to depose Rosetta Stone's Chief Executive Officer (Tom Adams), its Chief Operating Officer (Eric Eichmann) and its General Counsel (Michael Wu) – none of whom was identified in the parties' initial disclosures. (*See* Ex. A.) Rosetta Stone has not opposed these depositions and instead has confirmed dates on which these depositions can proceed.

## BACKGROUND

Through its AdWords program, Google allows companies to purchase advertising on Google's search-results pages that is triggered when web users enter certain keywords into Google's search engine. Companies bid money to purchase the keywords that trigger the ads, which Google refers to as "Sponsored Links," and the bidders most attractive to Google receive the most desirable and visible advertising positions along the top and right-hand side of the search-results page. The advertisers then pay Google each time a web user clicks on or accesses the advertiser's Sponsored Link.

The AdWords program is the principal force behind Google's extraordinary financial results. According to internal Google projections in 2008, revenue from search advertisements was expected to account for ▮▮▮▮ of Google's gross revenue. (*See* Ex. B, GOOG-RS-0079233 (ATTORNEY'S EYES ONLY).) Google's most recent Annual Report discloses that Google earned $23.65 billion in gross revenue in 2009. (*See* Ex. C, Google's Form 10-K (Fiscal Year Ended December 31, 2009) at 62.)

Prior to 2004, Google did not allow companies to use the trademarks of others as keyword triggers. Google changed its policy in 2004 and started selling trademarks of others in the United States and Canada. Recognizing the significant risks associated with the unauthorized use of other companies' trademarks, Google publicly disclosed its policy change and advised the investing public of the risks associated with its revised policy. Google's Registration Statement, filed with the U.S. Securities and Exchange Commission on April 29, 2004, stated:

> Under our new [trademark] policy [in the United States and Canada], we no longer disable ads due to selection by our advertisers of trademarks as keyword triggers for ads. As a result of this change in policy, we may be subject to more trademark infringement lawsuits. Defending these lawsuits could take time and resources. Adverse results in these lawsuits may result in, or even compel, a

2

change in this practice which could result in a loss of revenue for us, which could harm our business.

(Ex. D, Google's Form S-1 Registration Statement, April 29, 2004, at 10.)

In 2009, Google again amended its policy on the use of trademarks in AdWords advertisements in the United States. Effective June 15, 2009, Google began allowing advertisers to use other companies' trademarks in the text of their advertisements – even without the authorization of the trademark owner. This policy change generated considerable attention in the media and on blogs because of its potential impact on advertisers and Google's profits. (*See, e.g.,* Steven Musil, *Google revises AdWords trademark policy*, CNET News, May 14, 2009, at http://news.cnet.com/8301-1023_3-10241612-93.html; Nathan Eddy, *Google Updates AdWords Trademark Policy*, eWeek, May 15, 2009, at http://www.eweek.com/c/a/Midmarket/Google-Updates-AdWords-Trademark-Policy-854974/; Brian Kraemer, *Google Changes Trademark Policy On Ad Words*, ChannelWeb, May 15, 2009, http://www.crn.com/software/217500291;jsessionid=40WY2SIVDSNWBQE1GHPSKH4ATM Y32JVN.)



These changes in 2004 and 2009 are central to Rosetta Stone's infringement claims against Google. If not for these revised trademark policies, Google and Rosetta Stone's competitors would not have made infringing use of Rosetta Stone's marks through the AdWords program, Rosetta Stone would not have been forced to bid against others for use of its own marks as keyword triggers, and hundreds of thousands of customers seeking Rosetta Stone products would not have been diverted to Rosetta Stone's competitors and to counterfeiters of

Rosetta Stone's goods. As permitted under the Federal Rules of Civil Procedure, Rosetta Stone has served document requests, propounded interrogatories, and served deposition notices on Google and its employees to obtain discoverable information relating to Google's AdWords program and its trademark policy changes in 2004 and 2009. Rosetta Stone's deposition notices served on Messrs. Brin, Page, and Schmidt are part of the effort to pursue discovery of this relevant information.

## ARGUMENT

Federal Rules of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter . . . that is relevant to the claim or defense of any party." Under the rule, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Once a party has established the relevance of its discovery request, the party resisting discovery has the burden of showing that "good cause" exists for the court to prevent the discovery. *See Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992). To that end, Rule 26(c) allows courts to issue protective orders to shield deponents from "annoyance, embarrassment, oppression, or undue burden or expense." Nevertheless, courts generally disfavor protective orders that completely prohibit depositions. *See Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) ("By requesting the Court to prohibit plaintiff from deposing a witness, defendant Darkprint assumes a heavy burden because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances.").

