IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ROSETTA STONE LTD.

    Plaintiff,

    v.

GOOGLE INC.

    Defendant.

CIVIL ACTION  NO. 1:09cv736
(GBL / TCB)

**DEFENDANT GOOGLE INC.'S MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF UNDISPUTED FACTS ..........................................................2

I.  ROSETTA STONE CANNOT PROVE DIRECT TRADEMARK LIABILITY ..............8

   A.  Use of Rosetta Stone's Marks To Refer to Rosetta Stone or Its Products Is Not Actionable. ........................................................................8

   B.  Keyword Bidding Does Not Infringe Rosetta Stone's Trademarks.....................12

      1.  Google is Not Directly Liable For Advertisers' Keyword Bidding...........12

      2.  Use of the Rosetta Stone Marks as Keywords is Functional ...................13

   C.  Use of Rosetta Stone's Trademarks in Ad Text Does Not Infringe. ...................15

      1.  Google Does Not Use the Rosetta Stone Marks in Ad Text.....................15

         i  There is no evidence of actual confusion.......................................16

         ii  Rosetta Stone customers are sophisticated. ..................................18

         iii  There is no evidence of malicious intent. .....................................19

      2.  Third Parties' Use of Rosetta Stone's Marks In Ads Is Not Infringing. ...............................................................................20

         i  References to actual Rosetta Stone products do not constitute actionable infringement.................................................20

         ii  Rosetta Stone Cannot Show Actionable Confusion Caused By Alleged Counterfeiters Advertising On Google.......................21

II.  ROSETTA STONE CANNOT PROVE SECONDARY LIABILITY.............................23

A.   Rosetta Stone Cannot Prevail On Its Contributory Infringement Claim. ..............23

B.   Rosetta Stone Has No Proof To Support Its Vicarious Infringement Claim. ........24

III.   ROSETTA STONE CANNOT PROVE DILUTION. .......................................................25

A.   "Rosetta Stone" Was Not A Famous Mark In 2004. ............................................26

B.   There is No Evidence of Likely Damage To The Rosetta Stone Marks. ...............27

IV.   ROSETTA STONE CANNOT SUCCEED ON ITS STATE LAW CLAIMS. ................27

V.   ROSETTA STONE'S REMEDIES AGAINST GOOGLE FOR DIRECT
INFRINGEMENT ARE LIMITED BY THE INNOCENT PUBLISHER RULE ............28

CONCLUSION ...................................................................................................................29

# TABLE OF AUTHORITIES

**Page**

### Cases

*Am. Rice, Inc. v. Producers Rice Mill, Inc.,*
     518 F.3d 321 (5th Cir. 2008) ...................................................................9

*Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,*
     962 F.2d 316 (4th Cir. 1992) ...................................................................5

*Anti-Monopoly, Inc. v. General Mills Fun Group,*
     611 F.2d 296 (9th Cir. 1979) ...................................................................5

*Barbeque Markx, Inc. v. 551 Ogden, Inc.,*
     235 F.3d 1041 (7th Cir. 2000) .................................................................7

*In re Bay Vista of Va., Inc.,*
     2009 WL 2900040 (E.D. Va. June 2, 2009) ...........................................19

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.,*
     550 F. Supp. 2d 657 (W.D. Tex. 2008)....................................................17

*Bihari v. Gross,*
     119 F. Supp. 2d 309 (S.D.N.Y. 2000)....................................................8, 9

*CareFirst of Maryland Inc. v. FirstCare, P.C.,*
     434 F.3d 263 (4th Cir. 2006) ...................................................................5

*Champion Spark Plug Co. v. Sanders,*
     331 U.S. 125 (1947)..............................................................................4, 5

*Ciphertrust, Inc. v. Trusecure Corp.,*
     2005 U.S. Dist. LEXIS 46322 (E.D. Va. 2005)........................................5

*Compaq Computer Corp. v. Procom Tech., Inc.,*
     908 F. Supp. 1409 (S.D. Tex. 1995) .........................................................1

*Compare 1-800 Contacts, Inc. v. WhenU.com, Inc.,*
     414 F.3d 400 (2d Cir. 2005)......................................................................1

*Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.,*
     509 F. Supp. 1036 (S.D.N.Y. 1981).........................................................4

*Fare Deals, LTD., v. World Choice Travel.com, Inc.,*
     180 F. Supp. 2d 678 (D. Md. 2001).........................................................16

*Forstmann Woolen Co. v. Murray Sices Corp.,*
     144 F. Supp. 283 (S.D.N.Y. 1956)............................................................4

*Fragrancenet.com v. Fragrancex.com, Inc.*,
  493 F. Supp. 545 (E.D.N.Y. 2007) ...................................................................2

*George Co. v. Imagination Entm't Ltd.*,
  575 F.3d 383 (4th Cir. 2009) ...........................................................................12

*Gov't Employees Ins. Co. v. Google, Inc.*,
  2005 U.S. Dist. LEXIS 18642 (E.D. Va. Aug. 8, 2005)........................................4

*Government Employees Insurance Company v. Google, Inc.*,
  2005 U.S. Dist. LEXIS 18642 (E.D. Va. August 8, 2005) ....................................2

*Hard Rock Caf Licensing Corp. v. Concession Servs., Inc.*,
  955 F.2d 1143 (7th Cir. 1992) .........................................................................16

*Hendrickson*,
  165 F. Supp. at 1095 ................................................................................20, 21

*Hendrickson v. eBay Inc.*,
  165 F. Supp. 2d 1082 (C.D. Cal. 2001) ..................................................14, 15, 20

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982)..................................................................................13, 15

*Jurin v. Google, Inc.*,
  2010 U.S. Dist. LEXIS 18208 (C.D. Cal. Mar. 1, 2010)......................................3

*Kelly v. Thomas Aaron Billiards, Inc.*,
  2007 U.S. Dist. LEXIS 45533 .........................................................................7

*Lamparello v. Falwell*,
  420 F.3d 309 (4th Cir. 2005) ...........................................................................4

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
  43 F.3d 922 (4th Cir. 1995) ........................................................................4, 19

*Lorillard Tobacco Co. v. S&M Brands, Inc.*,
  616 F. Supp. 2d 581 (E.D.Va. 2009) .................................................................7

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
  507 F.3d 252 (4th Cir. 2007) ......................................................................17, 18

*NBA Props. v. Untertainment Records LLC*,
  1999 U.S. Dist. LEXIS 7780 (S.D.N.Y. May 26, 1999) ......................................20

*NY Times v. Sullivan*,
  376 U.S. 254 (1964)......................................................................................20

*National Federation For the Blind v. Loompanics Enters., Inc.*,
  936 F. Supp. 1232 (D. Md. 1996)......................................................................4

*Nedrich v. Jones*,
  245 Va. 465 (1993) .......................................................................................19

*Network v. CBS, Inc.,*
  2000 WL 362016 (C.D. Cal. Jan. 18, 2000) .............................................17

*Perfect 10, Inc. v. Visa Int'l Serv. Assoc.,*
  494 F.3d 788 (9th Cir. 2007) ...........................................................15, 16

*Perini Corp. v. Perini Constr., Inc.,*
  915 F.2d 121 (4th Cir. 1990) ...............................................................4, 7

*Pizzeria Uno Corp. v. Temple,*
  747 F.2d 1522 (4th Cir. 1984) ................................................................8

*Polymer Tech. Corp., v. Mimran,*
  975 F.2d 58 (2d Cir. 1992)......................................................................4

*Prestonettes, Inc. v. Coty,*
  264 U.S. 359 (1924)...............................................................1, 4, 5, 6

*Procter & Gamble v. Haugen,*
  317 F.3d 1121 (10th Cir. 2003) ...........................................................14

*Qualitix Co. v. Jacobson Prods. Co.,*
  514 U.S. 159 (1995)................................................................................1

