IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| ROSETTA STONE LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civ. Action No. 1:09-cv-00736(GBL/TCB) |
| | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ROSETTA STONE LTD.'S OPPOSITION TO
GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT**

# FILED IN PART UNDER SEAL

Of Counsel:
Mitchell S. Ettinger
(*Pro hac vice*)
Clifford M. Sloan
(*Pro hac vice*)
Jennifer L. Spaziano
(*Pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111

Warren T. Allen II
Virginia Bar Number 72691
*Attorney for Plaintiff Rosetta Stone Ltd.*
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
(202) 371-7000
(202) 393-5760
wtallen@skadden.com

April 9, 2010

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

STATEMENT OF DISPUTED FACTS .....................................................................................3

ARGUMENT ...........................................................................................................................6

I.      ROSETTA STONE HAS PROVED DIRECT TRADEMARK LIABILITY ...................7

        A.      Google Does Not Dispute That The First Four Elements Of A Trademark
                Infringement Claim Are Met .............................................................................7

        B.      Contrary To Google's Assertions, The Record Evidence Demonstrates That
                Google Uses The Rosetta Stone Marks In A Manner Likely To Confuse
                Consumers ........................................................................................................8

        C.      Google's Remaining Attempts To Evade Liability For Direct Infringement
                Are Unavailing ................................................................................................13

                1.      Google's Use Of The Rosetta Stone Marks Is Actionable ......................13

                2.      Google's Practices Fall Outside The Scope Of The First Sale Doctrine ...15

                3.      The Rosetta Stone Marks Are Not Functional .........................................16

                4.      Google Uses The Rosetta Stone Marks In Ad Text .................................18

II.     ROSETTA STONE HAS PROVED SECONDARY TRADEMARK LIABILITY .........19

        A.      Google Is Liable For Contributory Infringement ...............................................19

        B.      Google Is Liable For Vicarious Infringement ....................................................23

III.    ROSETTA STONE HAS PROVED TRADEMARK DILUTION ..................................24

IV.     ROSETTA STONE HAS PROVED UNJUST ENRICHMENT .....................................26

V.      GOOGLE IS NOT AN INNOCENT PUBLISHER .......................................................28

CONCLUSION .......................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444 (E.D. Va. 1998) ........................................26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................6

*Appleton v. Bondurant & Appleton, P.C.*, 67 Va. Cir. 95,
    2005 WL 517491 (Va. Cir. Ct. 2005) ...............................................................................27

*Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903 (Fed. Cir. 1984) ...................................15

*Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165 (11th Cir. 1991) ...........................................19

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*,
    550 F. Supp. 2d 657 (W.D. Tex. 2008) .............................................................................25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................................6

*Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409 (S.D. Tex. 1995) ...............17

*Dial One of the Mid-South, Inc. v. BellSouth Telecommc'ns, Inc.*,
    269 F.3d 523 (5th Cir. 2001) ...........................................................................................29

*Diane von Furstenberg Studio v. Snyder*, No. 1:06cv1356(JCC),
    2007 WL 2688184 (E.D. Va. Sept. 10, 2007) ..............................................................25, 26

*Fila U.S.A., Inc. v. Kim*, 884 F. Supp. 491 (S.D. Fla. 1995) .......................................................9

*GEICO v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004) ........................................8, 19, 24

*Google, Inc. v. Am. Blind & Wallpaper*, No. C 03-5340 JF (RS),
    2007 WL 1159950 (N.D. Cal. Apr. 18, 2007) ....................................................................8

*Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505 (E.D. Va. 2003) ...................25

*Gucci Am., Inc. v. Duty Free Apparel*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003) ...............................9

*Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001) ...........................................29

*In re Bay Vista of Va., Inc.*, No. 2:09cv46, 2009 WL 2900040 (E.D. Va. June 2, 2009) .............27

*Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227 (N.D. Ill. 1996) .................................................25

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982) .................................................17, 19

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922 (4th Cir. 1995) .............24

ii

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,*
 507 F.3d 252 (4th Cir. 2007)......................................................................................24, 25

*Nossen v. Hoy*, 750 F. Supp. 740 (E.D. Va. 1990) ........................................................................26

*Panavision Int'l L.P. v. Toeppen*, 945 F. Supp. 1296 (C.D. Cal. 1996) ......................................25

*PETA v. Doughney*, 263 F.3d 359 (4th Cir. 2001)..........................................................................7

*PETA v. Doughney*, 113 F. Supp. 2d 915 (E.D. Va. 2000),
 *aff'd*, 263 F.3d 359 (4th Cir. 2001) ..................................................................................26

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ..........................................19

*Phillip Morris U.S.A., Inc. v. Shalabi*, 352 F. Supp. 2d 1067 (C.D. Cal. 2004)............................9

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004) ...................17

*Po River Water and Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108 (1998)....27

*Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159 (1995)..................................................16

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009) ......................................................8

*S. Biscuit Co. v. Lloyd*, 174 Va. 299 (1940) .................................................................................27

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996)..........................11, 13

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995) .........................15

*Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1993) ......................................16, 17

*Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991)...............................14

*Stormar, a Div. of Fuqua Indus. v. Johnson*, 587 F. Supp. 275 (W.D. Mich. 1984)....................15

*Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc.*,
 266 F. Supp. 2d 457 (E.D. Va. 2003) .................................................................................8

*TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88 (2d Cir. 2001)...........................25

*The Network Network v. CBS, Inc.*, No. 98-1349 NM (ANX),
 2000 WL 362016 (C.D. Cal. Jan. 18, 2000) ....................................................................25

*Tiffany Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. 2008).................................................20

*Tiffany Inc. v. eBay, Inc.*, -- F.3d --, 2010 U.S. App. LEXIS 6735 (Apr. 1, 2010) ...............20, 22

