IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Rosetta Stone Ltd.,           )
                              )
      Plaintiff,              )
                              )
      v.                      )    Case No. 1:09cv736 (GBL/TCB)
                              )
Google Inc.,                  )
                              )
      Defendant.              )

### MEMORANDUM ORDER

THIS MATTER is before the Court on Defendant Google Inc.'s
Motion to Dismiss.  (Dkt. No. 94.)  This case concerns Plaintiff
Rosetta Stone Ltd.'s ("Rosetta Stone") allegations that
Defendant Google Inc. ("Google") actively assists third party
advertisers to mislead consumers and misappropriate Rosetta
Stone's trademarks by using the trademarks (1) as keyword
triggers for paid advertisements and (2) within the text or
title of paid advertisements on Google's website.  The issue
before the Court is whether Rosetta Stone alleges sufficient
facts to support a claim for unjust enrichment under Virginia
law.  The Court grants Google's Motion to Dismiss because (1)
the facts set forth in Rosetta Stone's First Amended Complaint
fail to plausibly suggest a claim for unjust enrichment under
Virginia law and (2) the unjust enrichment claim is barred by
the Communications Decency Act ("CDA").

## I.  BACKGROUND

Based in Arlington, Virginia, Plaintiff Rosetta Stone Ltd. ("Rosetta Stone") is in the business of providing technology-based language-learning products and services.  (First Am. Compl. ¶¶ 7 & 14.)  To preserve its trademark rights, Rosetta Stone has secured federal trademark registration for many of its trademarks and service marks, including: ROSETTA STONE, ROSETTA STONE LANGUAGE & LEARNING SUCCESS, ROSETTASTONE.COM, and ROSETTA WORLD (the "Rosetta Stone Marks").  (First Am. Compl. ¶¶ 15 & 16.)

Defendant Google Inc. ("Google") is an internet company based in Mountain View, California which owns and operates a search engine—a computer program that allows users to search the World Wide Web for particular information.  (First Am. Compl. ¶¶ 3 & 8.)  Google's search engine is available on its own website as well as other websites that use its search engine.  (First Am. Compl. ¶ 3.)

In 2002, Rosetta Stone began participating in one of Google's advertising programs called AdWords Select Advertising Program ("AdWords Program") as an advertiser.  (First Am. Compl. ¶ 36.)  Advertisers under the AdWords Program pay to have their advertisements ("Sponsored Links") displayed when a web user enters certain words or phrases ("keywords") in Google's search engine.  (First Am. Compl. ¶¶ 36 & 37.)  Advertisers can select

keywords that will trigger the Sponsored Links directing users to the advertisers' chosen website. (First Am. Compl. ¶ 36.) These Sponsored Links appear above or alongside the search page and in a color, typeface, and font size similar to the search results generated from a web user's query. In addition to triggering Sponsored Links, the keywords may also be published as part of the advertisement itself. (First Am. Compl. ¶¶ 38 & 39.) Consequently, advertisers are able to place their advertising in front of consumers who have identified themselves as interested in certain products or services. (First Am. Compl. ¶ 27.)

For many years, Google prohibited advertisers from purchasing specific trademarks as keyword triggers for Sponsored Link advertisements. (First Am. Compl. ¶ 44.) However, Google revised this policy and began allowing advertisers to purchase specific trademarks as keyword triggers for the Sponsored Links. (First Am. Compl. ¶ 44.) Based on Google's new policy, Rosetta Stone brings this action alleging Google's unauthorized use of the Rosetta Stone Marks. Rosetta Stone alleges that by giving other paid advertisers under Google's advertising programs, including AdWords, the right to use the Rosetta Stone Marks, or words, phrases, or terms similar to those Marks as keyword triggers that cause Sponsored Links to be displayed, Google's search engine is helping other advertisers misdirect web users

3

to websites of companies that (i) compete with Rosetta Stone,
(ii) sell language education programs from Rosetta Stone's
competitors, (iii) sell counterfeit Rosetta Stone products, or
(iv) are entirely unrelated to language education.  (First Am.
Comp. ¶ 5.)

In its First Amended Complaint, Rosetta Stone specifically
alleges seven Counts for relief:  I (trademark/service mark
infringement under the Lanham Act); II (contributory
trademark/service mark infringement under the Lanham Act); III
(vicarious trademark/service mark infringement under the Lanham
Act); IV (trademark/service mark dilution under the Lanham Act);
V (trademark infringement under Virginia Law); VI (unfair
competition under Virginia law); and VII (unjust enrichment
under Virginia Law).  Google now moves to dismiss Count VII of
the First Amended Complaint.