## I. Google's Senior Executives Have Personal Knowledge Relevant to Rosetta Stone's Claims.

Google argues that its senior executives should be excused from being deposed because they possess "no *unique* personal knowledge relevant to this case" and because Rosetta Stone should attempt to obtain the information from lower-ranking employees. (Google Mem. at 3 (emphasis added).) Google asserts that "it is implausible that the company's top executives would have more information about any decision than those advising them." (*Id.*) Google then rebukes Rosetta Stone for not understanding "the way large companies work." (*Id.*)

This characterization of Google's senior executives and their involvement in significant issues facing the company is at odds with the impression that Google has tried to leave with its investors. Google's own public filings suggest that Messrs. Brin, Page, and Schmidt are intimately involved in key decisions affecting the company. In fact, in an apparent attempt to allay investor concerns that Google's IPO might result in the two co-founders assuming less active roles in running the company, Messrs. Page and Brin assured investors in their "Letter from the Founders" that they would "run the company collaboratively with Eric, our CEO, as a team of three." (Ex D, at vi.) The Registration Statement also acknowledged the crucial roles of all three executives, stating that Google's "CEO Eric Schmidt and [its] founders Larry Page and Sergey Brin are critical to the overall management of Google as well as the development of our technology, our culture and our strategic direction." (*Id.* at 13.) The Registration Statement further explained:

> Eric, our CEO, and Larry and Sergey, our founders and presidents, currently provide leadership to the company as a team. Our bylaws provide that our CEO and our presidents will together have general supervision, direction and control of the company, subject to the control of our board of directors. *As a result, Eric, Larry and Sergey tend to operate the company collectively and to consult extensively with each other before significant decisions are made.*"

(*Id.* at 14 (emphasis added).)

Given the significance of the trademark policy changes to the AdWords program and Google's overall financial results, it cannot be reasonably argued that Google's hands-on senior executives had little or no involvement in these strategic decisions or that they possess limited relevant information relating to Rosetta Stone's claims. As noted above, Google warned its investors that the 2004 policy change was fraught with risk and could ultimately "harm our business," and . These policy changes were of immense consequence to Google's financial performance, its litigation exposure, and its relationships with advertisers and trademark holders such as Rosetta Stone. Any averment that Messrs. Brin, Page, and Schmidt lack relevant, discoverable information relating to these policy changes is – to paraphrase Google's motion – implausible on its face.

Indeed, the limited documents produced by Google to date contradict Google's contention.



Furthermore, Google conceded in prior trademark infringement litigation that Mr. Page was involved in the 2004 policy change. In *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 03-cv-05340-JF (N.D. Cal.), which also related to the unauthorized use of trademarks in the AdWords program, American Blind served deposition notices on Messrs. Page and Brin after discovery had closed. When Google refused to make the executives available because the discovery deadline had passed, American Blind moved to compel their depositions. In opposition to plaintiff's motion to compel, Google argued that emails produced by Google nine months earlier showed "that Mr. Page was copied on emails, along with dozens of other people at Google, regarding the change to Google's trademark policy." (*See* Ex. I, at 9.) Google then argued that American Blind's delay in noticing the deposition of Mr. Page should not be excused because it "knew about (or should have known about) Mr. Page's limited involvement in the trademark policy change before the close of discovery." (*Id.*)[2]

---

[2] American Blind identified several documents purportedly showing that Mr. Page was involved in discussions regarding the 2004 trademark policy change. (*See* Exs. J & K.) In addition, the court's order granting American Blind's motion to compel noted that Google's 30(b)(6) witness testified that she thought the 2004 trademark policy change was the result of

*(cont'd)*

The court ruled in American Blind's favor and allowed a deposition of Mr. Page to proceed for the purpose of exploring his knowledge of, and involvement in, the 2004 trademark policy change. American Blind conducted the deposition on January 10, 2007.



_(cont'd from previous page)_
concerns expressed by Mr. Page. (_See_ Ex. L.) The documents and deposition testimony, however, are redacted from the publicly available versions of American Blind's motion and reply brief.