*S&L Vitamins, Inc. v. Australian Gold, Inc.,*
  2007 U.S. Dist. LEXIS 74712 (E.D.N.Y. Sept. 30, 2007)........................4

*S&L Vitamins, Inc. v. Australian Gold, Inc., Merck & Co., Inc. v.*
  *Mediplan Health Consulting, Inc.,*
  425 F. Supp. 2d 402 (S.D.N.Y. 2006)......................................................1

*Sebastian Int'l v. Longs Drug Stores Corp.,*
  53 F.3d 1073 (9th Cir. 1995) ..................................................................7

*Sega Enters. Ltd. v. Accolade, Inc.,*
  977 F.2d 1510 (9th Cir. 1992) ................................................................1

*Shell Oil Co. v. Commercial Petroleum, Inc.,*
  928 F.2d 104 (4th Cir. 1991) ...............................................................4, 7

*Size, Inc. v. Network Solutions,*
  255 F. Supp. 2d 568 (E.D. Va. 2003) ...................................................13

*Smith v. Chanel, Inc.,*
  402 F.2d 562 (9th Cir. 1968) ..................................................................4

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984)..............................................................................16

*Star Indus., Inc. v. Bacardi & Co.,*
  412 F.3d 373 (2d Cir. 2005).....................................................................7

*TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.,*
  244 F.3d 88 (2nd Cir. 2001)..................................................................17

v

*Tiffany Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y 2008) ......................................................................14, 15

*Top Tobacco L.P. v. N. Atl. Operating Co.*,
   509 F.3d 380 (7th Cir. 2007) ...............................................................................17

*Toro Co. v. ToroHead Inc.*,
   2001 WL 1734485 (T.T.A.B. 2001) .......................................................................17

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) ..............................................................................................1, 2

*U-Haul Int'l, Inc. v. When U.com, Inc.*,
   279 F. Supp. 2d 723 (E.D.V.A. 2003) ...............................................................2, 8

*United States v. Rapoca Energy Co*,
   613 F. Supp. 1161 (D.C. Va. 1985) .......................................................................16

*Universal City Studios, Inc. v. Ideal Publ'g Corp.*,
   195 U.S.P.Q. 761 (S.D.N.Y. 1977) .........................................................................4

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
   746 F.2d 112 (2d Cir. 1984) ...................................................................................3

*Valu Eng'g, Inc. v. Rexnard Corp.*,
   278 F.3d 1268 (Fed. Cir. 2002) ..............................................................................1

*Volkswagenwerk Aktiengesellschaft v. Church*,
   411 F.2d 350 (9th Cir. 1969) ..................................................................................4

*WCVB-TV v. Boston Athletic Association*,
   926 F.2d 42 (1st Cir. 1991) .....................................................................................4

*Weil Ceramics & Glass v. Dash*,
   878 F.2d 659 (3d Cir. 1989) ...................................................................................7

*Wells Fargo & Co. v. WhenU.com, Inc.*,
   293 F. Supp. 2d 734 (E.D. Mich. 2003) .................................................................2

*World Wrestling Fed'n v. Posters, Inc.*,
   2000 U.S. Dist. LEXIS 20357 (N.D. Ill. Sept. 26, 2000) ......................................20

## Statutes

15 U.S.C. § 1114(2) ...........................................................................................19, 20, 21

15 U.S.C. § 1125(a) ....................................................................................................6

15 U.S.C. §1125(c)(1) ...............................................................................................17

15 U.S.C. §1125(c)(2)(A) ..........................................................................................17

16 C.F.R. 14.15 ......................................................................................................7, 10

Fed. R. Evid. 401 ..................................................................................................................6

## PRELIMINARY STATEMENT

> *"A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924) (Holmes, J.).

Through its lawsuit, Rosetta Stone seeks to leverage the limited trademark rights granted to it under United States trademark law so as to eliminate legitimate competition on search engines such as Google, and asks this Court to depart from the traditional policies of a competitive market long recognized by the courts to substantially benefit the consuming public.  Rosetta Stone argues that Google infringes its trademarks by allowing others to display ads adjacent to Google's free organic search results in response to search queries that include Rosetta Stone's marks.  It also maintains that Google infringes by not prohibiting resellers of Rosetta Stone products, such as Amazon.com, from using Rosetta Stone's marks in the text of their ads, even though those resellers are simply informing Google search users that they, too, offer Rosetta Stone products for sale.

These positions defy both logic and experience. If applied in traditional advertising contexts, Sunday circulars as we know them today would cease to exist, with grocery stores unable to advertise a sale on "Coke" without first getting permission from Coke to do so.  A company like Best Buy could not feature "Sony" DVD players in television ads absent Sony's express authorization.  Classified ads in newspapers could not freely mention the brand of bicycle (e.g., "Schwinn" 10 speed bike) or camera (e.g., "Nikon D90" digital SLR) being offered for resale without first obtaining the brand owners' consent.  Even Rosetta Stone's CEO concedes, consistent with the actual state of trademark law today, that these uses are indeed legitimate and permissible in the brick-and-mortar world.  Declaration of Margret M. Caruso ("Caruso Decl.") attached hereto as Exhibit A, Ex. 51, 6:8-13:7.

Yet for the Internet, Rosetta Stone believes a different set of trademark rules should apply.  It seeks to p revent "*any use* of the Rosetta Stone Marks unless   specifically authorized by Rosetta Stone."  FAC, p. 35 (emphasis added).  If successful, Rosetta Stone would deprive consumers of the ability to efficiently comparison shop for language products, find the best prices for Rosetta Stone products, easily locate product reviews, and explore other competitive products—despite Rosetta Stone's admission that consumers use precisely such types of information before deciding to buy Rosetta Stone's products.  Declaration of Margret M. Caruso ("Caruso Decl.") attached hereto as Exhibit A, Ex. 69 101:7-22.  Indeed, Rosetta S  tone would also prevent anyone referencing *the* Rosetta Stone—the historical Egyptian artifact on display at the British Museum since 1802—in ads without first obtaining Rosetta Stone's permission.

The primary purpose of tradem ark law is to  protect consumers from confusion about the origin of goods and services— it is not to protect trademark owners from competition at the expense of consumers, nor to suppress long-established legitimate uses of the marks.  Consistent with that fundamental purpose, summary judgment for Google is warranted on all claims.

## STATEMENT OF UNDISPUTED FACTS

1.    Google owns and operates one of the world's most utilized search engines, which enables people to locate information on the Internet for free. First Amended Complaint (FAC) ¶ 3

2.    To use Google's search engine, users enter a word or phrase query into the search box and press enter.  Google then returns a search results page displaying a list of links to websites that Google has algorithmically determined to be relevant to the users' query.  FAC ¶ 25

3.    In addition to unpaid search results ("organic links"), Google's search results page may also display a limited number of paid ads ("sponsored links") adjacent to the organic results.

Google does not show ads on every search results page.  Google's philosophy is to provide its users with organic links and ads that users will find relevant.  FAC ¶ 28; Caruso Decl., Ex. 1; , Declaration of Bill Lloyd ("Lloyd Decl.") attached hereto as Exhibit B, Ex. 7; Caruso Decl., Ex. 59, 202:1-9, 205:20-206:25; Caruso Decl., Ex. 76, 175:22-177:16; Caruso Decl., Ex. 64, 112:16-113:1)

4.     Sponsored links displayed above the organic search results share a yellow rectangular background.  Sponsored links displayed to the right of the organic search results are separated from the others by a blue line.  Both sections are labeled "Sponsored Links."  Caruso Decl., Ex. 10; Caruso Decl., Ex. 13.