*Toro Co. v. ToroHead Inc.*, No. 114,061, 2001 WL 1734485 (T.T.A.B. Dec. 12, 2001) ............25

iii

*Traffix Devices, Inc. v. Mkt. Displays, Inc.*, 532 U.S. 23 (2001)..................................................16

*Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.*,
    943 F. Supp. 551 (E.D. Pa. 1996)..................................................19

*Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268 (Fed. Cir. 2002)...........................................17

*Volkswagen, AG v. Volkswagentalk.com*, 584 F. Supp. 2d 879 (E.D. Va. 2008).........................25

*WAWA Dairy Farms v. Haaf*, 40 U.S.P.Q.2d (BNA) 1629 (E.D. Pa. 1996),
    *aff'd*, 116 F.3d 471 (3d Cir. 1997) ..................................................25

*X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*,
    155 F. Supp. 2d 577 (E.D. Va. 2001) ..................................................11

## STATUTES AND RULES

15 U.S.C. § 1114..................................................*passim*

15 U.S.C. § 1125..................................................*passim*

Fed. R. Civ. P. 56..................................................6

Rosetta Stone Ltd. respectfully submits this opposition to Google Inc.'s motion for summary judgment. For the reasons that follow, Google's motion should be denied and Rosetta Stone's motion for partial summary judgment as to liability should be granted.

## INTRODUCTION

In its motion for partial summary judgment, filed on March 26, 2010, Rosetta Stone established that it is entitled to summary judgment as to liability because there are no genuine issues of material fact as to Google's violations of the Lanham Act and Virginia law. (Dkt. Nos. 103-110.) In particular, Rosetta Stone established that Google (i) is directly liable for trademark infringement because Google uses the Rosetta Stone Marks[1] in a manner that is likely to confuse – and in fact has confused – consumers and (ii) is liable for the trademark infringement of its customers because it intentionally induces its customers to infringe the Rosetta Stone Marks, continues to sell Sponsored Links to entities that it knows are engaging in trademark infringement, and has the legal right and practical ability to stop the infringing conduct yet fails to do so. Rosetta Stone also established that Google is liable for trademark dilution because its conduct has resulted in the blurring and tarnishment of the Rosetta Stone Marks. Finally, Rosetta Stone established that Google has been unjustly enriched because it knowingly uses and sells the Rosetta Stone Marks for its own profit without compensating Rosetta Stone.

In seeking summary judgment in *its* favor, Google mischaracterizes Rosetta Stone's position, asserting that Rosetta Stone challenges *all* uses of the Rosetta Stone Marks on Google's website. (Dkt. 118, Google Mem. at 1-2.) From this faulty premise, Google claims that Rosetta Stone's intent is to "deprive consumers of the ability to efficiently comparison shop for language products, find the best prices for Rosetta Stone products, easily locate product reviews, and

---

[1] The "Rosetta Stone Marks" include ROSETTA STONE, ROSETTA STONE LANGUAGE LEARNING SUCCESS, ROSETTASTONE.COM and ROSETTA WORLD.

explore other competitive products." (*Id.* at 2.) Rosetta Stone intends no such thing, and as Google points out in its motion, Rosetta Stone's CEO plainly stated at his deposition that there are numerous legitimate and permissible uses of the Rosetta Stone Marks. (*See id.* at 1.)

What is impermissible – and what Rosetta Stone seeks to stop – is Google's unauthorized use and sale of the Rosetta Stone Marks as keywords that trigger third-party, Sponsored Links on Google search-results pages. Although Google seeks to cloak itself in decades of case law, not a single one of the cases cited by Google (including the opinion by Justice Oliver Wendell Holmes with which Google opens its brief) involved a defendant selling the use of another company's trademark.

As discussed herein, contrary to Google's portrayal of itself as a mere "publisher" of advertisements, Google (i) encourages its customers to bid on trademarked terms so that their Sponsored Links appear when a user searches for the trademarks terms; (ii) encourages its customers to use the trademarked terms in their Sponsored Link text to increase the likelihood that a user will click on the Sponsored Link; and (iii) reaps a profit every time a user clicks on a Sponsored Link. Google's use of the Rosetta Stone Marks in this manner has confused consumers, diluted the Rosetta Stone Marks and diverted Rosetta Stone's customers to competitors and counterfeiters. As such, Google's conduct violates the Lanham Act and Virginia law.

In arguing otherwise, Google asks this Court to ignore (i) its own involvement in the Sponsored Link campaigns of its customers; (ii) what is actually happening on Google's website every day; (iii) ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪; (iv) the testimony of five college-educated consumers who were so confused by Google's Sponsored Links that they unknowingly

2

purchased counterfeit Rosetta Stone software; and (v) the fact that Google profits every time a Google user "clicks" on *any* Sponsored Link that appears when a user queries a Rosetta Stone Mark. In fact, the cornerstone of Google's motion is its unsupported assertion that "[i]f any ads are lawful, it necessarily follows that Google's policy as a whole cannot violate the law." (Google Mem. at 13.) Even if Google were correct in its absurd assertion that a single lawful ad renders its *policies* immune from challenge, the question presented in this case is whether Google's *practices* violate the law. As demonstrated in Rosetta Stone's motion for summary judgment and below, they do. Google's motion for summary judgment should be denied.

## STATEMENT OF DISPUTED FACTS



3.  Disputed.

4.  Disputed.

5.  Disputed.

---

[2] Unless otherwise noted, exhibit references herein are to the exhibits attached to the Declaration of Jennifer L. Spaziano in Opposition to Google's Motion for Summary Judgment and Its Motion to Exclude Expert Report and Opinion of Dr. Kent Van Liere.