## II.   STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should
be granted unless an adequately stated claim is "supported by
showing any set of facts consistent with the allegations in the
complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007)
(internal citations omitted); *see* FED. R. CIV. P. 12(b)(6).  "A
pleading that offers labels and conclusions or a formulaic
recitation of the elements of a cause of action will not do."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550
U.S. at 555. A complaint is also insufficient if it relies upon
"naked assertions devoid of further factual enhancement." *Iqbal*,
129 S. Ct. at 1949 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss a
complaint must set forth "a claim for relief that is plausible on
its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially
plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949;
*Twombly*, 550 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must
construe the complaint in the light most favorable to the
plaintiff, read the complaint as a whole, and take the facts
asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d
1130, 1134 (4th Cir. 1993). In addition to the complaint, the
court may also examine "documents incorporated into the complaint
by reference, and matters of which a court may take judicial
notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.
308, 322 (2007). "Conclusory allegations regarding the legal
effect of the facts alleged" need not be accepted. *Labram v.
Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central
purpose of the complaint is to provide the defendant "fair notice
of what the plaintiff's claim is and the grounds upon which it

5

rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly*, 550 U.S. at 556 n.3.

### III. ANALYSIS

#### A. Unjust enrichment under Virginia law

The Defendant's Motion to Dismiss Count VII is granted because the First Amended Complaint fails to set forth facts to plausibly suggest a claim for unjust enrichment under Virginia law. A claim for unjust enrichment is quasi-contractual in nature and requires a plaintiff to show: (1) it conferred a benefit on the defendant; (2) the defendant knew of the conferring benefit; and (3) the defendant accepted or retained the benefit under circumstances which render it inequitable for the defendant to do so without paying for its value. *Herald Schmidt v. Household Finance Corp.*, 661 S.E.2d 834, 838 (Va. 2008) (citation omitted) (affirming circuit court's decision to sustain defendant corporation's demurrer of plaintiff's unjust enrichment claim for failure to state a claim).

As to the first element, Rosetta Stone sufficiently alleges that it conferred a benefit to Google through Google's use of the Rosetta Stone Marks. Specifically, the First Amended Complaint states:

> Google uses and sells Rosetta Stone's trademarks
> as keywords that trigger third-party, paid

6

advertisements on Google search-results web pages
without authorization from Rosetta Stone. Through
its AdWords program, Google sold, and continues to
sell, Rosetta Stone's trademarks to, among others,
Rosetta Stone's competitors, resellers and
affiliates, and companies illegally selling pirated
and counterfeit Rosetta Stone products. Through
such unauthorized sales of Rosetta Stone's
trademarks, Google has received and continues to
receive millions of dollars in revenue annually.

(First Am. Compl. ¶ 122.)

Through the auction of Rosetta Stone's trademarks
Google unjustly derived a benefit from Rosetta
Stone in the form of higher payments from Rosetta
Stone, increased advertising revenue from third
parties and other economic benefits . . . .

(First Am. Compl. ¶ 123.)

Rosetta Stone requested that Google not auction
its trademarks to third parties, including resellers
and affiliates, but Google has refused to alter its
trademark policy or practices. Rosetta Stone thus
has conferred involuntarily a benefit on Google,
which is knowingly using the goodwill established
in the Rosetta Stone trademarks to derive additional
advertising revenues.

(First Am. Compl. ¶ 124.)

However, Rosetta Stone alleges no facts which show that

Google knew of the alleged benefit such that it would pay

Rosetta Stone for use of the Rosetta Stone Marks as keywords.

Even where a defendant benefited from the plaintiff's services,

the plaintiff cannot recover for an unjust enrichment claim

unless he can show sufficient additional facts which imply that

the defendant promised to pay the plaintiff for the benefit

received.  *See Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993)

7

(citing *Mullins v. Mingo Lime & Lumber Co.*, 10 S.E.2d 492, 495
(Va. 1940)).  Here, the First Amended Complaint contains no
factual allegations which suggest an understanding by Google
that it owed Rosetta Stone revenue earned for paid
advertisements containing the Rosetta Stone Marks.  There are no
factual allegations suggesting that Google engaged in
discussions with Rosetta Stone, or entered into an agreement,
written or oral, regarding Google's trademark policy such that
Rosetta Stone was led by Google to believe it would be paid for
Google's use of the Rosetta Stone Marks as keywords.

Rosetta Stone contends that Google's promise to pay is
implied from the consideration it received, which includes
profits from the alleged unauthorized auction of the Rosetta
Stone Marks.  (First Am. Compl. ¶¶ 33, 62, 122, 123 & 124).
However, in *Appleton v. Bondurant & Appleton, P.C.*, a breach of
contract case where the court denied summary judgment in favor
of defendants on a quantum meruit claim, and the very case which
Rosetta Stone cites to support its contention, the court
reasoned that a plaintiff cannot recover under an unjust
enrichment claim unless he can show "sufficient additional facts
that imply a promise to pay."  No. 04-1106, 2005 WL 517491, at
*5 (Va. Cir. Feb. 28, 2005).  Merely stating that "Google knows
that it is deriving monetary benefits from the sale of Rosetta
Stone's trademarks through its AdWords program and it would be

inequitable for Google to retain those benefits" is insufficient. (First Am. Compl. ¶ 123.) Rather, Rosetta Stone must present factual content beyond labels and conclusions that allow the Court to draw the reasonable inference that Google promised to compensate Rosetta Stone for use of the Rosetta Stone Marks as keywords or should have known that Rosetta Stone reasonably expected payment for use of their Marks. *Iqbal*, 129 S. Ct. at 1949.