Google maintains that the adoption of the trademark policy changes in 2004 and 2009 is "publicly available and undisputed" and that "[g]iven the public disclosures regarding the changes in Google's trademark policies and Rosetta Stone's ability to inquire further on such issues through Google's 30(b)(6) and individual witnesses, there is no basis for also questioning Google's top three executives on the topic." (Mem. at 6-7.)



If, as Rosetta Stone contends, Google approved these policies knowing the use of others' trademark terms was likely to cause customer confusion, Rosetta Stone will be able to establish willfulness, prove liability, and secure treble damages. Depositions of lower-level employees who may have been involved in discussions regarding the trademark policy changes, but who did not themselves make the final decision, are

no substitute for deposing the top three decision-makers at the company who ultimately approved implementation of the new policies.

At bottom, Google unfairly characterizes the proposed depositions of Messrs. Brin, Page, and Schmidt as "Rosetta Stone's efforts to harass and annoy Google," but the facts demonstrate that these executives have information relevant to Rosetta Stone's case. Thus, under Rule 26, Rosetta Stone is entitled to seek discovery from these executives.

## II.	Rosetta Stone Is Entitled To Depose the Senior Executives Because of Their Personal Knowledge of the Trademark Policy Changes, Notwithstanding Their High-Level Status.

Google argues that its motion for protective order should be granted because courts routinely prevent depositions of high-level or "apex" executives such as Messrs. Brin, Page, and Schmidt unless "(1) the executive to be deposed has unique personal knowledge that is relevant to the case; and (2) the party seeking the deposition first tried unsuccessfully to obtain the information sought from the executive deposition by other, less burdensome means." (Mem. at 4.) However, the only opinion that Google cites from the Fourth Circuit or any of its district courts in support of its argument in favor of following the so-called "apex" deposition rule is a 21-year-old unpublished decision of the Fourth Circuit that is readily distinguishable from the case at bar.

In *Sharma v. Lockheed Engineering & Management Services Co.*, the plaintiff sued his former employer for employment discrimination. Nos. 87-3134(L), 88-3055, 1988 WL 118154, at *1 (4th Cir. Nov. 7, 1998). The plaintiff sought to depose Lockheed's CEO, but the district court granted Lockheed's motion for protective order finding that plaintiff failed to demonstrate that the CEO had *any* personal knowledge relevant to his claims and that the deposition was burdensome and unwarranted. *Id.* at *2. The Fourth Circuit affirmed the district court's ruling, relying heavily on the CEO's affidavit that he had never met the plaintiff, had no

personal knowledge about the plaintiff's employment, and knew nothing regarding the allegations in the plaintiff's complaint. *Id.* The court reasoned that "[w]hile such a statement by itself will not always be sufficient to justify a protective order, it does establish that, in this case, [the CEO's] deposition would not have adduced evidence to establish discriminatory intent." *Id.* at *3. The Fourth Circuit was careful to dispel any notion that high-level executives should be immune from depositions simply because of their positions. The court stated: "We do not hold that the deposition of a corporate president is inherently burdensome, even where lack of knowledge is claimed, if relevant information is likely to be obtained and is not readily available elsewhere." *Id.* at *3.

Here, Google has not submitted any affidavits from the three senior executives stating that they know nothing about the allegations set forth in Rosetta Stone's complaint. To the contrary, as discussed above, documents produced by Google in this case, statements made by Google in a similar case, and ███████████████████████████ show that the executives do, in fact, have personal knowledge relevant to Rosetta Stone's case.[3] Moreover, although Google repeatedly asserts that the depositions of the three executives should

---

[3]  Google cites several other opinions from jurisdictions outside the Fourth Circuit that likewise can be distinguished on the grounds that the high-ranking executive submitted an affidavit or declaration stating that he had no personal knowledge of the relevant facts of the case. *See Thomas v. International Business Machines*, 48 F.3d 478, 483 (10th Cir. 1995); *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3-09-CV-0419-D, 2010 WL 235023, at *1 (N.D. Tex. Jan. 19, 2010); *Gauthier v. Union Pacific Railroad Co.*, No. 1:07-CV-12 (TH/KFG), 2008 WL 2467016, at *1 (E.D. Tex. June 18, 2008); *Deluca v. Bank of Tokyo-Mitsubishi UFJ*, No. 05 Civ. 639 (GEL) (KNF), 2007 WL 2589534, at *3 (S.D.N.Y. Aug. 30, 2007); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985). Indeed, even in one of the cases that Google contends is "particularly instructive," the court granted a protective order to Google after Mr. Brin submitted a sworn declaration stating that he had no knowledge of the plaintiff or of ever meeting him. *PA Advisors, LLC v. Google, Inc.*, Civil Action No. 2:07-cv-480-DF (E.D. Tex. Aug. 28, 2009). As already noted, Google has not attempted to – and cannot – make any such showing here.