5.     Google algorithmically determines which organic search results and sponsored links to display in part by matching words in a users' query with information in its databases. http://www.google.com/corporate/tech.html  One of the databases Google uses in determining which sponsored links to display includes keywords selected by advertisers.  Caruso Decl., Ex. 64, 18:21-21:8, 20:23-21:18; Caruso Decl., Ex. 67, 61:8-64:21; Caruso Decl., Ex. 61, 53: 8-11, 79:1-5; Lloyd Decl. Ex. 10.  Advertisers select keywords, sometimes from a list of words and/or phrases generated algorithmically using Google's keyword tools and determined to be related to words or phrases entered by the advertiser.  Caruso Decl., Ex. 54, 18:11-17, 21:25-22:11.  Before that list is displayed to the advertiser, it is passed through a filter, which removes terms that Google has entered into the filter as violating its policies, including, for example, trademarked terms for which Google has received a complaint.  Caruso Decl., Ex. 54, 19:8-16, 23:22-24:7, 25:2-7.  An advertiser can also enter keywords without using any keyword tools.  Lloyd Decl., Ex. 10.

6.     Google expressly informs advertisers using Google keyword tools to generate ideas for keywords that it "reserve[s] the right to disapprove any keywords you add.  You are responsible for the keywords you select and for ensuring that your use of the keywords does not violate any applicable laws."  Lloyd Decl., Ex. 10.

7.     Whether ads are shown in response to a particular search query depends on a complex algorithmic process that takes into account the keyword's relationship to the search query, the ad's quality (i.e., the likelihood that the ad will be clicked by a Google user and the quality of the landing page) and the maximum bid price for the ad.  If the ad quality and bid price are sufficiently high, it qualifies to be shown on Google.com. Caruso Decl.,  19:16-21:18; Caruso Decl., Ex. 52 18:17-20:9, 65:13-66:8, 100:16-101:1, 106:22-109:20)

8.     Advertisers are responsible for the content of their ads, not Google. Lloyd Decl., Ex. 10; Caruso Decl., Ex. 3.

9.     Since 2004, Google's trademark policy has permitted advertisers to use trademarked terms as keyword triggers for advertisements.  Lloyd Decl., Ex. 1.

10.    In 2009, Google revised its trademark policy to also permit certain types of advertisers to include trademarked terms in their ads.  The new policy allows, in addition to the brand owner and its authorized licensees, advertisers who (1) actually resell legitimate products bearing the trademark; (2) sell components, replacement parts or compatible products corresponding to the trademark; or (3) provide non-competitive information about the goods or services corresponding to the trademark term to use the term in ads, to include the trademark in ad text. Lloyd Decl., Ex. 1; Lloyd Decl., Ex. 4; Caruso Decl., Ex. 55, 154:6-15)

11.    Google's trademark policy changed after the development of a technological tool by which the websites linking to ads shown on Google could be automatically checked to assess the

website's status as a reseller or informational site before an ad containing a monitored trademark

term would be displayed.  Caruso Decl., Ex. 62, 80:18-81:5, 88:16-90:22; Lloyd Decl., Ex. 5).

12.    Google's AdWords policy prohibits the sale or promotion of counterfeit goods. Lloyd

Decl., Ex. 4.  Google requires all AdWords advertisers to expressly agree that they will not

"advertise anything illegal or engage in any illegal or fraudulent business practice" and warrant

that their advertising "will not violate…any laws…or third party rights (including without

limitation, intellectual property rights)."  Caruso Decl., Ex. 3.



15.    Google responds to notices of counterfeit ads on its AdWords program and promptly

takes down any ads confirmed to violate its AdWords policies.  Caruso Decl., Ex. 21; Caruso

Decl., Ex. 23; Caruso Decl., Ex. 65 135:11-138:25; Caruso Decl., Ex. 25; Caruso Decl., Ex. 24;

Caruso Decl., Ex. 28.

16.    Google loses money from ads for counterfeit products.  ███████████████

███████████████████████████████████████████████

███████████  Google also expends significant resources working with its clients and

otherwise combating counterfeiters who advertise on Google.com.  Louie Decl. ¶¶ 3-6.

17.   Each time Rosetta Stone has informed Google that a particular advertiser was selling counterfeit Rosetta Stone products, Google promptly took action, including removing the advertisement.  Caruso Decl., Ex. 21; Caruso Decl., Ex. 23; Caruso Decl, Ex. 72; Caruso Decl., Ex. 65, 135:11-138:25; Caruso Decl., Ex. 25; Caruso Decl., Ex. 24; Caruso Decl., Ex. 28



Rosetta Stone and Google have an enforceable contract governing Rosetta Stone's AdWords advertising. Caruso Decl., Ex. 52; Caruso Decl., Ex. 3.

███████████████████████████████████████████

███████████████████████████

## ARGUMENT

Summary judgment in a trademark case is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Lamparello v. Falwell,* 420 F.3d 309, 316 (4th Cir. 2005) . Rosetta Stone has not, and ca nnot, come forward with any disputed issue of m aterial fact that would show that Google has engaged in direct or indirect trademark infringement, dilution or unfair competition, thus warranting judgment in Google's favor.

## I.     ROSETTA STONE CANNOT PROVE DIRECT TRADEMARK LIABILITY

### A.     Use of Rosetta Stone's Marks To Refer to Rosetta Stone or Its Products Is Not Actionable.

A century of precedent firmly establishes that use of a trademarked term to refer to a product originating from the trademark owner is not actionable.[1] "When the mark is used in a way that does not deceive the public, [there is] no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). Pursuant to this well-established principle, any uses of Rosetta Stone' s trademarks to refer to actual Rosetta Sto ne software cannot infringe those m arks—irrespective of whether the use w as made by Google or a

---

[1]     *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947); *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924); *Saxlehner v. Wagner,* 216 U.S. 375, 380-81 (1910); *Polymer Tech. Corp., v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991); *WCVB-TV v. Boston Athletic Association*, 926 F.2d 42 (1st Cir. 1991); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969); *Smith v. Chanel, Inc.*, 402 F.2d 562 (9th Cir. 1968); *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 2007 U.S. Dist. LEXIS 74712 (E.D.N.Y. Sept. 30, 2007); *National Federation For the Blind v. Loompanics Enters., Inc.,* 936 F. Supp. 1232, 1241 (D. Md. 1996); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.,* 509 F. Supp. 1036, 1042 (S.D.N.Y. 1981); *Universal City Studios, Inc. v. Ideal Publ'g Corp.,* 195 U.S.P.Q. 761 (S.D.N.Y. 1977); *Forstmann Woolen Co. v. Murray Sices Corp.*, 144 F. Supp. 283, 290 (S.D.N.Y. 1956).

third-party advertiser, irrespective of whether Rosetta Stone expressly authorized such use, and irrespective of whether the theory of liability is direct, contributory, or vicarious.

In *Prestonettes*, the Supreme Court held that use of the trademark COTY to describe powder that originated from Coty was not prohibited. *Id.* "A trade mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." *Id.* It does not give the owner the right to preclude all uses of the word in commerce. The Supreme Court re-affirmed this twenty years later in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947), holding that the defendant's use of CHAMPION SPARK PLUG to refer to spark plugs that originated from Champion was not prohibited by trademark law. These cases and their progeny stand in stark opposition to Rosetta Stone's word-monopoly theory of trademark law, a theory which has been repeatedly rejected by the courts. *E.g., Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,* 962 F.2d 316, 320 (4th Cir. 1992) (quoting *Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 300-01 (9th Cir. 1979) for the proposition that "'trademarks are designed to protect consumers from being misled,' not to 'further or perpetuate product monopolies'"); *see also Scholastic, Inc. v. Macmillan, Inc.,* 650 F. Supp. 866, 873 (S.D.N.Y. 1987) ("[T]he purpose of the trademark law is to protect consumers from confusion—not companies from competition . . . ."); *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.,* 149 F.3d 722, 726 (7th Cir. 1998) ("[T]rademark protection should not interfere with the traditional policies of a competitive market and courts have generally recognized that the public substantially benefits from competition.").