3



8.  Disputed.  As a legal matter, for all the reasons discussed in Rosetta Stone's summary judgment motion and below, Google *is* responsible for the infringing conduct of its customers.  As a factual matter, numerous Google documents demonstrate that Google assists its customers in developing the content of such Sponsored Links and ultimately controls the content of those Sponsored Links.  (Exs. 20-23 & Ex. 24 at 10.)

11.  Disputed.



13.  Disputed.

14. <u>Disputed</u>. 

15. <u>Disputed</u>.

16. <u>Disputed</u>.

17. <u>Disputed</u>. *See* Paragraph 15.

19.



29.   <u>Disputed</u>.

## **ARGUMENT**

Summary judgment should only be granted when a party bearing the burden at trial fails to make a showing sufficient to establish an essential element of the case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), such that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment will not be granted when a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *Id.* at 247-48. As discussed below, far from

---

[3]   Rosetta Stone does not agree with Google's characterization of the facts set forth in paragraphs 1, 2, 6, 7, 9, 10, 12, 18, 20-28 and 30, but does not dispute them for purposes of this motion. The purported facts set forth in paragraphs 18, 20, 21, 26, 27 and 30, moreover, are not relevant to the issues presented in this case.

6

providing a basis for granting summary judgment in favor of *Google*, the record evidence demonstrates that *Rosetta Stone* is entitled to summary judgment as to liability.

## I.     ROSETTA STONE HAS PROVED DIRECT TRADEMARK LIABILITY

To prove a claim for direct infringement, Rosetta Stone must demonstrate that (1) it possesses the Rosetta Stone Marks; (2) Google used the Rosetta Stone Marks; (3) Google's use of the Marks occurred in commerce; (4) Google used the Marks in connection with the sale, offering for sale, distribution, or advertising of goods and services; and (5) Google used the Marks in a manner likely to confuse customers. 15 U.S.C. §§ 1114; *PETA v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). As set forth in Rosetta Stone's motion for partial summary judgment, Rosetta Stone has done so. (Dkt. 104, Rosetta Stone Mem. at 16-24.) Nothing in Google's motion for summary judgment compels a different conclusion.

### A.     Google Does Not Dispute That The First Four Elements Of A Trademark Infringement Claim Are Met

Although it is Google's burden in seeking summary judgment to demonstrate that Rosetta Stone cannot prove an essential element of its case, Google does not once identify the elements of a trademark infringement claim. (Google Mem. at 8-23.) Instead, Google dissects its trademark policies, asserting that the Court first should consider whether the use of the Rosetta Stone Marks to refer to the company or its products is actionable, then assess whether keyword bidding infringes the Rosetta Stone Marks, and finally determine whether the use of the Rosetta Stone Marks in Sponsored Link text constitutes infringement. In presenting its argument in this fashion, Google attempts to obfuscate its practices. In this regard, Google does not restrict its sale of the Rosetta Stone Marks to customers that are referring to Rosetta Stone or its products – it allows *anyone* to bid on the Rosetta Stone Marks and to have their Sponsored Links displayed when a user queries a Rosetta Stone Mark. (Dkt. 117, Lloyd Decl. Ex. 1.) Likewise, although

Google's trademark policy purports to restrict the actual use of the Rosetta Stone Marks in Sponsored Link text to customers that are referring to Rosetta Stone or genuine Rosetta Stone products, in practice, ███████████████████████████████████████████

███████████████████████████████████████ Moreover, because Google allows customers to use the Rosetta Stone Marks in Sponsored Links appearing on search-results pages displayed when a Rosetta Stone Mark is queried, Google's practice of auctioning trademarks as keywords cannot be separated from its practice of allowing customers to use trademarks in Sponsored Link text.

Properly considered, these facts establish that (1) Google uses the Rosetta Stone Marks; (2) Google's use of the Marks occurs in commerce; and (3) Google uses the Marks in connection with the sale, offering for sale, distribution, or advertising of goods and services. *See, e.g.*, *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009); *Google, Inc. v. Am. Blind & Wallpaper*, No. C 03-5340 JF (RS), 2007 WL 1159950 (N.D. Cal. Apr. 18, 2007); *GEICO v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004).[4]

### B. Contrary To Google's Assertions, The Record Evidence Demonstrates That Google Uses The Rosetta Stone Marks In A Manner Likely To Confuse Consumers

The only question remaining then is whether Google used the Rosetta Stone Marks in a manner likely to confuse consumers. *See Rescuecom*, 562 F.3d at 130-31 (stating that Lanham Act violation will lie if Google's use of trademark "in its AdWords program causes likelihood of confusion or mistake" and denying motion to dismiss where likelihood of confusion was

---

[4]    In the Statement of Uncontested Facts, filed on April 2, 2010, Google admitted that the Rosetta Stone Marks have been registered with the United States Patent and Trademark Office. (Dkt. 142 at ¶ 3.) The first element of a trademark infringement claim therefore also is undisputed. *See Sweetwater Brewing Co., LLC v. Great Am. Restaurants, Inc.*, 266 F. Supp. 2d 457, 461-62 (E.D. Va. 2003); *see also* Dkt. 108, May Decl. ¶¶ 2-7 & Exs. 1-6.

sufficiently alleged). Although Google argues that Rosetta Stone cannot meet its burden to show that Google uses the Rosetta Stone Marks in a manner likely to confuse consumers (Google Mem. at 16-18), the record evidence establishes confusion in several ways.