The mere fact that a party holds a registration on a mark does not preclude another's use of the mark altogether. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121-22 (2004) (concluding that within the common law and statutory law some overlap of common words is permissible and even expected); *OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 339 (4th Cir. 2009) ("[T]he law also protects the 'linguistic commons' by denying mark holders an exclusive interest in words that do not identify goodwill attached to products or product sources but rather are used for their common meaning or meanings . . . .") Absent allegations of an understanding or agreement between the parties, the First Amended Complaint is also devoid of allegations that Rosetta Stone must necessarily be paid by third parties for the right to auction the Rosetta Stone Marks as keywords. Because the First Amended Complaint fails to set forth facts which satisfy the elements of an unjust enrichment

claim, it thereby fails to satisfy the pleading standards of *Twombly* and *Iqbal*.

## B.   Communications Decency Act

Notwithstanding Rosetta Stone's failure to sufficiently allege the elements of an unjust enrichment claim under Virginia law, the claim is barred by the CDA because Google is no more than an interactive computer service provider[1] and cannot be liable for the actions of third party advertisers.  Pursuant to the CDA, "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1)(1998).  As such, an interactive computer services provider is immune from liability for content created by third parties. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 254 (4th Cir. 2009) (citation omitted); *see Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1124 (9th Cir. 2003) ("[S]o long as a third party willingly provides the essential published content, the interactive provider receives full immunity regardless of the specific editing or selection process.").

Contrary to its contention, Rosetta Stone's claim here

---

[1] On September 18, 2009, the Court dismissed Rosetta Stone's business conspiracy claim under Virginia Code § 18.2-499 after finding that Google is not an information content provider and, therefore, enjoys immunity under the CDA.  (Dkt. No. 19.)

relates to the content of the Sponsored Links appearing on
Google's search results page.  Its claim turns on Google's
relationship with third party advertisers.  Specifically, that
Google earns money when a user decides that a particular
Sponsored Link may be useful and clicks on that link.  (First
Am. Compl. ¶¶ 31-33.)  The user's decision to click on a
Sponsored Link—the act that triggers the third party
advertiser's payment to Google—is in fact driven by content
provided by the advertiser.  Rosetta Stone acknowledges that
third party advertisers are the ones who select the keyword
terms and create the content for the Sponsored Links appearing
on Google's search results page.  (First Am. Compl. ¶¶ 36 & 60.)
As a provider of online advertising space, Google simply assists
third party advertisers in refining their selected keyword
terms, which in turn trigger the appropriate Sponsored Links.
By making available keyword tools and providing advertisers the
ability to refine their keyword term selection, Google does not
create the Sponsored Link contents but merely exercises
editorial discretion.

In *800-JR Cigar, Inc. v. GoTo.com, Inc.*, a case relied on
by Rosetta Stone, the court denied immunity to a pay-for-
priority internet search engine who, like Google, sells to
advertisers the right to use keywords as search terms.  437 F.
Supp. 2d 273, 295 (D.N.J. 2006).  However, *800-JR Cigar* is

distinguishable from the instant case for at least two reasons.
First, the court denied CDA immunity because the defendant,
unlike Google, did not qualify as an interactive computer
service provider.  *Id.*  Second, the court did not deal with a
situation, like here, where third party advertisers are
responsible for selecting the keyword triggers. *Id.* at 295.
Because the purpose of the CDA is to shield interactive computer
providers from the fraudulent and abusive conduct of third
parties, *id.*, it is applicable to the instant case, warrants
granting immunity to Google, and bars Rosetta Stone from any
recovery under a claim for unjust enrichment.

### IV.   CONCLUSION

For these reasons, the Court grants Google's Motion to
Dismiss Count VII of Rosetta Stone's First Amended Complaint.

Because the Court has determined in a separate memorandum
opinion in this case that Google's action or words does not give
rise to civil liability to Rosetta Stone, this dismissal is with
prejudice as further amendment would be futile.  *Foman v. Davis,
Ex'x*, 371 U.S. 178, 182 (1962).

The Clerk is directed to forward a copy of the Memorandum
Order to counsel.

Entered this __2_n_d__ day of August, 2010.

Alexandria, Virginia

_____/s/_____
Gerald Bruce Lee
United States District Judge