be precluded unless they have "unique personal knowledge," nothing in this unpublished Fourth Circuit decision requires that a deponent's personal knowledge of relevant information be solely or uniquely in his or her own possession. Even so, as explained above, ███████████████

███████████████████████████████████████████████████████████████████████████████

A more recent published opinion from a sister district court within the Fourth Circuit provides more useful and pertinent guidance than the unpublished *Sharma* decision. In *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124-25 (D. Md. 2009), plaintiffs sought to depose P. Wesley Foster, the Chairman and CEO of Long & Foster Real Estate Inc. ("L&F"). Thereafter, L&F moved for a protective order on the grounds that litigants should be precluded form deposing high-ranking executives under the "apex" deposition rule. *Id.*

At the outset of its analysis, the court made clear that "[t]he Fourth Circuit has never discussed, much less adopted, an apex deposition rule." *Id.* at 125. The court then proceeded to distinguish four of the cases cited in Google's motion. Specifically, the court explained that *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979), *Thomas v. International Business Machines*, 48 F.3d 478 (10th Cir. 1995), *Lewelling v. Farmers Insurance Exchange of Columbus*, 879 F.2d 212 (6th Cir. 1989), and *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985), "establish that the apex deposition rule is bottomed on the apex executive lacking *any* knowledge of the relevant facts." *Id.* at 125-26 (emphasis in original).

In ordering Foster's deposition to proceed, the court pointed out that in addition to Foster's "hands on" involvement in the issues relevant to the litigation, he had "an enormous economic interest" in the business arrangement between co-defendants L&F and Wells Fargo

that plaintiffs alleged was a sham and a conduit through which L&F received kickbacks from

Wells Fargo for the referral of mortgages. The court reasoned:

> Thus, unlike the executives in the cases cited by L&F, Mr. Foster is not an executive whose only connection with the matter is the fact that he is *the* CEO of the defendant, the top official, where the buck stops on all corporate matters regardless of level of factual involvement or knowledge. Rather, he is alleged to be a highly involved, and highly interested party and the public record appears to substantiate that view. The Court rejects Mr. Foster's argument that this position in the defendant corporation constitutes good cause for preclusion of his deposition under Fed. R. Civ. P. 26(c)(1).

*Id.* at 127.

Like Google in the case at bar, L&F also argued that the deposition of Foster

should not take place until after plaintiffs had conducted a 30(b)(6) deposition or depositions of

lower-ranking employees. The court rejected the argument.

> Such staging may be appropriate in a situation where there is no unique or personal knowledge. *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (opining that a "wait and see" approach requiring the deposition of lower-ranking executives before an apex executive, who lacked unique or personal knowledge, was appropriate). But again, that is not the case here. The "wait and see" approach is meant to protect high-level executives who lack unique knowledge. *Id.* Mr. Foster is no such executive. While he may lack personal knowledge of the transactions of the named plaintiffs, that is hardly determinative in a putative class action, such as this, challenging the business practices which are alleged to have occurred during his tenure as Chair and CEO. Moreover, while the Court has the authority to grant such a request, it is disinclined to interfere with litigation strategy of counsel unless it is shown to cause undue burden. No showing has been made.

*Id.*

The court's decision in *Minter* is squarely on point with the facts of this case.

Like L&F, Google maintains that its executives lack unique personal knowledge relevant to the

case, but the factual record developed to date is at odds with Google's contention. █████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████ Further, in light of their roles as the principal decision-makers at Google, they also possess unique information relating to the reasons for, and the factors considered in, making the decisions to adopt the trademark changes. Although subordinates can provide information concerning the analysis they conducted or the advice they provided, only the top decision-makers at the company can explain the factors they considered and the risks that they weighed in deciding to implement the changes. These matters are entirely relevant to the willfulness of the company's actions.