These cases reflect the fundamental purpose of trademark law: facilitating reliable consumer identification of a product. *E.g., Qualitex Co. v. Jacobson Prod. Co.,* 514 U.S. 159, 163-64 (1995). As the Supreme Court has explained, "trademark law, by preventing others from copying a source identifying mark, reduce[s] the customers' costs of shopping and making purchasing decisions, . . .

[it] quickly and easily assures a potential customer that [an] item . . . is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past." 514 U.S. at 163-64 (internal citation, quotation marks omitted). This goal is served by protecting the trademark owner's investment against "those who hope to sell inferior products by capitalizing on a consumers' inability quickly to evaluate the quality of an item offered for sale." *Id.* (citation, quotation marks omitted). If the defendants in these cases had not been allowed to use the trademarked terms, they would not have been able to give consumers accurate information about their products and thus decreased consumers' ability to make an informed decision—a result contrary to the purpose of trademark law. Yet this is precisely the result Rosetta Stone seeks here.

Google's advertising programs promote the purpose of trademark law by giving consumers information they need to identify products and gather information. Caruso Decl., Ex. 76, 176:1-177:16; Caruso Decl., Ex. 62, 27:3-18. As Google's VP of Product Management explained, "our business philosophy [centers] on generating good results for users." Caruso Decl., Ex. 76, 176:22-177:1. Consistent with decades of precedent, Google's AdWords trademark policy, as of June 2009, permits advertisers who actually resell Rosetta Stone software or offer information regarding Rosetta Stone products to accurately refer to Rosetta Stone's products, using their marks, in the ad text. Caruso Decl., Ex. 6; Caruso Decl., Ex. 62, 26:25-28:17. Ads conforming to Google's policies fall well within the bounds of permissible use of trademarked terms.

The "first sale doctrine" further justifies the use of Rosetta Stone's trademarks in advertising by resellers of Rosetta Stone's products. "[T]rademark law does not apply to the sale of genuine goods bearing a true mark, ***even if the sale is without the mark owner's consent***." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (emphasis added); *see also Sebastian Int'l v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) (grant of a

preliminary judgment was in error because the first sale doctrine applied; even when there was evidence of consumer confusion); *Kelly v. Thomas Aaron Billiards, Inc.*, 2007 U.S. Dist. LEXIS 45533, *9-10 (D. Md. 2007) (summary judgment of non-infringement where goods genuine).

Here, no dispute exists that the reseller ads at issue, such as those created by Amazon.com, were created by authorized resellers of genuine Rosetta Stone products. Caruso Decl., Ex. 72 147:9-148:18; Caruso Decl., Ex. 58, 96:12-98:10. Thus, any purchase following a click on ones of these links cannot result in actionable confusion because the consumers are "get[ting] precisely what they believed they were purchasing." *Weil Ceramics & Glass v. Dash,* 878 F.2d 659, 672 (3d Cir. 1989) (reversing district court's granting of summary judgment for the U.S. trademark holder because the goods that were imported by its foreign corporation were genuine). These uses are simply not actionable.

In addition, although Google's policy does not allow competitors to use Rosetta Stone's trademarks in ad text, Lloyd Decl., Ex. 2; Caruso Decl., Ex. 55 158:24-159:25, to the extent some competitors' have used those marks, such referential use of trademarks in comparative advertising is permitted. The Federal Trade Commission has endorsed the use of trademarked terms in ads to promote competitive advertising and provide more information to consumers. 16 C.F.R. 14.15.[2] Thus, ads such as "Beware the Stone" and "Don't Buy Rosetta Stone" also do not infringe Rosetta Stone's marks. Caruso Decl., Ex. 7; Caruso Decl, Ex. 20; Caruso Decl., Ex. 13; Caruso Decl., Ex. 73 74:18-22, 78:7-10; Caruso Decl., Ex. 58 1    10:17-111:10; Caruso Decl., Ex. 65 253:6-23.

---

[2]   *See also Lorillard Tobacco Co. v. S&M Brands, Inc.*, 616 F.Supp.2d 581 (E.D.Va. 2009) (denying preliminary injunction where mark was clearly being used in comparative advertising); *U-Haul Int'l, Inc. v. When U.com, Inc.*, 279 F.Supp.2d 723, 728 (E.D.V.A. 2003) (holding that "comparative advertising does not violate trademark law, even when the advertising makes use of a competitor's trademark").

Considering that these ads are directly critical of Rosetta Stone; no reasonable fact finder could find that consumers would likely be confused that those advertisers do not sell Rosetta Stone products, nor is there any evidence in the record supporting the same. As the Supreme Court explained a century ago: "If [defendants] do not convey, but, on the contrary, exclude, the notion that they are selling the plaintiff's goods, it is a strong proposition that when the article has a well-known name they have not the right to explain by that name what they imitate. By doing so, they are not trying to get the good will of the name, but the good will of the goods." *Saxlehner v. Wagner*, 216 U.S. 375, 380-81 (1910).[3] In other words, these ads do not infringe.

### B.   Keyword Bidding Does Not Infringe Rosetta Stone's Trademarks.

#### 1.   Google is Not Directly Liable For Advertisers' Keyword Bidding.

No legal or factual basis exists to impose direct liability on Google for using Rosetta Stone's trademarks as keywords alone. Rosetta Stone has no evidence that the mere display of ads triggered by keywords with Rosetta Stone's marks causes confusion. *GEICO v. Google, Inc*, 2005 U.S. Dist. LEXIS 18642 (E.D. Va. Aug. 8, 2005). The *only* evidence Rosetta Stone has attempted to offer relates to the use of the Rosetta Stone marks in ad text.

Moreover, Rosetta Stone's position that use of marks as keywords generally infringes trademarks, assumes that no "unauthorized" ads could ever lawfully appear in response to a search query including a Rosetta Stone mark. As discussed above, trademark law permits a wide variety of

---

[3]   *See also Lamparello v. Falwell,* 420 F.3d 309, 315 (4th Cir. 2005) ("No one would believe that Reverend Falwell sponsored a site criticizing himself, his positions, and his interpretations of the Bible."); *Saxony Products, Inc. v. Guerlain, Inc.*, 513 F.2d 716, 722 (9th Cir. 1975) (unauthorized use of a trademark in comparative advertising does not violate Lanham act unless the ad was false or causes consumer to be confused about source of the trademarked good); *Bihari v. Gross*, 119 F. Supp. 2d 309, 319 (S.D.N.Y. 2000) ("[N]o reasonable viewer would believe that the disparaging comments regarding Bihari's business ethics . . . are endorsed by Bihari.").

referential uses.  If an ad containing a Rosetta Stone mark is lawful, it strains logic to find the ad's

placement unlawful.  If any ads are lawful, it necessarily follows that Google's policy as a whole

cannot violate the law.  As such, if any sponsored links are confusing, that confusion would have to

be proven on an ad-by-ad basis. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299

F.3d 1242, 1248 (11th Cir. 2002) (vacating preliminary injunction where district court failed to

assess likelihood of consumer deception on an ad-by-ad basis and had instead viewed ad campaign

as a whole).  Rosetta Stone has no such evidence.

### 2.    Use of the Rosetta Stone Marks as Keywords is Functional

The Lanham Act "does not protect essentially functional or utilitarian product features."

*Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1531 (9th Cir. 1992).  A product feature is

functional or utilitarian "if it is essential to the use or purpose of the article or if it affects the cost or

quality of the article." *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (citation

and quotation marks omitted); *see also Qualitix Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-65

(1995); *Valu Eng'g, Inc. v. Rexnard Corp.*, 278 F.3d 1268, 1277 (Fed. Cir. 2002).  As explained in

*Qualitex*:  "The functionality doctrine prevents trademark law, which seeks to promote competition

by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a

producer to control a useful product feature."  514 U.S. at 164-65; *see also Value Engineering, Inc.*

*v. Rexnord Corp.*, 278 F.3d 1268, 1277 (Fed. Cir. 2002) ("the functionality doctrine preserves

competition by ensuring competitors the right to compete effectively") (citation omitted).