First, confusion is presumed in cases, such as this one, involving counterfeit marks. *See Phillip Morris U.S.A., Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("counterfeit marks are inherently confusing"); *Fila U.S.A., Inc. v. Kim*, 884 F. Supp. 491, 494 (S.D. Fla. 1995) ("Where a counterfeit item is virtually identical to the genuine item, the 'very purpose of the individuals marketing the cheaper [counterfeit] items is to confuse the buying public into believing that it is buying the true article.'"); *Gucci Am., Inc. v. Duty Free Apparel*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion").





Fourth, five individual consumers have testified that they were confused by a Google Sponsored Link displayed on a Google search-results page when they conducted a search for "Rosetta Stone," leading them to buy what they thought was genuine Rosetta Stone product but which, in fact, was counterfeit software. (Ex. 52, Doyle Dep. at 11:15-14:6, 15:4-16:15 & 24:6-11; Ex. 53, DuBow Dep. at 15:2-19:20, 23:19-24:20, 32:20-33:7 & 38:18-43:10; Ex. 62, Jeffries Dep. at 13:5-14:17, 20:2-21:2, 22:16-21 & 24:18-26:2; Ex. 67, Porter Dep. at 12:22-36:21; Ex. 69, Thomas Dep. at 12:4-18:3, 19:12-20:7, 20:20-21:16 & 22:3-7; Calhoun Decl. ¶ 11.)[5] Google

---

[5] Contrary to Google's assertion, all five individuals purchased counterfeit product. Although Diana Stanley Thomas could not locate the software she purchased at the time of her deposition, she purchased the product from sourceplaza.com (Ex. 69, Thomas Dep. at 20:20-
*(cont'd)*

attempts to downplay the significance of this testimony, asserting that five confused customers is *de minimis* as a matter of law. (Google Mem. at 23.) This argument is baseless. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996) (finding likelihood of confusion where six women testified that they had purchased or, in one case, nearly purchased a "Leg Looks" product under the mistaken impression that it was a L'eggs product'); *see also X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 623 (E.D. Va. 2001) ("[e]ven a few instances of actual confusion may be sufficient, taken by themselves, to establish a likelihood of confusion").

In any event, although Rosetta Stone *deposed* only five individuals (the maximum number of non-expert/non-party depositions allowed by this Court), discovery in this case shows that many more individuals have been confused by Google Sponsored Links.



---

*(cont'd from previous page)*

22), the same website from which Denis Doyle purchased his counterfeit software (Ex. 52, Doyle Dep. at 16:6-8). Moreover, although Steve DuBow could not confirm at his deposition where the link from which he purchased counterfeit software appeared, his records show that he purchased the software on October 6, 2009 from bossdisk.com (Ex. 53,



Finally, Rosetta Stone has produced to Google the report of Kent D. Van Liere, a Vice President at NERA Economic Consulting, who conducts market analysis, sampling analysis, and survey research on a wide range of topics regarding consumer decision making, consumer choice and consumer behavior. (Ex. 37 at 1.) Dr. Van Liere conducted a survey and concluded that "a significant portion of consumers in the relevant population are likely to be confused as to the origin, sponsorship or approval of the 'sponsored links' that appear on the search results page after a consumer has conducted a Google search using a Rosetta Stone trademark as a keyword and/or are likely to be confused as to the affiliation, endorsement, or association of the websites linked to those 'sponsored links' with Rosetta Stone." (*Id.* at 2-3.) In particular, Dr. Van Liere's study "concluded that 17 percent of consumers demonstrate actual confusion." (*Id.* at 12.) Although Google's confusion expert Edward A. Blair has submitted a report and declaration which criticize Dr. Van Liere's study, Dr. Blair did not conduct his own study to test the actual confusion that arises as a result of Google's practices. In fact, he testified at his deposition in

12

this case ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████[6]

In short, Rosetta Stone has presented significant evidence of consumer confusion, which stands uncontradicted by Google.[7]

## C. Google's Remaining Attempts To Evade Liability For Direct Infringement Are Unavailing

In its attempt to avoid straightforward application of the elements of a trademark infringement claim, Google presents several arguments that it claims justify its practices and/or render it immune from liability. None of these arguments provides any basis for denying Rosetta Stone's motion for summary judgment – much less for granting judgment in Google's favor.

### 1. Google's Use Of The Rosetta Stone Marks Is Actionable

First, Google argues that the use of the Rosetta Stone Marks to refer to Rosetta Stone products, as a matter of law, is not actionable. (Google Mem. at 8-12.) In so arguing, Google spends pages of its brief explicating the "fundamental purpose" of trademark law, citing decades-old cases that stand for propositions that Rosetta Stone does not controvert. (*Id.* at 8-10.) In this

---

[6]   As explained in Rosetta Stone's opposition to Google's Motion to Exclude Expert Report and Opinion of Dr. Kent Van Liere, there is no basis to exclude Dr. Van Liere's report and opinions. To the contrary, Dr. Van Liere's opinions are both relevant and helpful.

[7]   Google's assertions that Rosetta Stone's customers are "sophisticated" and that "[t]here is no evidence of malicious intent" do not contradict Rosetta Stone's showing of confusion. (Google Mem. at 18-20.) In any event, "buyer sophistication will only be a key factor when the relevant market is not the public at-large." *Sara Lee*, 81 F.3d at 467. Here, the relevant market is "the public at-large." To the extent that buyer sophistication nevertheless is considered, the undisputed facts demonstrate that even "sophisticated" consumers are confused by Google's Sponsored Links: indeed, Rosetta Stone deposed five college-educated consumers who were confused by Google's Sponsored Links ████████ ▄

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

13

regard, contrary to Google's assertion, Rosetta Stone does not seek "word-monopoly" with respect to its trademarks. It simply seeks to prevent Google from selling its Marks to the highest bidder and allowing any third party to display a Sponsored Link on the search-results page when a user queries a Rosetta Stone Mark.