Like Foster, Google's senior executives "may lack personal knowledge of the transactions" involving Rosetta Stone, but according to the court in *Minter*, that is not determinative in a case where a plaintiff is "challenging the business practices which are alleged to have occurred during [their] tenure[s]" as Google's presidents and CEO. Rosetta Stone does not desire to depose the executives simply because they are *the* presidents and *"the* CEO of the defendant, the top official[s], where the buck stops on all corporate matters." Rather, Rosetta Stone wishes to depose them to explore their knowledge of Google's business practice of selling trademarked terms without authorization from the trademark owner.

And like Foster, the three Google executives have an "enormous economic interest" in the issues of consequence in the litigation. As of September 30, 2009, the three senior executives owned approximately 90% of Google's outstanding Class B common stock, which represented approximately 68% of the voting power of Google's outstanding capital stock. (*See* Ex. N, Google's Form 10-Q (Quarterly Period Ended September 30, 2009) at 50.) In recently announcing the adoption of a plan to enable Messrs. Brin and Page to sell approximately $5.5 billion in their holdings of Google stock over the next five years, Google re-confirmed the co-founders' involvement in, commitment to, and financial dependence on, the company:

14

"They are both as committed as ever to Google and are integrally involved in our day-to-day management and product strategy," Google said in an e-mailed statement. "The majority of their net worth remains with Google."

(Brian Womack, *Google's Founders File to Sell 5 Million Shares Each*, Bloomberg.com, Jan. 22, 2010, at http://www.bloomberg.com/apps/news?pid=20601087&sid=aeMnKlEQWfaA&pos=5.)

With ███████████ of Google's revenues attributable to search advertisements, the executives have an "enormous economic interest" in issues relating to the AdWords program.

In short, notwithstanding Google's assertions to the contrary, the factual record developed to date demonstrates that Google's executives possess personal knowledge as to the trademark policy changes in 2004 and 2009 and are uniquely qualified to provide Rosetta Stone discoverable information about the reasons for, and factors considered with respect to, these decisions. Because of their personal knowledge of this relevant information, denying Rosetta Stone an opportunity to depose these individuals is not warranted simply by virtue of their high-ranking positions and there is no reason to require Rosetta Stone to "wait and see" what it might learn from lower-level employees.[4]

---

[4] In any event, the "wait and see" approach proposed by Google is inappropriate and unworkable here given this Court's expedited discovery schedule and the lateness of Google's document production. In this regard, Google did not produce many of the core documents requested by Rosetta Stone until January 29, 2010 and Rosetta Stone was required to file a motion to compel to obtain other relevant documents. Rosetta Stone expects to receive Google's court-ordered production later this week. Depositions are expected to begin on February 22 and to continue daily until the March 12 discovery cutoff. Google counsel has advised that one of Google's 30(b)(6) witnesses will not be available until March 9 and it still has not proposed dates for the depositions of three additional 30(b)(6) witnesses. Thus, Google's 30(b)(6) deposition will not be completed until March 9 – at the earliest – leaving no time for Rosetta Stone to request additional depositions prior to the discovery cutoff. Notably, although Rosetta Stone was not willing to wait for the completion of the 30(b)(6) deposition to decide whether it would insist on deposing Messrs. Page, Brin and Schmidt, it did offer to depose one of the three executives before making a final decision about the need to depose the remaining two. Google rejected this proposal.

## CONCLUSION

For all the foregoing reasons, Google's motion for a protective order should be denied and Rosetta Stone should be permitted to depose Messrs. Brin, Page and Schmidt.

Respectfully submitted,

_February 17, 2010_          /s/_____
           Date                     Warren T. Allen II (Va. Bar No. 72691)
                                     Attorney for Rosetta Stone Ltd.
                                     Skadden, Arps, Slate, Meagher & Flom LLP
                                     1440 New York Avenue, N.W.
                                     Washington, D.C. 20005-2111
                                     Telephone: (202) 371-7126
                                     Facsimile: (202) 661-9121
                                     Warren.Allen@skadden.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing (NEF) to the following:

Jonathan D. Frieden
ODIN, FELDMAN & PETTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
jonathan.frieden@ofplaw.com

*Counsel for Defendant, Google Inc.*

True and correct copies of documents filed under seal will be sent via electronic mail to:

jonathan.frieden@ofplaw.com
margretcaruso@quinnemanuel.com

Respectfully submitted,

| February 17, 2010 | /s/ |
|---|---|
| Date | Warren T. Allen II (Va. Bar No. 72691) |

Attorney for Rosetta Stone Ltd.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone: (202) 371-7126
Facsimile: (202) 661-9121
Warren.Allen@skadden.com