Thus, in *Sega*, the Ninth Circuit found that use of Sega's trademarked initialization sequence

to achieve compatibility was functional because interoperablity could not be achieved without the

trademarked sequence.  *Sega Enterps. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1528 (9th Cir. 1992).

The *Compaq* court similarly found that the word "Compaq" inserted in computer code for purposes

of compatibility was functional. *Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409,

1423 (S.D. Tex. 1995). In both cases, the trademarked term was essential to the use or function of the product and its functional use promoted competition.

Using any keyword to match user queries to information in Google's databases is similarly functional. Just as words in a book's index identify relevant passages within the book, keywords in an Internet search engine's index are the "keys" that enable it to readily identify relevant information in response to users' queries. Keywords are, like the initializing sequence in *Sega* and the computer code in *Compaq*, essential to the use or purpose of Google's ad serving function, and they are functional. The fact that some of these "keys" are trademarked terms that may identify ads as relevant to a users' query should not change this result. For example, a Google search for "Rosetta Stone" may return a link to Amazon.com's website selling the Rosetta Stone software in both the sponsored link and organic links sections of the search results page. It is illogical that a keyword triggering a link in the sponsored links section would be considered a non-functional use and the same activity causing a link to appear in the organic link section would be considered a functional use. In both instances, "Rosetta Stone" is being used to locate information in Google's databases relevant to a user's query. In both instances, the use is thus purely functional; prohibiting either one would plainly "inhibit legitimate competition." *Qualitex*, 514 U.S. at 165.

If advertisers could not identify the relevant target audience using trademarks as keywords, either the advertiser or Google would have to develop a more complex system providing relevant ads in response to queries. Trademarked keywords thus "affects the cost or quality" of Google's advertising programs, 532 U.S. at 32, and preventing that use would thwart competition. The use of Rosetta Stone's marks as keyword triggers is therefore a non-infringing, functional use.[4]

_____

[4] Although *Rescuecom Corp., v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009) and *GEICO v. Google, Inc.*, 2005 U.S. Dist. LEXIS 18642 (E.D. Va. Aug. 8, 2005), found that use of (footnote continued)

### C.      Use of Rosetta Stone's Trademarks in Ad Text Does Not Infringe.

### 1.      Google Does Not Use the Rosetta Stone Marks in Ad Text.

Google also cannot be held directly liable for third-party use of the Rosetta Stone marks in ads because Google does not determine the content of the ads; it merely publishes them. Third-party advertisers select and insert the Rosetta Stone marks into the text of their ads, and there is no allegation that Google is using Rosetta Stone's marks in ads for Google's products. In this respect, Google is like a newspaper, magazine, or television station selling advertising space. Google makes space available on its search results page, and advertisers pay Google a fee if users click on the ads displayed on those pages. As another court recently explained, because Google "does not provide the content of the 'Sponsored Link' ads," but merely "provides a space and a service and thereafter charges for its service," Google's "Adwords program simply allows competitors to post their digital fliers where they might be most readily received in the cyber-marketplace." *Jurin v. Google, Inc.*, 2010 U.S. Dist. LEXIS 18208, *12 (E.D. Cal. Mar. 1, 2010). Under these circumstances, Google is not using the Rosetta Stone marks at all in ad text, and cannot be held directly liable.

Rosetta Stone also cannot meet its burden to show that Google uses Rosetta Stone's marks in a manner likely to cause consumer confusion as to the source or origin of Rosetta Stone's products. *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005). The traditional factors courts consider to

---

trademarked terms as keywords constituted use in commerce, they were both decided at the pleading stage. Further, the hypothetical facts under which the *Rescuecom* court considered whether certain uses of trademarked terms in databases could be found infringing are not present here, where Google does not permit "sellers of products or services [to] pay to…automatically divert users to their website when the users enter a competitor's trademark as a search term." *See Rescuecom*, 562 F.3d at 130 n.4. Google labels its ads as Sponsored Links, a phrase long ago accepted by the FTC for designating such links, and which Google has used since the inception of AdWords. Caruso Decl., Ex. 4; Caruso Decl., Ex. 76, 176:1-177:16). It also shades the top ones with a yellow background and separates the ads on the right hand side of the page from the organic search results with a line.

determine whether consumer confusion is likely include (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's intent in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumers. *Perini Corp. v. Perini Constr., Inc*, 915 F.2d 121, 127 (4th Cir. 1990). However, when the mark is used in paid search ads, "the traditional factors are not really applicable" because Google is not attempting "to sell its own products." *GEICO.*, 2005 U.S. Dist. LEXIS 18642 at *14; *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.* 43 F.3d 922, 933 (4th Cir. 1995) ("Importantly, not all these factors are of equal relevance in every case."). For purposes of this motion, Google does not contest factors (1) or (2), and factors (3), and (4) are not relevant to the inquiry.

### i       There is no evidence of actual confusion.

Although this Circuit suggests many factors to be considered in determining likelihood of confusion, evidence of actual confusion is "often paramount" in the likelihood of confusion analysis. *CareFirst of Maryland Inc. v. FirstCare, P.C.*, 434 F.3d 263, 268-69 (4th Cir. 2006) (affirming the grant of summary judgment for defendant). As this Court has recognized, "the absence of actual confusion in the marketplace provides the most compelling evidence of no likelihood of confusion." *Ciphertrust, Inc. v. Trusecure Corp*., 2005 U.S. Dist. LEXIS 46322, at *46 (E.D. Va. 2005) (quotation marks and alterations omitted). This critical factor weighs heavily in Google's favor.

Rosetta Stone offers no probative evidence of actual confusion as to the source or origin of Rosetta Stone's products stemming from Google's advertising policies. ██████████████

██████████████████████████████████████████

██████████████████████████████████████████

52. Yet Rosetta Stone has not produced any admissible proof of confusion resulting from a single ad that conformed to Google's policies. The absence of proof of actual confusion caused by advertising

on Google is thus "the most compelling evidence of no likelihood of confusion." *Ciphertrust,* 2005

U.S. Dist. LEXIS 46322, at *46.

Nor does Rosetta Stone's "expert" survey constitute admissible evidence of confusion.  That

survey, which purports to find a 17 % likelihood of confusion, is fa tally flawed, as described in

Google's accompanying motion to exclude Dr. Van Liere's opinion and report.[5]  But even if not

excluded, it is insufficient to defeat summary judgment on the present record. *See, e.g., CareFirst of*

*Md., Inc. v. First Care, P.C*, 434 F.3d 263 (4th Cir. 2006) (granting summary judgment in favor of

defendant despite evidence of a survey regarding purporting to demonstrate actual confusion).

The opinion of Rosetta Stone's expert, Dr. Van Liere, is irrelevant because it is based on the

false assumption that no unauthorized ad could a ppear on a results page for a search query that

included a Rosetta Stone mark.  As discussed above, in Section B, that is not the case; confusion can

only be proven on an ad-by-ad basis.  Dr. Van Liere did not undertake such a study.  Caruso Decl.,

Ex. 77, 77:18-78:10.  His opinion is also irrelevant because it relies on "evidence" of net confusion

resulting entirely from responses to the question of whether a given link perceived by respondents to

offer Rosetta Stone products for sale was "e ndorsed" by Rosetta Stone.  The only Lanham Act

---

[5]  As explained in Google's accompanying motion, Dr. Van Liere's survey methodology
suffers from many flaws.  Perhaps most fundamental are his distortion of the an actual search
results page for use in the survey by removing Rosetta Stone's sponsored link and by an
inadequate control that introduces many potential "confusion" variables instead of effectively
isolating the alleged infringement.  Further, Dr. Van Liere (1) utilized an altered screen shot that
failed to depict an accurate representation of a real world Google search results pages; (2) used a
control stimulus that had fewer referential links that related to Rosetta Stone software than the
test; (3) used a test population that was much less familiar with Rosetta Stone than actual
consumers searching for information about Rosetta Stone on Google would be; and (4) used
inconsistent definitions of "confused" to calculate his result.  A number of adjustments are
possible to somewhat rehabilitate the data from Dr. Van Liere's survey—all of which drop the
confusion rate to 5% or less.  *See generally* Blair Decl. ¶¶ 13-14 and Google's Memorandum In
Support of Its Motion To Exclude Expert Report And Opinion Of Dr. Kent Van Liere.

section that mentions likelihood of confusion regarding "endorsement" as a grounds for liability is 15 U.S.C. § 1125(a). Because the Court dism issed Rosetta Stone's § 1125( a) claim, a survey concerning "endorsem ent" is irre levant. Caruso Decl., E x. 1; Fed. R. Evid. 401. W hen t he endorsement responses in the survey are removed, no net confusion remains. Blair Decl., Ex. 1, 5-6.