In fact, although Google suggests that the only Sponsored Links that appear on search-results pages for Rosetta Stone Marks are those that provide consumers information they need to identify products and gather information (Google Mem. at 10),



As discussed above, Google's practice of selling the Rosetta Stone Marks as keywords thus has resulted in actual consumer confusion, which is precisely what the trademark laws seek to prevent.[8]

---

[8]    Because Google's practices result in consumer confusion, Google's reliance on cases analyzing true comparative advertising is misplaced. (Google Mem. at 11-12.)

14

### 2. Google's Practices Fall Outside The Scope Of The First Sale Doctrine

Google's reliance on the "first sale doctrine" to justify its use of the Rosetta Stone Marks is misplaced. (Google Mem. at 10.) That doctrine is based on the premise that "trademark law does not apply to the sale of genuine goods bearing a true mark." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991). Thus, "a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995). However, "conduct by the reseller other than merely stocking and reselling genuine trademarked products may be sufficient to support a cause of action for infringement." *Id.* Accordingly, the Federal Circuit concluded that a reseller violated the Lanham Act where it "used the producer's trademark in a telephone directory advertisement in such a way as to suggest the reseller was one of the producer's franchisees." *Id.* (citing *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 911 (Fed. Cir. 1984)). Likewise, where a reseller "displayed the producer's trademark in the reseller's booth at a trade show and in a trade journal advertisement, and stamped the reseller's name on the producer's promotional literature and used it to advertise the resale of the producer's products by the reseller," it was held to have violated the Lanham Act. *Id.* (citing *Stormor, a Div. of Fuqua Indus. v. Johnson*, 587 F. Supp. 275, 279 (W.D. Mich. 1984)).

Here, Google offers the Rosetta Stone Marks at auction to any third party, whether or not a reseller of genuine Rosetta Stone product. (Dkt. 117, Lloyd Decl. Ex. 1.) These third parties bid on the Rosetta Stone Marks and use the Marks in their Sponsored Link text. Thus, Google and its customers do more than "stock, display, and resell" genuine Rosetta Stone product under the Rosetta Stone Marks. The first sale doctrine therefore is inapplicable.

### 3.    The Rosetta Stone Marks Are Not Functional

Google also argues that the use of the Rosetta Stone Marks as keywords is functional and therefore not subject to Lanham Act review. (Google Mem. at 13-15.) The functionality doctrine, however, has no application to Google's sale of the Rosetta Stone Marks to third parties. As Google states, a product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." (*Id.* at 13 (quoting *Traffix Devices, Inc. v. Mkt. Displays, Inc.*, 532 U.S. 23, 32 (2001).) More specifically, as the Supreme Court explained in another case cited by Google:

> The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, 35 U.S.C. §§ 154, 173, after which competitors are free to use the innovation. If the product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

*Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164-65 (1995) (green-gold color of press pads used in dry cleaning and laundry establishments was not functional and met the basic legal requirements for use as a trademark).

So, for example, in *Traffix*, the Supreme Court concluded that the plaintiff's dual-spring design for road signs was functional – it provided a "unique and useful mechanism to resist the force of the wind" – and therefore was not entitled to trade dress protection. 523 U.S. at 33-34. Likewise, in *Sega Enters. Ltd. v. Accolade, Inc.*, the court found that an initialization code was a functional feature that must be included in a video game program in order for the game to operate on plaintiff's video game system and that defendant therefore could not be barred from using the code in manufacturing video games for plaintiff's video game system. 977 F.2d 1510,

1530-31 (9th Cir. 1993); *see also Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409, 1423 (S.D. Tex. 1995) (use of plaintiff's mark in vendor ID portion of drive's firmware was functional and not entitled to trademark protection). And in *Valu Eng'g, Inc. v. Rexnord Corp.*, applicant's cross-sectional designs of conveyor guide rails were found to be functional and thus not subject to trademark protection. 278 F.3d 1268, 1279 (Fed. Cir. 2002).

Here, the Rosetta Stone Marks are not functional as they are not essential to the use or purpose of Rosetta Stone's products and they do not affect the cost or quality of those products. The functionality doctrine therefore is inapplicable. In relying on the functionality doctrine, Google turns the doctrine on its head – arguing that because *Google's* product operates better by using trademarks as keywords, its "use of Rosetta Stone's marks as keyword triggers is therefore a non-infringing, functional use." (Google Mem. at 15.) Google's argument also ignores the fact that, after years of prohibiting the use of trademarks as keyword triggers, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Thus, it is the goodwill associated with the trademarks themselves – not any functionality that they provide – that makes their use by Google lucrative. Neither the functionality doctrine nor any case that Google cites supports the claim that such use falls within the purview of the functionality doctrine. Google's functionality argument therefore should be rejected. *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1031 (9th Cir. 2004) (finding that functionality doctrine has no application to defendant search engine operators' use of plaintiff's trademarks: "[t]he fact that the marks make *defendants'* computer program more functional is irrelevant").[9]

---

[9] Even if the functionality doctrine were applicable, "[t]he question whether a product feature is functional is a question of fact." *Sega*, 977 F.2d at 1530 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 835 (1982)).

### 4. Google Uses The Rosetta Stone Marks In Ad Text

Finally, Google argues that it cannot be held directly liable for third-party use of the Rosetta Stone Marks in Sponsored Links because "Google does not determine the content of the ads; it merely publishes them." (*Id.* at 15.) Numerous Google documents, however, demonstrate Google's involvement in the development of Sponsored Link text, including Google's recommendation that customers feature trademarks in text.



Thus, contrary to Google's assertions, Google is not merely a publisher of text provided by its customers, Google is an active participant in the development of the Sponsored Links.[10]

In short, Rosetta Stone has proved direct trademark infringement. Google's motion for summary judgment must be denied.