### ii      Rosetta Stone customers are sophisticated.

In this Circuit, it is well established that the "sophist ication and expertise of the usual purchasers can preclude any likelihood of confusion among them stemming from the similarity of trade names." *Perini Corp. v. Perini Constr. Inc*, 915 F.2d 121, 127 (4th Cir. 1990). The relevant market's level of sophistication can be established through survey evidence, expert testimony, and inferences based on the nature of the product and it price. Products costing less than $30 have been held to evidence sophisticated purchasers. *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 390 (2d Cir. 2005) ("Unhurried consum ers in the re laxed environm ent of th e liquor store, m aking decisions about $12 to $24 purchases, m ay be exp ected to exhibit suffici ent sophistication to distinguish between Star's a nd Bacardi's products, which are differently labeled."); *see also, Barbeque Marx, Inc. v. 551 Ogden, Inc.* , 235 F.3d 1041, 1045 (7th Cir. 2000) (ruling consumers would not exercise care in choosing a restaurant for a $20 meal clear error).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Caruso Decl., Ex. 53, 115:22-116:5; Caruso Decl ., Ex. 70, 115:9-116:5. ████████████████████

████████████████████████████████████████████████████████

████████ Caruso Decl., Ex. 69, 86: 20-88:1; Caruso Decl., Ex. 35; Caruso Decl., Ex. 34; Caruso Decl., Ex. 34; Caruso Decl., Ex. 31. Consumer s considering spending hundreds of dollars on language-learning software can reasonably be exp ected to take care in making such a decisions,

especially given the unhurried and relaxed enviro nment of online shopping.  This factor weighs

heavily against a finding of likely confusion.

### iii      There is no evidence of malicious intent.

Rosetta Stone cannot produce any evidence that Google intended to confuse consumers as to

the source or origin of its products by profiting from another's reputation. *See Pizzeria Uno Corp. v.*

*Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984) (defendants' intent is often shown by their efforts to

create knock-off marketing material).  It is undisputed that Google is not attempting to pass off its

goods or services as Rosetta Stone 's.  Indeed, third-party advertis ers, not Google, decide to use

Rosetta Stone marks in ads.  Google cannot be   found to have intentionally infringed sim ply by

providing third parties with advertising space.  Further, Rosetta Stone has no evidence that Google

had malicious intent regarding Rosetta Stone.  To the contrary, Google employees indisputably went

to great lengths to assist Rosetta Stone in its enforcement efforts.[6]

Although the focus of the intent inquiry shoul d be on Google's alleged use of the Rosetta

Stone marks and not Google's policies generally , nothing about  Google' s policies suggests any

unlawful intent by Google.  As discussed in Section I.A, they are in line with a century of trademark

---

[6]  For example, recognizing Google's responsiveness and proactive approach in
disabling ads not in compliance with its trademark policy, Rosetta Stone lauded Google
employees' efforts with such accolades as, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Caruso Decl., Ex. 24.  Further, at least four Google employees
personally met with Rosetta Stone employees to assure that they were taking all appropriate steps
to serve Rosetta Stone's needs.  Caruso Decl., Ex. 22. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Caruso Decl., Ex. 53, 36:5-37:16; Caruso Decl.,
26; Caruso Decl., Ex. 27. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Caruso Decl., Ex. 53
44:18-48:24; Caruso Decl., Ex. 68, 57:6-60:23.

precedent.  Tellingly, despite arguing to this Court that Google's actions are unlawful, ███████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████ Caruso Decl., Ex. 36; Caruso Decl., Ex. 77, 195:3-

196:1; Caruso Decl., Ex. 51, 218:15-219:2███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████

Finally, confusing users would also be contrary to Google's business, which is to provide

relevant search results to users.  Google's enormous success is entirely dependent on users relying

on the results Google returns.  Lloyd Decl., Ex. 8; Caruso Decl., Ex. 76, 176:1-177:16.  If Google set

out to confuse its users, they would stop coming to Google—to the detriment of Google and the

companies featured in its organic and paid search results.  This factor squarely favors Google.

## 2.      Third Parties' Use of Rosetta Stone's Marks In Ads Is Not Infringing.

### i       References to actual Rosetta Stone products do not constitute actionable infringement.

As explained in section I.A., third parties can lawfully use Rosetta Stone's marks to refer to

actual Rosetta Stone products.  Even if such referential uses were capable of being infringement,

they are not here because Rosetta Stone cannot come forward with any evidence that any particular

ad by a reseller, affiliate, information site, competitor, or marketplace aggregator (such as NexTag or

Shopzilla) has caused confusion as to the source    or origin of the advertised products and thus

directly infringed Rosetta Stone's trademarks.

Except for the proximity of the products as to direct commercial sellers and promoters, the

same traditional factors discussed above in Section I.C.1 all favor such third-party advertisers.  As

explained, the user sophistication prong weighs heavily against a finding of likelihood of confusion

here, and there is no record evidence on the other factors regarding these categories of advertisers

favoring Rosetta Stone's position.   It has no evidence, nor even a survey, that any particular ad causes confusion.  Nor does it have any evidence as to the quality of the advertisers' products or their intent.  Rather, the only evidence in the record of third party intent shows that Amazon.com and eBay believed they had express authority to use Rosetta Stone marks in their ads. *See* Caruso Decl. Ex. 5; Caruso Decl., Ex. 41; Caruso Decl., Ex. 40.  On this record, Rosetta Stone falls far short of meeting its burden of proving any of these ads is likely to cause confusion.

### ii   Rosetta Stone Cannot Show Actionable Confusion Caused By Alleged Counterfeiters Advertising On Google.

Rosetta Stone offers five witnesses who a llegedly purchased count erfeit Rosetta Stone software after conducting a search on Google.  E ach testified that they knew they were not purchasing products from Rosetta Stone directly.  Caruso Decl., Ex. 57, 18:9-16, 101:1-8; Caruso Decl., Ex. 71, 12:24-13:22, 57:9-59:4; Caruso Decl., Ex. 56, 13:4-14:2, 50:3-14; Caruso Decl., Ex. 74 16:21-17:5, 71:22-73:21, 74:12-75:6.  Indeed, many chose not to purchase from Rosetta Stone because it was too expensive.  Caruso Decl., Ex. 57 17:14-19, 23:2-18; Caruso Decl., Ex. 71, 13:14-22; 56:18-57:6; Caruso Decl., Ex. 74, 74:12-75:6.  In other words, none of Rosetta Stone's witnesses was confused regarding the source of their purchase – only as to whether what they purchased was genuine or counterfeit.  *See Tiffany Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 498 (S.D.N.Y 2008) ("All three of the witnesses . . . chose to purchase jewelry through eBay rather than at a Tiffany store because they hoped to buy the jewelry for less . .   . . In short, while custom ers may have been confused about whether the product they purchased was an authentic Tiffany silver jewelry item or a counterfeit, they were certainly not confused about the immediate source of the silver jewelry-- namely, individual eBay sellers.").

Moreover, whatever confusion existed was not caused by G oogle.  None of the witnesses was mistakenly diverted to a th ird-party's website when they intended to go to Ros etta Stone's.