---

[10] Google's involvement in this process in not surprising given Google's business model. As Google readily acknowledges, Google does not get paid when a Sponsored Link is *shown* on a search-results page. It is paid on a "cost-per-click" basis. When a Google user "clicks" on a Sponsored Link in Google's search results page, the advertiser pays Google for the click. (Dkt. 142, Stipulation of Uncontested Facts ¶ 11.) Thus, it is in Google's economic interest to assist its advertisers in developing text that is likely to lead a user to click on the Sponsored Link.

## II.    ROSETTA STONE HAS PROVED SECONDARY TRADEMARK LIABILITY

Rosetta Stone also has demonstrated Google's liability for the trademark infringement of its customers. As Google acknowledges, to prove contributory infringement, Rosetta Stone must prove that Google "intentionally induces another to infringe" or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." (Google Mem. at 23-24 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)).) To prove vicarious infringement, Rosetta Stone must prove that Google and its customers controlled the appearance of the Sponsored Links on Google's search-results pages and the use of Rosetta Stone's trademarks therein. *GEICO v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). As demonstrated in Rosetta Stone's motion for partial summary judgment, the undisputed facts support liability on all of these bases. (Rosetta Stone Mem. at 24-27.)

### A.    Google Is Liable For Contributory Infringement

Google does not even address the first way to establish contributory infringement – *i.e.*, intentionally inducing others to infringe. Google simply says that it does not do so. (Google Mem. at 24.)    As demonstrated in Rosetta Stone's motion, however, the record contains undisputed evidence that Google intentionally induces customers to bid on trademarked terms as keyword triggers and to use trademarked terms in the text and title of their Sponsored Links. Such conduct constitutes intentional inducement. *See Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165 (11th Cir. 1991) (defendant sales representatives who asked lamp manufacturer to produce infringing lamps held liable for contributory trade dress infringement); *Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 553 (E.D. Pa. 1996) (finding that a contributory infringement claim could be made against a retail/distributor who knowingly selected plaintiff's mark and who encouraged a manufacturer to copy plaintiff's mark).

In arguing that it is not responsible for the trademark infringement of its customers under the second prong of the contributory infringement standard, Google relies on the district court opinion in *Tiffany Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 469 (S.D.N.Y. 2008). (Google Mem. at 24.) Last week, the Second Circuit affirmed that decision in relevant part in an opinion that makes clear that Google *is* responsible for the trademark infringement of its customers here. In this regard, the Second Circuit's conclusion that eBay was not contributorily liable for the sale of counterfeit Tiffany products on its website turned on the fact that Tiffany "failed to demonstrate that eBay was supplying its service to individuals who it knew or had reason to know were selling counterfeit Tiffany goods." *Tiffany Inc. v. eBay, Inc.*, -- F.3d --, 2010 U.S. App. LEXIS 6735, at *41 (Apr. 1, 2010). Here, in contrast, Rosetta Stone has demonstrated that Google was selling the Rosetta Stone Marks as keywords to individuals who it knew or had reason to know were selling counterfeit Rosetta Stone goods.







---

[11] In sharp contrast to the specific notice provided by Rosetta Stone to Google, Tiffany's demand letters to eBay "did not identify particular sellers who Tiffany thought were then offering or would offer counterfeit goods." *Tiffany*, 2010 U.S. App. LEXIS 6735, at *41.



This record evidence thus contradicts Google's assertion that "[t]he undisputed evidence shows that if an advertiser breaches its contractual obligations to Google by advertising a counterfeit Rosetta Stone product, upon receiving notification of the ad's questionable status, Google acts promptly to ensure that it does not 'continue[] to supply its product' to that advertiser." (Google Mem. at 24 (citations omitted).) Because Google continued to supply its product to known infringers, Google is liable for contributory infringement.

## B.    Google Is Liable For Vicarious Infringement

With respect to vicarious infringement, Google argues only that it lacks an agency relationship with its AdWords customers and therefore cannot be held liable for the conduct of the customers. (Google Mem. at 25.) In so arguing, Google too narrowly construes vicarious infringement. Vicarious liability arises not only when an agency relationship exists but also

(cont'd from previous page)

when the "defendant and the infringer 'exercise joint ownership and control over the infringing product.'" *GEICO*, 330 F. Supp. 2d at 705. Thus, Judge Brinkema denied Google's motion to dismiss GEICO's vicarious infringement claim where GEICO alleged that Google controls the appearance of the Sponsored Links that appear on its search-results pages and the use of GEICO's marks therein. *Id.* Here, the undisputed facts demonstrate that Google controls both the appearance of the Sponsored Links that appear on its search-results pages and the use of the Rosetta Stone Marks in those Links. (*See* Disputed Fact ¶ 5, § I.C.4.) Accordingly, Google is liable to Rosetta Stone for vicarious infringement as well. [13]

## III.    ROSETTA STONE HAS PROVED TRADEMARK DILUTION

To prove a dilution claim, Rosetta Stone must demonstrate (1) that it owns a famous mark that is distinctive; (2) that Google has commenced using a mark in commerce that allegedly is diluting Rosetta Stone's famous mark; (3) that a similarity between Google's mark and Rosetta Stone's famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark. *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007); *see also* 15 U.S.C. § 1125(c)(1) (2006). The undisputed facts demonstrate that Rosetta Stone is entitled to summary judgment as to liability on its dilution claim. (Rosetta Stone Mem. at 27-29.)

[ redacted ]

---

[13] Because the test for trademark infringement under the Lanham Act is essentially the same as that for common law trademark infringement and unfair competition under Virginia law, Rosetta Stone also is entitled to summary judgment on its common law infringement and unfair competition claims. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995).