21

Rather than being confused by sponsored links, the testimony suggests that their purchases were influenced by the confusing nature of the websites from which they purchased.  Caruso Decl., Ex. 57, 23:2-18, 117:1-16; Caruso Decl., Ex. 71, 19:14-21; Caruso Decl., Ex. 56, 15:4-16:5; Caruso Decl., Ex. 74 16:10-17:5.  Google cannot be held liable for the activities of those websites; Google does not provide the venue for sales, it runs ads.

There is no dispute that counterfeiting constitutes trademark infringement.  However, Google cannot be held liable for trademark infringement regarding advertising when it cannot tell if the advertised good is a counterfeit.[7]  Google opposes counterfeiting, forbids advertising of counterfeit goods through AdWords, and works to prevent ads for counterfeit goods from appearing.[8]  Caruso Decl., Ex. 67, 63:2-64:21; 140:24-141:20; Lloyd    Decl., Ex. 5; Lloyd Decl., Ex. 4.  Fighting counterfeiting also makes good business sense for Google.  Advertisers of counterfeit goods do not provide a positive user experience, which is the paramount goal of Google's business, and essential to Google's continued success.  Caruso Decl., Ex. 76, 176:1-177:16.  ████████████████

████████████████████████████████████████████████████████

██████████████████████████████  Lloyd Decl., ¶ 7, Louie Decl. ¶¶ 3-6.



Caruso Decl., Ex. 53 124:2-125:7.  It is far more difficult for Google to determine whether products are counterfeit, grey market, surplus inventory, or second hand products.  Caruso Decl., Ex. 67, 30:5-15, 31:12-17, 32:22-33:1.

[8]  Google's advertising program unequivocally "prohibits the sale or promotion of counterfeit goods."  Lloyd Decl., Ex. 4.  This echoes Google's Terms of Use, which prohibits Google advertisers from "advertis[ing] anything illegal or engag[ing] in any illegal or fraudulent business practice" and requires them to warrant that their advertising "will not violate . . . any laws . . . or third party rights (including without limitation intellectual property rights)."  *See* https://adwords.google.com/select/ tsandcsfinder.

Even assuming that Rosetta Stone's witness es were confused becaus e of advertising displayed on Google, their testimony is insufficient to create a material disputed fact. Rosetta Stone is able to identif y only three ind ividuals f or wh om proof exists that they actually purchased counterfeit software after clicking on a sponsored link. [9] Evidence of "only a sm all number of instances of actual confusion may be dismissed as *de minimis*." *George Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009). Whether a given number of instances of actual confusion is *de minimis* is determ ined by placin g that number "against the background of the num ber of opportunities for confusion." *Id.* ███████████████████████████████████████
███████████████████████████████████████████ *George Co.*, 575 F.3d at 399 (affirming summary judgm ent of no infringem ent where plainti ff came forward with only four instances of confusion after selling 500,000 games in a year). Summary judgment is warranted.

## II.     ROSETTA STONE CANNOT PROVE SECONDARY LIABILITY

### A.     Rosetta Stone Cannot Prevail On Its Contributory Infringement Claim.

To prevail on its contributory tradem ark clai m, Rosetta Stone m ust prove that Google "intentionally induces another to infringe" or "continues to supply its product to one whom it knows or has reason to know is engaging in tradem ark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Size, Inc. v. Network Solutions*, 255 F. Supp. 2d 568, 572 (E.D. Va. 2003). Where an alleged secondary infringer has taken "appropriate steps to cut off the supply of its product or services to the infringer," courts have declined to impose contributory liability. *Tiffany*

---

[9]   One of Rosetta Stone's five confusion witnesses actually purchased through an organic search link (not a sponsored link) and another disposed of the software she purchased (and though she had contacted Rosetta Stone, it did not seek to preserve the evidence) so there is no way to confirm the software she purchased was actually counterfeit. Dubow Depo. at 79:11-81:11.  Thomas 47:12-18.

*Inc. v. eBay, Inc.,* 576 F. Supp. 2d 463, 469 (S.D.N.Y. 2008); *see also Procter & Gamble v. Haugen,* 317 F.3d 1121, 1129-30 (10th Cir. 2003); *Hendrickson v. eBay Inc.*, 165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001). Google has never known or had to reason to believe ads of resellers, affiliates, competitors, information, and aggregator marketplace sites were infringing, and Google has taken reasonable steps to prevent advertising by counterfeiters, as discussed above in Section I.C.2.ii.

In *Tiffany,* the court declined to hold eBay liable for third-party auctions of counterfeit goods. 576 F. Supp. 2d at 469-70. Tiffany alleged that eBay allowed flagged as counterfeiters to continue posting their counterfeit goods, that eBay's notice and take down system was legally insufficient, and that eBay should have been proactively monitoring and taking down infringing sites. *Id.* 516-518. The court held that eBay's polices were "appropriate steps" in cutting off liability, noting that trademark holders ultimately "bear the principal responsibility to police their trademarks." *Id.*

The undisputed evidence shows that if an advertiser breaches its contractual obligations to Google by advertising a counterfeit Rosetta Stone product, upon receiving notification of the ad's questionable status, Google acts promptly to ensure that it does not "continue[] to supply its product" to that advertiser. *See Inwood Labs* ., 456 U.S. at 854; *Tiffany Inc.,* 576 F. Supp. 2d at 469; *Hendrickson v. eBay Inc.*, 165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001). GOOG-RS-0341130-33; Klipple Depo. 261:25-265:23' Lloyd Dec. and Exhibits 2, 3. Google neither induced counterfeiters to infringe nor had sufficient reason to know th at products advertised on were counterfeit. *See Inwood Labs,* 456 U.S. 844 at 854. Therefor e, Google cannot be held liable for the infringing activities of third party counterfeiters.

## B.     Rosetta Stone Has No Proof To Support Its Vicarious Infringement Claim.

To prevail on a claim of vicarious trademark infringement, Rosetta Stone must prove that Google and the direct infringers "'have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing

product.'"[10] *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 807 (9th Cir. 2007) (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).

Rosetta Stone failed even to allege in its recently filed First Amended Complaint an agency relationship between Google and AdWords advertisers, let alone offer evidence of one. The mere fact that Google and any alleged direct infringer may have a financial relationship is insufficient to establish joint ownership and control for purposes of vicarious trademark liability. *See Perfect 10*, 494 F.3d at 807-08. Imposing vicarious liability upon Google based on an advertiser-publisher relationship would stretch the concept of agency to encompass virtually any contractual relationship. Neither the law of agency nor vicarious trademark law support such an expansive interpretation.

## III.   ROSETTA STONE CANNOT PROVE DILUTION.

To establish trademark dilution, Rosetta Stone must prove: "(1) that [it] owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, L LC*, 507 F.3d 252, 264-65 (4th Cir. 2007). No evidence exists from which a reasonable juror could find these elements met.

---

[10]   Vicarious trademark liability is based on the "agency principles of respondeat superior." *Perfect 10*, 494 F.3d at 802; *see also Fare Deals, LTD., v. World Choice Travel.com, Inc.,* 180 F.Supp. 2d 678, 684 (D. Md. 2001). This standard is narrower than vicarious liability in the copyright context. *Hard Rock Café*, 955 F.2d at 1150; *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, n. 19 (1984) (trademark test for contributory liability is narrower than the copyright test). Rosetta Stone can point to no evidence establishing that Google exercises joint control with advertisers over the products being advertised on Google or the products themselves. *E.g., United States v. Rapoca Energy Co*, 613 F. Supp. 1161, 1163 (W.D. Va. 1985) (stating elements of an agency relationship under Virginia law).

A.    "Rosetta Stone" Was Not A Famous Mark In 2004.

"To be capable of being diluted, a m   ark  must be "widely recognized by the general

consuming public of the United States."  15 U.S.C. §1125(c)(2)(A).[11]  Rosetta's Stone marks must

have achieved this level of fame before Google's allegedly dilutive behavior began. *See* 15 U.S.C.