████████████████████████████████ (Google Mem. at 27.)[14] Google

nevertheless argues that it cannot be held liable for diluting the Rosetta Stone Marks because "Rosetta Stone" was not a famous mark in 2004. (*See* Google Mem. at 26-27.) Basically, Google argues that because "Rosetta Stone" had not achieved general fame in April 2004 when Google started its practice of selling trademarks to the highest bidder, it is not liable to Rosetta Stone for the blurring and tarnishment of the Rosetta Stone Marks that result from Google's practices today. (*See id.*) Google's argument is factually and legally unsound.

As a factual matter, "Rosetta Stone" was a famous mark in 2004. (*See* Rosetta Stone Mem. at 27-29 & UF 1-4 & 8.) As a legal matter, this case does not involve a situation where the defendant is using a mark similar to the plaintiff's mark on *its own* goods – the situation underlying all the cases cited by Google.[15] Rather, this case involves Google's sale of the

---

[14]  *Louis Vuitton*, 507 F.3d at 265 (Louis Vuitton's LVM mark is famous); *Volkswagen, AG v. Volkswagentalk.Com*, 584 F. Supp. 2d 879 (E.D. Va. 2008) (Volkswagen is famous); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505 (E.D. Va. 2003) (GMAT is famous); *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1239 (N.D. Ill. 1996) (INTERMATIC is famous); *Panavision Int'l L.P. v. Toeppen*, 945 F. Supp. 1296, 1302 (C.D. Cal. 1996) (PANAVISION is famous); *WAWA Dairy Farms v. Haaf*, 40 U.S.P.Q.2d (BNA) 1629, 1631 (E.D. Pa. 1996) (WAWA is famous), *aff'd*, 116 F.3d 471 (3d Cir. 1997).

[15]  *The Network Network v. CBS, Inc.*, No. 98-1349 NM (ANX), 2000 WL 362016, at *3 (C.D. Cal. Jan. 18, 2000) (plaintiff used "TNN" as service mark for computer network consulting company while defendant used "TNN" as service mark for "The Nashville Network" cable television network); *Toro Co. v. ToroHead Inc.*, No. 114,061, 2001 WL 1734485 (T.T.A.B. Dec. 12, 2001) (applicant sought to register the mark "ToroMR" for magnetic reading and writing heads while opposer used mark "TORO" on a variety of goods and services); *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88 (2d Cir. 2001) (plaintiff used "The Children's Place" as trademark for children's clothing store while defendant registered the domain name "thechildrensplace.com" as webpage that would facilitate surfing the web for materials concerning children); *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657 (W.D. Tex. 2008) (plaintiff used longhorn silhouette logo to refer to its university mascot while defendant used longhorn silhouette logo to refer to its electric company).

Rosetta Stone Marks themselves. Given that Google uses the Rosetta Stone Marks *because* they are famous, its attempt to avoid liability based on the date the Marks became famous is untenable.

Google's attempt to avoid liability by claiming that there is no evidence of likely "damage" to the Rosetta Stone Marks given the current strength of the Marks is equally baseless. (*See* Google Mem. at 27.) Damage is *not* an element of a dilution claim; rather, Rosetta Stone must show that Google's use of the Marks is likely to impair the distinctiveness of or harm the reputation of the Rosetta Stone Marks. Courts routinely have found dilution by blurring where, as here, the defendant has used the plaintiff's actual mark. *See, e.g.*, *Diane von Furstenberg Studio v. Snyder*, No. 1:06cv1356(JCC), 2007 WL 2688184, at \*4 (E.D. Va. Sept. 10, 2007) (granting plaintiff summary judgment on its dilution claim where the defendant used the identical mark); *PETA v. Doughney*, 113 F. Supp. 2d 915, 920 (E.D. Va. 2000), *aff'd*, 263 F.3d 359 (4th Cir. 2001) (same). Likewise, courts routinely have found dilution by tarnishment where, as here, the plaintiff's mark has been linked to counterfeit products. *See, e.g.*, *Diane von Furstenberg Studio*, 2007 WL 2688184, at \*4 (finding tarnishment); *Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 450 (E.D. Va. 1998) (finding tarnishment). For these reasons, Rosetta Stone – not Google – is entitled to summary judgment on its trademark dilution claim.

## IV.    ROSETTA STONE HAS PROVED UNJUST ENRICHMENT

Under Virginia law, a plaintiff seeking recovery for unjust enrichment must show (1) that it "conferred" a benefit on the defendant, (2) that the defendant knew of the benefit and should reasonably have expected to repay the plaintiff, and (3) that the defendant accepted or retained the benefit without paying for its value. *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990). Judge Davis recently explained that the word "conferred" in this context includes situations in which the defendant, without authorization, takes a benefit from the plaintiff even

26

when the plaintiff has not voluntarily bestowed the benefit on the defendant. *See In re Bay Vista of Va., Inc.*, No. 2:09cv46, 2009 WL 2900040, at \*5 (E.D. Va. June 2, 2009).

Google argues that it is entitled to summary judgment because there is no record evidence that Google promised to pay for the use of the Rosetta Stone Marks. (Google Mem. at 28.) The promise to pay, however, "is implied from the consideration received." *Appleton v. Bondurant & Appleton, P.C.*, 67 Va. Cir. 95, 2005 WL 517491, at \*6 (Va. Cir. Ct. 2005) (citations omitted); *see also Po River Water and Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 114-15 (1998). Here, the undisputed facts demonstrate that Google accepted, or took without authorization, the Rosetta Stone Marks and made them available to third parties at auctions hosted by Google. It is also undisputed that Google derived considerable profits from the unauthorized auction of the Rosetta Stone Marks. The promise to pay for this benefit is implied in law from the unauthorized taking and subsequent sale of the Rosetta Stone Marks.