§1125(c)(1); *see also Network v. CBS, Inc.,* 2000 WL 362016, *3 (C.D. Cal. Jan. 18, 2000) (granting

summary judgm ent whe n the defendant's allege dly dilution-causing activ ity began before the

plaintiff's mark became famous).  Here, that is as of April 2004.  Caruso Decl., Ex. 50.

The ROSETTA STONE mark had not achieved general fame in April of 2004.



                                                  Caruso Decl., Ex. 69, 111:6-12; Caruso

Decl., Ex. 31.  This is far below what could be considered "widely recognized" as required by the

statute. *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §24:106 (suggesting that for a

mark to be famous it must have at least 75% awareness in a survey of the general consuming public).

                                        In addition, Rosetta Stone has not provided *any* evidence

relating to whether or not "ros   ettastone.com," "Rosetta World,"  or "Rosetta Stone Language

Learning" are famous.  Summary judgment in Google's favor is also warranted on these marks.

---

[11]    *See also Toro Co. v. ToroHead Inc.,* 2001 WL 1734485, *18 (T.T.A.B. 2001) (while
the mark had achieved "public recognition and renown" it did not fall under "select class of
marks - those with such powerful consumer associations that even non-competing uses can
impinge on their value."); *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 98-99
(2nd Cir. 2001) (requiring mark to have a "substantial degree" of fame like DUPONT, KODAK,
AND BUICK); *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec.,
Ltd.,* 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (summary judgment denying protection of the
longhorn logo because while it may be recognizable to college football fans, it is not famous
among the entire population of the United States).

### B.     There is No Evidence of Likely Damage To The Rosetta Stone Marks.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ Caruso Decl., Ex. 69 120:21-122:8; Caruso Decl., Ex. 32.  These admissions make clear that the use of the  Rosetta Stone marks in advertising on Google has not reduced the ability of those marks to serve as a source identifier for the Rosetta Stone learning software or harmed Rosetta Stone's reputation.

## IV.     ROSETTA STONE CANNOT SUCCEED ON ITS STATE LAW CLAIMS.

Rosetta Stone's common law unfair competition claims under Virginia law fail for the reasons discussed above because they rise and fall with the Lanham Act claims.  *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law.").

Rosetta Stone's unjust enrichment claim also fails because Google and Rosetta Stone have an enforceable contract governing Rosetta Stone's AdWords advertising.  Rosetta Stone's Opposition to Motion to Dismiss, p. 4 (Docket #15 ); Caruso Decl., Ex. 6 ¶ 4.  Under Virginia law, a plaintiff cannot recover on a claim for unjust enrichment if an enforceable contract exists between the parties. *In re Bay Vista of Va., Inc.*, 2009 WL 2900040, *6 (E.D. Va. June 2, 2009) Nor is there any record evidence on an essential element of Rosetta Stone's claim: that Google promised to pay for the use

of Rosetta Stone's mark.  *See Nedrich v. Jones*, 245 Va. 465, 476 (1993) ("One may not recover

under a theory of implied contract simply by showing a benefit to the defendant, without adducing

other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit.").

## V.   ROSETTA STONE'S REMEDIES AGAINST GOOGLE FOR DIRECT INFRINGEMENT ARE LIMITED BY THE INNOCENT PUBLISHER RULE

When a defendant's liability is premised on publishing paid advertising in a newspaper,

magazine, periodical or "electronic communications," and the defendant is an innocent infringer, the

Lanham Act restricts the available remedies to an injunction against  future publication or

transmission of the infringing ads.  15 U.S.C. § 1114(2); *see also Hendrickson v. eBay Inc.*, 165 F.

Supp. 2d 1082, 1095 (C.D. Cal. 2001).

Whether a defendant is an innocent infringer depends on whether it published the infringing

ads with actual malice, as defined in *NY Times v. Sullivan*,  376 U.S. 254 (1964), and its progeny.

*See* Remarks of Subcommittee Chairman Robert Kastenmeier, 134 Cong. Rec. H10420 (Oct. 19,

1988); *World Wrestling Fed'n v. Posters, Inc.*, 2000 U.S. Dist. LEXIS 20357, *3, *8-9 (N.D. Ill.

Sept. 26, 2000); *NBA Props. v. Untertainment Records* LLC, 1999 U.S. Dist. LEXIS 7780, *14, *36-

38 (S.D.N.Y. May 26, 1999).  Under the actual malice standard, the defendant must have had either

actual knowledge that the ads were infringing or must have recklessly disregarded a high probability

that the ads infringed the plaintiff's rights.  *See World Wrestling Federation, Inc.*, 2000 U.S. Dist.

LEXIS 20357 at *9.  There is no evidence that  Google had actual knowledge that any ads it

displayed were infringing.   *See* Sections I.C.2.ii, above.   Further, under the innocent infringer

standard, Google is not required to take the proactive steps that Rosetta Stone admits are required to

verify counterfeit goods. *See Hendrickson,* 165 F. Supp. at 1095 (internet service provider is under

no affirmative duty to monitor ads for infringement).  Lacking any proof of actual malice by Google,

Rosetta Stone's remedies for its all of its claims against Google must be limited to injunctive relief.

The injunctive relief allowed under the rule applies only to those specifc sponsored links that Rosetta Stone has informed Google are infringing.  Instructively, the *Hendrickson* court denied the plaintiff's request for an injunc tion against "any and all fals e and/or misleading ads that m ay be posted on eBay's website by users in the future, re gardless of whether they  are the basis of this lawsuit and whether they have been identified by Plaintiff."     *Id.*   The court held that "such an injunction would effectively require eBay to monitor the millions of new ads posted on its website each day and determine, on its own, which of thoseads infringe Plaintiff's Lanham Act rights," and that no law im posed suc h a duty on eBay.    *Id.*  Si milarly here, Rosetta Stone cannot obtain an injunction forcing Google to do more than take down ads that it has ben told are infringing.  Because Google has implemented reasonable measures aimed at limiting the display of ads for poten tially counterfeit products, *see* Section I.C.2.ii, injunctive relief may not be imposed here.  *See id.*

## CONCLUSION

For the reas ons set forth above, an d based on  the declarations and exh ibits subm itted herewith, Google respectfully requests that summary judgment be entered in its favor on all counts of Rosetta Stone's First Amended Complaint, and on Google's status as an innocent publisher under 15 U.S.C. § 1114(2).

<div style="margin-left:auto">

Respectfully Submitted,

GOOGLE INC.
By counsel

</div>

_____  /s/  _____
Jonathan D. Frieden, Esquire (VSB No. 41452)
Stephen A. Cobb, Esquire (VSB No. 75876)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia  22031
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
stephen.cobb@ofplaw.com

Margret M. Caruso, Esquire (Admitted *Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  650-801-5000
Facsimile:  650-801-5100
margretcaruso@quinnemanuel.com
*Counsel for Defendant Google Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 26th day of March, 2010, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

> Warren Thomas Allen, II, Esquire
> SKADDEN ARPS SLATE MEAGHER & FLOM LLP
> 1440 New York Ave NW
> Washington, DC 20005-2111
> 202-371-7126
> Fax: 202-661-9063
> Email: wtallen@skadden.com
> *Counsel for Plaintiff Rosetta Stone Ltd.*

> _____/s/_____
> Jonathan D. Frieden, Esquire (VSB No. 41452)
> Stephen A. Cobb, Esquire (VSB No. 75876)
> ODIN, FELDMAN & PITTLEMAN, P.C.
> 9302 Lee Highway, Suite 1100
> Fairfax, Virginia  22031
> (703) 218-2100
> (703) 218-2160 (facsimile)
> jonathan.frieden@ofplaw.com
> stephen.cobb@ofplaw.com
> *Counsel for Defendant Google Inc.*