Google also argues that Rosetta Stone's unjust enrichment claim fails because Google and Rosetta Stone have an enforceable contract governing Rosetta Stone's purchase of Sponsored Links. (Google Mem. at 27-28.) However, an express contract will preclude an unjust enrichment claim only where the express contract governs the "same subject matter" that gives rise to the unjust enrichment claim. *Appleton*, 2005 WL 517491, at \*6 (quoting *S. Biscuit Co. v. Lloyd*, 174 Va. 299, 311 (1940) ("an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature *containing the same subject matter*")) (emphasis added). Here, there is no contract between Google and Rosetta Stone that governs or even addresses Google's right to auction Rosetta Stone's trademarks to third parties. The contract between Google and Rosetta Stone merely delineated *what Rosetta Stone agreed to pay to* Google for Rosetta Stone's Sponsored Links. It cannot be construed as an

express contract between Google and Rosetta Stone governing Google's rights and obligations vis-à-vis third parties and its AdWords auctions.

## V.     GOOGLE IS NOT AN INNOCENT PUBLISHER

In the last section of its summary judgment brief, Google argues that Rosetta Stone's remedies against Google for direct infringement are limited by the innocent publisher rule. (Google Mem. at 28-29.) This rule, however, has no application to the facts of this case. It provides, in relevant part:

> Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication . . ., the remedies of the owner of the right infringed or person bringing the action . . . as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

15 U.S.C. § 1114(2)(B). Here, Google is not merely the "publisher" or "distributor" of the Sponsored Links – it creates the opportunity for infringement by allowing third parties to bid on the Rosetta Stone Marks as keywords to trigger Sponsored Links, it increases the likelihood of consumer confusion by allowing third parties to use the Rosetta Stone Marks in the text of Sponsored Links, it encourages customers to bid on trademarks as keyword triggers and it encourages customers to use trademarks in Sponsored Link text. Google thus is an active participant in the infringement at issue and cannot claim protection as a mere publisher.

In any event, Google is not an "innocent" infringer. Relying on an unpublished decision from the Northern District of Illinois, Google asserts that a defendant is an innocent infringer unless it had actual knowledge that the ads were infringing or recklessly disregarded a high

probability that the ads infringed the plaintiff's rights. (Google Mem. at 28.)[16] Assuming arguendo that this Circuit would adopt the stringent standard adopted by the Northern District of Illinois, Google still would not be deemed an innocent infringer. Contrary to Google's assertion, there is irrefutable evidence that Google had actual knowledge that the Sponsored Links it displayed were infringing. (*See* Section II.A., *supra*.)

Even if Google could avail itself of the "innocent infringer" rule, Google is incorrect in its assertion that "injunctive relief may not be imposed here." (Google Mem. at 29.) In *Hendrickson v. eBay, Inc.*, the case on which Google relies for this proposition, the court concluded that injunctive relief was not appropriate because (i) eBay represented that it had stopped running all the advertisements claimed to be infringing and that it had no intention of running the identified advertisements in the future; (ii) eBay's evidence showed that it had removed from its website the allegedly false and misleading advertisements at issue in the case; and (iii) the plaintiff had offered no evidence that contradicted this showing. 165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001). No such evidence has been presented here. To the contrary, Google continues to allow its customers to bid on the Rosetta Stone Marks and it continues to allow customers to use the Rosetta Stone Marks in ad text ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[17]

---

[16] Notably, the Fifth Circuit – the only appellate court to have addressed the innocent publisher defense in the trademark context – has rejected this interpretation, finding that an objective reasonableness standard applies. *See Dial One of the Mid-South, Inc. v. BellSouth Telecommc'ns, Inc.*, 269 F.3d 523, 526-27 (5th Cir. 2001) (affirming district court's conclusion that defendant's failure to remove infringing mark from phone books was not objectively reasonable).

[17] ████████████████████████████████████████████████████

*(cont'd)*

For all these reasons, the innocent publisher rule has no application here and Rosetta Stone's remedies are not limited in any respect.

## CONCLUSION

For the foregoing reasons, Rosetta Stone respectfully requests that this Court deny Google's motion for summary judgment and grant Rosetta Stone's motion for partial summary judgment as to liability on all its federal and state law claims.

Respectfully submitted,

_____April 9, 2010_____

Of Counsel:
Mitchell S. Ettinger
(*Pro hac vice*)
Clifford M. Sloan
(*Pro hac vice*)
Jennifer L. Spaziano
(*Pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111

/s/_____
Warren T. Allen II
Virginia Bar Number 72691
*Attorney for Plaintiff Rosetta Stone Ltd.*
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
(202) 371-7000
(202) 393-5760
wtallen@skadden.com

*(cont'd from previous page)*



30

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2010 I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

Jonathan D. Frieden
ODIN, FELDMAN & PETTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
jonathan.frieden@ofplaw.com

*Counsel for Defendant, Google Inc.*

True and correct copies of documents filed under seal will be sent electronically to:

jonathan.frieden@ofplaw.com
margretcaruso@quinnemanuel.com

| | |
|---|---|
| <u>April 9, 2010</u> | <u>/s/</u> |
| Date | Warren T. Allen II (Va. Bar No. 72691) |
| | Attorney for Rosetta Stone Ltd. |
| | Skadden, Arps, Slate, Meagher & Flom LLP |
| | 1440 New York Avenue, N.W. |
| | Washington, D.C. 20005-2111 |
| | Telephone: (202) 371-7000 |
| | Facsimile: (202) 393-5760 |
| | Warren.Allen@skadden.com |